**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>                         Debtor, | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                       Plaintiff,<br>v.<br><br>SAUL B. KATZ, et al.,<br><br>                       Defendants. | Adv. Pro. No. 10-5287 (BRL)<br><br><br>11-CV-03605 (JSR) (HBP) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**STERLING DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

    A.    The BLMIS SIPA Liquidation Proceeding ...........................................3

    B.    BLMIS SIPA Customer Claims And The Bankruptcy Court's "Net Equity Decision"..........................................................................................4

    C.    The Trustee's Avoidance Action Against The Sterling Defendants......................6

ARGUMENT .............................................................................................................9

I.    THE STERLING DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE IT IS AN IMPROPER COLLATERAL ATTACK ON PRIOR DECISIONS OF THE BANKRUPTCY COURT AND IS NOT TIMELY......................9

    A.    The Motion Is An Impermissible Collateral Attack On Prior Decisions Of The Bankruptcy Court......................................................9

    B.    The Sterling Defendants' Motion Is Not Timely Under Section 157(d) Of The United States Code ...................................................12

II.    THE TRUSTEE'S AVOIDANCE CLAIMS AGAINST THE STERLING DEFENDANTS ARE CORE BANKRUPTCY MATTERS THAT DO NOT FALL WITHIN THE LIMITED EXCEPTIONS FOR MANDATORY WITHDRAWAL..........................................................................................14

    A.    The Trustee's Claims Against The Sterling Defendants Are Core Bankruptcy Matters That The Bankruptcy Court Is Best Positioned To Adjudicate ..............................................................14

    B.    Section 157(d) Is To Be Narrowly Construed And Reference To The Bankruptcy Court Should Be Withdrawn Only In Limited Circumstances ..........16

    C.    The Bankruptcy Courts' Prior Resolution Of The Sterling Defendants' Arguments Against The Trustee's Fraudulent Conveyance Claims Did Not Require Substantial Consideration Of Non-Bankruptcy Federal Statutes ............19

        1.    Substantial Interpretation Of Non-Bankruptcy Law Was Not Necessary To Reject The Sterling Defendants' Argument That They Were Owed An Antecedent Debt By The Estate..............................20

        2.    Interpretation Of Section 546(e) Of The Bankruptcy Code Does Not Warrant Mandatory Withdrawal ........................................22

**TABLE OF CONTENTS**
(continued)

**Page**

3.    The Bankruptcy Court's Interpretation Of Bankruptcy Code
      Section 548(c) Does Not Warrant Mandatory Withdrawal ......................24

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amerada Hess Corp. v. Enron Corp.* (*In re Enron Corp.*),
   No. 03 Civ. 5288, 2004 WL 2149100 (S.D.N.Y. Sept. 24, 2004) ........................................... 13

*City of N.Y. v. Exxon Corp.,* 932 F.2d 1020 (2d Cir. 1991) ......................................................... 18

*Connolly v. Bidermann Indus. U.S.A., Inc.,*
   No. 95-Civ-1791, 1996 WL 325575 (S.D.N.Y. June 13, 1996) ...................................... 12

*Eastern Airlines, Inc. v. Air Line Pilots Assoc.* (*In re Ionosphere Clubs, Inc.*),
   No. 89-CIV-8250 (MBM), 1990 WL 5203 (S.D.N.Y. Jan. 24, 1990) .................................... 19

*Enron Corp. v. J.P. Morgan Sec., Inc.* (*In re Enron Corp.*),
   388 B.R. 131 (S.D.N.Y. 2008) .............................................................................. 17, 18, 19

*Gredd v. Bear, Stearns Sec. Corp.* (*In re Manhattan Inv. Fund Ltd.*),
   343 B.R. 63 (S.D.N.Y. 2006) ........................................................................................ 17, 19

*Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*),
   896 F.2d 1384 (2d Cir. 1990) ...................................................................................... 14

*Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.),*
   185 B.R. 680 (S.D.N.Y. 1995) ..................................................................................... 17, 18

*In re Adler, Coleman Clearing Corp.,* 195 B.R. 266 (Bankr. S.D.N.Y. 1996) ........................... 20

*In re Bernard L. Madoff Inv. Sec. LLC,* Adv. Pro. No. 10-2378 ................................................... 8

*In re Boston Generating, LLC,*
   No. 10-cv-6528 (DLC), 2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010) ................................... 19

*In re Chateaugay Corp.,* 104 B.R. 622 (S.D.N.Y. 1989) ............................................................ 12

*In re Dana Corp.,* 379 B.R. 449 (S.D.N.Y. 2007) ................................................................. 19, 24

*In re Fairfield Sentry Ltd.,*
   No. 10 Civ. 7340, 2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010) ...................................... 13, 16

*In re Lake At Las Vegas Joint Venture, LLC,*
   No. 2:10–cv–1679–GMN–PAL, 2011 WL 1303216 (D. Nev. March 31, 2011) .................... 15

*In re Vicars Ins. Agency,* 96 F.3d 949 (7th Cir. 1996) ................................................................ 17

*Int'l Assoc. of Machinists and Aerospace Workers v. Eastern Air Lines, Inc.* (*In re Ionosphere Clubs, Inc.*),
    103 B.R. 416 (S.D.N.Y. 1989) ...................................................................................... 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Keene Corp. v. Williams Bailey & Weisner, L.L.P.* (*In re Keene Corp.*),
 182 B.R. 379 (S.D.N.Y. 1995) ........................................................... 17, 18

*Keller v. Blinder (In re Blinder Robinson & Co., Inc.)*, 135 B.R. 892 (D. Colo. 1991) .............. 14

*Kirschner v. Bennett* (*In re Refco Sec. Litig.*), 759 F. Supp. 2d 301 (S.D.N.Y. 2010) ................ 11

*Langenkamp v. Culp*, 498 U.S. 42 (1990) ..................................................... 14

*Liani v. Baker*, No. 09-CV-2651, 2010 WL 2653392 (E.D.N.Y. June 28, 2010) ...................... 11

*Liona Corp. v. PCH Assoc. (In re PCH Assocs.),* 949 F.2d 585 (2d Cir. 1991) ......................... 11

*Lone Star Indus. v. Rankin Cnty. Econ. Dev. Dist.*, 158 B.R. 574 (S.D.N.Y. 1993) ................... 13

*LTV Steel Co. v. Union Carbide Corp.* (*In re Chateaugay Corp.*),
 193 B.R. 669 S.D.N.Y. 1996) .......................................................... 15, 22

*Magnesium Corp. of Am. v. Renco Group*,
 No. 04 Civ. 1357, 2004 WL 1161172 (S.D.N.Y. May 24, 2004) ........................................ 15

*Mishkin v. Ensminger (In re Adler Coleman Clearing Corp.)*,
 218 B.R. 689 (Bankr. S.D.N.Y. 1998) .................................................... 20

*Montagne v. Montagne (In re Montagne)*,
 No. 08–10916, 2010 WL 396252 (Bankr. D. Vt. Jan. 25, 2010) .............................. 11

*Oneida Ltd. v. Pension Benefit Guar. Corp.*, 372 B.R. 107 (S.D.N.Y. 2007) ....................... 19, 21

*Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*),
 4 F.3d 1095 (2d Cir. 1993) ............................................................. 15

*Picard v. Fox* (*In re Bernard L. Madoff Inv. Sec. LLC*),
 429 B.R. 423 (Bankr. S.D.N.Y. 2010) .................................................... 6

*Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*),
 440 B.R. 243 (Bankr. S.D.N.Y. 2010) ............................................... *passim*

*Picard v. Stahl* (*In re Bernard L. Madoff Inv. Sec. LLC*),
 443 B.R. 295 (Bankr. S.D.N.Y. 2011) .................................................... 14

*Rickel & Assoc. v. Smith* (*In re Rickel & Assocs.*),
 No. 98-B-47203, 2003 WL 23021972 (S.D.N.Y. Dec. 24, 2003) ............................. 12

*S.E.C. v. Madoff*, No. 08-CV-10791 ........................................................ 3

## TABLE OF AUTHORITIES
(continued)

**Page**

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
  (*In re Bernard L. Madoff Inv. Sec. LLC*),
  424 B.R. 122 (Bankr. S.D.N.Y. 2010) ................................................................ *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  Adv. Pro. No. 08-01789 (BRL) ........................................................................ 8

*Shugrue v. Air Line Pilots, Int'l* (*In re Ionosphere Clubs, Inc.*),
  922 F.2d 984 (2d Cir. 1990) ........................................................................ 17, 18

*Turner v. Davis, Gillenwater & Lynch* (*In re Inv. Bankers, Inc.*),
  136 B.R. 1008 (D. Colo. 1989) ...................................................................... 16

*Turner v. Davis, Gillenwater & Lynch* (*In re Inv. Bankers, Inc.*),
  4 F.3d 1556 (10th Cir. 1993) ..................................................................... 4, 16, 20

*United States v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
  63 B.R. 600 (S.D.N.Y. 1986) .................................................................. 17, 18, 22

*United States v. Madoff*, No. 08-MAG-2735 ................................................. 3

**Statutes**

11 U.S.C. § 544 .................................................................................. 2, 7, 14, 20

11 U.S.C. § 546(e) .................................................................................. *passim*

11 U.S.C. § 547 .................................................................................. 2, 7, 14, 20

11 U.S.C. § 548 .................................................................................. 2, 7, 14, 20

11 U.S.C. § 548(c) ............................................................................... 25

11 U.S.C. § 550 .................................................................................. 2, 7, 14, 20

11 U.S.C. § 551 ................................................................................. 14

15 U.S.C. § 78aaa .............................................................................. 1

15 U.S.C. § 78eee(a)(4)(B) .................................................................... 3

15 U.S.C. § 78eee(b)(3) ....................................................................... 4

15 U.S.C. § 78eee(b)(4) ..................................................................... 4, 16

15 U.S.C. § 78fff(b) ......................................................................... 4, 20

28 U.S.C. § 157(b)(2) ......................................................................... 7, 14

## TABLE OF AUTHORITIES
### (continued)

**Page**

28 U.S.C. § 157(d) ...................................................................................................... *passim*

McKinney's N.Y. Debt. & Cred. Law § 273-276 ....................................................... 14

McKinney's N.Y. Debt. & Cred. Law § 276-A ........................................................... 14

McKinney's N.Y. Debt. & Cred. Law § 278.............................................................. 14

McKinney's N.Y. Debt. & Cred. Law § 279.............................................................. 14

**Other Authorities**

1 *Collier on Bankruptcy* ¶ 12.14[3]  (16th ed. 2011)................................................. 20

Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), and the estate of Bernard L. Madoff, by and through his undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Sterling Defendants' motion to withdraw the reference ("Motion") of this action from the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").

## PRELIMINARY STATEMENT

The Motion is a waste of time and resources for both this Court and the Trustee as the Sterling Defendants have no valid basis to seek to invoke this Court's jurisdiction.  The very same issues that the Motion purports to have this Court determine already have been determined by the Bankruptcy Court.  Unhappy with the Bankruptcy Court's rulings, the Sterling Defendants through their Motion improperly seek to collaterally attack the Bankruptcy Court's decisions, without making it plain that some of the issues they ask this Court to withdraw and determine are currently *sub judice* before the Second Circuit Court of Appeals ("Second Circuit"), or are pending a motion for leave to appeal to this Court in a related adversary proceeding.  In addition to being a transparent attempt at forum shopping, the Motion is entirely without merit—the claims that the Sterling Defendants seek to withdraw to this Court are "core" bankruptcy causes of action that Congress intended the bankruptcy courts to hear and determine in the first instance.

Sterling Defendants Saul Katz ("Katz") and Fred Wilpon ("Wilpon") were close friends and business associates of Madoff for nearly 25 years.  Katz and Wilpon, together with their partners at Sterling Equities, their family members, trusts and various entities they own, operate and control, were substantial beneficiaries of the Ponzi scheme that Madoff operated through BLMIS.  Through this action, the Trustee seeks to recover nearly $300 million in fictitious

profits that the Sterling Defendants derived from the scheme, plus another nearly $700 million in principal transfers they received while on inquiry notice of Madoff's fraud. The Trustee's complaint against the Sterling Defendants consists of classic fraudulent conveyance claims to avoid and recover those transfers pursuant to sections 544, 547, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and analogous state law provisions.

When it was convenient, the Sterling Defendants affirmatively and vigorously took full advantage of the Bankruptcy Court's purview and jurisdiction. Claiming entitlement to the full amount of fictitious profits and securities that Madoff conjured on their BLMIS customer statements, the Sterling Defendants filed over 100 customer claims in the liquidation proceeding, thereby definitively submitting themselves to the Bankruptcy Court's equitable jurisdiction. In response to the Trustee's denial of their customer claims, the Sterling Defendants filed objections with the Bankruptcy Court, arguing again that they were entitled to the fictitious profits and securities reflected on their BLMIS statements. And, when the Bankruptcy Court considered whether the Trustee's determination of customer "net equity" was correct, the Sterling Defendants *again* raised the same claim and asserted that the estate owed them a valid debt in the amount of their fictitious profits and securities. When the Bankruptcy Court ruled against them, the Sterling Defendants briefed the same issues before the Second Circuit. And just two months ago, the Sterling Defendants raised the same argument in a motion to dismiss/premature bid for summary judgment filed in the Bankruptcy Court.

Until now, the Sterling Defendants had not once urged that these issues were beyond the ken of the Bankruptcy Court. And for good reason—that argument is frivolous. The Trustee's routine avoidance claims are statutorily-designated core bankruptcy proceedings, and clearly do not fall within the limited circumstances where mandatory withdrawal is warranted. While the

Sterling Defendants strain to manufacture a federal question to justify the request for mandatory withdrawal of the Trustee's avoidance claims, the Bankruptcy Court's own decisions on the *precise* issues raised by the Motion conclusively demonstrate that no material interpretation of non-bankruptcy federal law was or is necessary to resolve the matter. The Motion is without merit, and the Trustee respectfully requests that it be denied in its entirety and that the case remain in the Bankruptcy Court where it belongs.

## BACKGROUND

### A.    The BLMIS SIPA Liquidation Proceeding

On December 11, 2008, Madoff was arrested by federal agents and charged with violations of criminal securities laws for conducting a multi-billion dollar securities fraud in the United States District Court for the Southern District of New York ("District Court"), captioned *United States v. Madoff*, No. 08-MAG-2735. Contemporaneously, the Securities and Exchange Commission filed a complaint in the District Court against, among others, Madoff and BLMIS, alleging that they had engaged in fraud through the investment advisory business at BLMIS, *S.E.C. v. Madoff*, No. 08-CV-10791. The victims of Madoff's multi-billion dollar Ponzi scheme learned that day that the double-digit returns that had consistently appeared on their brokerage statements through all manners of market fluctuations were a fraud and in fact were nothing more than concocted fictitious trades. Typical of other Ponzi schemes, when BLMIS customers redeemed their distribution of "profits" from their accounts, Madoff had paid them with money invested by other customers.

On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application in the District Court pursuant to SIPA § 78eee(a)(4)(B) seeking a decree that BLMIS was unable to meet its obligations to securities customers as they came due and, as a result, its customers needed the protections afforded by SIPA. (Declaration of Fernando A. Bohorquez,

Jr., dated June 17, 2011 ("Bohorquez Decl."), Ex. H,[1] Compl. ¶ 20.)  That same day, Judge Stanton granted SIPC's application and entered the decree which, among other things, appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3) and removed the case to the Bankruptcy Court pursuant to SIPA § 78eee(b)(4).  (*Id.* ¶ 21.)  The case was then assigned to the Honorable Burton R. Lifland ("Judge Lifland"), who has since administered the underlying SIPA proceeding ("SIPA Proceeding") for over two years, and is well-acquainted with the intricate facts surrounding Madoff's massive fraud.

### B.     BLMIS SIPA Customer Claims And The Bankruptcy Court's "Net Equity Decision"

SIPA § 78fff(b) confers upon the Trustee the authority to conduct a SIPA liquidation proceeding "in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11."  15 U.S.C. § 78fff(b).  "This provision indicates that Congress intended SIPA liquidation proceedings to be treated, in most important respects, identical to a traditional bankruptcy case under title 11."  *Turner v. Davis, Gillenwater & Lynch* (*In re Inv. Bankers, Inc.*), 4 F.3d 1556, 1564-65 (10th Cir. 1993).

A SIPA trustee is responsible for recovering and distributing customer property to a broker's customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  Consistent with his powers and duties, the Trustee has determined more than 16,000 SIPA customer claims seeking to recoup some portion of their lost investment. Thousands of SIPA claims had previously been filed by BLMIS customers—including the Sterling Defendants—seeking recovery of allegedly lost funds based on the amount of profits and securities as reflected on their last BLMIS customer statements dated November 30, 2008. (Bohorquez Decl. ¶ 4.)  In fact, from February 26 to June 18, 2009, various Sterling Defendants

---

[1] All of the exhibits referenced herein ("Ex.") are attached to the Bohorquez Decl.

and related individuals and entities filed 101 separate SIPA claims seeking recovery of a total of approximately $500 million based on their November 30, 2008 BLMIS account statements.  (*Id.* ¶ 4; *see, e.g.,* Ex. B, Customer Claim, Acct. 1KW300.)   Based on the Trustee's net equity calculation, the Trustee denied those claims for those BLMIS accounts from which the claimants withdrew more funds than they deposited (*i.e.,* "net winners").  (*Id.* ¶ 6.)

The Trustee denied those customers' claims on the grounds that the profits and securities contained on the BLMIS customer statements were a fiction, and instead calculated customers' net equity based upon the real assets that customers had lost:  the cash they had deposited in their BLMIS accounts, less any amount they withdrew (the "net investment method").  (Ex. F, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 124, 134-35 (Bankr. S.D.N.Y. 2010) (Lifland, J.) (hereinafter "*Net Equity Decision*").)   Following the Trustee's denial of certain claims, from September 30, 2009 to November 11, 2010, various Sterling Defendants and related individuals and entities filed objections with the Bankruptcy Court to forty claim determinations.  (Bohorquez Decl. ¶ 7.) They objected to the Trustee's calculation of net equity and argued that they were entitled to an amount equal to the value of securities positions and credit balances reflected in their last statements and that the avoidance of transfers was "barred by various provisions of the Bankruptcy Code and SIPA."  (*See, e.g.,* Ex. C, Claim Objection, Acct. 1KW300.)  After filing objections with the Bankruptcy Court, the Sterling Defendants—along with many other "net winner" BLMIS customers—argued before Judge Lifland that the Trustee should have calculated their net equity based on the amounts shown on their last customer statements (the "last statement method").  *Net Equity Decision*, 424 B.R. at 124, 134-35.

5

One of the most critical decisions issued thus far by Judge Lifland was his March 1, 2010 Net Equity Decision approving the Trustee's determination of customer claims based on the customer's "net equity," and his March 8, 2010 final order incorporating the Net Equity Decision.  (Bohorquez Decl. ¶ 10-11.)  In his Net Equity Decision, Judge Lifland rejected the Sterling Defendants' calculation of customer claims based upon the last statement method, holding that the Trustee's net investment method is the only one consistent with the plain language of SIPA, bankruptcy law, judicial case law regarding Ponzi schemes, and principles of equity.  *Net Equity Decision*, 424 B.R. at 134-42.

On March 8, 2010, Judge Lifland entered a final order of the Net Equity Decision, and certified it for immediate appeal to the Second Circuit.  (Bohorquez Decl. ¶ 11.)  Various BLMIS customers, including the Sterling Defendants, appealed the Net Equity Decision and filed briefs on August 6, 2010.[2]  (*Id.* ¶ 12.)  On March 3, 2011, the Second Circuit held oral argument, where the Sterling Defendants' counsel argued for the appellants.  (*Id.* ¶ 13.)

### C.   The Trustee's Avoidance Action Against The Sterling Defendants

The Trustee's efforts to marshal customer property are well under way, but the property and assets recovered to date will not be sufficient to reimburse BLMIS's customers for the billions of dollars they invested and lost over the years.  Consequently, the Trustee must use his broad grant of authority under SIPA and the Bankruptcy Code to take all necessary steps to maximize the fund of customer property, including bringing avoidance actions against those who received fraudulent transfers from BLMIS to recover money for distribution to customers and other creditors.  *See Picard v. Fox (In re Bernard L Madoff Inv. Sec. LLC)*, 429 B.R. 423, 435

---

[2]  Certain of the 98 Sterling Defendants, namely all Sterling Partners, Sterling Equities Associates, and the Mets Limited Partnership, briefed and argued the net equity issue before Judge Lifland and then appealed, briefed, and argued Judge Lifland's Net Equity Decision to the Second Circuit.

(Bankr. S.D.N.Y. 2010).   To date, the Trustee has initiated more than 1,000 adversary proceedings seeking to avoid and recover transfers received by customers and others from BLMIS under sections 544, 547, 548 and 550 of the Bankruptcy Code and the fraudulent conveyance provisions of the New York Debtor and Creditor Law ("NYDCL").[3]

One of the many adversary proceedings filed by the Trustee is the complaint against the Sterling Defendants, filed on December 7, 2010 and amended on March 18, 2011 ("Complaint" or "Compl."). (Ex. H, Compl.)   The Complaint alleges eleven causes of action to avoid fraudulent transfers and preferences, and to disallow and subordinate the Sterling Defendants' SIPA customer claims. (*Id.* at ¶¶ 1330-1402.) All of these claims are statutorily-designated core proceedings pursuant to 28 U.S.C. § 157(b)(2).

The Trustee's Complaint seeks recovery from the Sterling Defendants of approximately $300 million of fictitious profits they received from Madoff's Ponzi scheme, for which they gave no value and to which they have no legal right.   Under well-established bankruptcy law and Judge Lifland's decisions in related adversary proceedings in this case, the Trustee can avoid and recover those fictitious profits and distribute the funds to Madoff's victims consistent with SIPA. The Complaint also seeks to avoid and recover an additional approximately $700 million in transfers of principal the Sterling Defendants received from BLMIS that they did not take in good faith because they were on inquiry notice of fraudulent activity at BLMIS.[4]

---

[3] In one of the first adversary proceedings brought by the Trustee, *Picard v. Merkin*, Judge Lifland denied the defendants' motion to dismiss, affirming the longstanding precedent that transfers of fictitious profits from a Ponzi scheme like Madoff's to certain customers are presumptively fraudulent and avoidable under the Bankruptcy Code.   *See* Ex. K, *Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*), 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010) (collecting cases).

[4] The Trustee's pre-filing investigation (prior to discovery) revealed that the Sterling Defendants were on inquiry notice of red flags indicating that Madoff may have been engaged in a fraud, including but not limited to, warning signs ranging from cautionary counsel from financial

Prior to the commencement of discovery[5] and two days after the filing of the amended Complaint, on March 20, 2011, the Sterling Defendants filed in the Bankruptcy Court a 100-page Motion to Dismiss the Amended Complaint or, in the alternative, a Motion for Summary Judgment ("Motion to Dismiss or for Summary Judgment" or "Defs.' Mot. to Dismiss").  (Ex. I.) The Sterling Defendants' legal arguments included many of the same issues they raised in their Net Equity briefing before Judge Lifland and the Second Circuit,[6] including that the transfers they received from BLMIS were on account of antecedent debt set forth on the fraudulent customer statements and therefore cannot be avoided by the Trustee, and that avoidance of fraudulent transfers from BLMIS is precluded by the safe harbor provision of Bankruptcy Code § 546(e).  (*Compare* Ex. I, Defs.' Mot. to Dismiss at 58-70, 80-84, 90-93 *with* Ex. E, Defs.' Net Equity Br. at 14-20 *and* Ex. G, Defs.' App. Net Equity Br. at 23-27, 29.)   The Sterling Defendants' Motion to Dismiss or for Summary Judgment also accused the Trustee of making unsubstantiated "false allegations."  (Ex. I, Defs.' Mot. to Dismiss at 6-47.)

On May 19, 2011, the Trustee filed his opposition to the Motion to Dismiss or for Summary Judgment.  Notwithstanding the premature nature of the Sterling Defendants' request for summary judgment, the Trustee's opposition set forth the evidence gathered to date, which

---

industry experts and trusted advisors, to Madoff's schemes to avoid regulatory scrutiny, to the fact that they inquired into fraud insurance to protect their Madoff investments against a Ponzi scheme.  (*See* Ex. H, Compl. ¶¶ 865-1073.)  Rather than investigate, the Sterling Defendants turned a blind eye to continue reaping the benefits of their BLMIS investments.  (*See id*.)

[5] On February 4, 2011, Judge Lifland ordered the case to mediation and appointed former Governor Mario Cuomo as mediator.  The mediation before Governor Cuomo is ongoing.

[6] Hereinafter, the Memorandum of Law of Sterling Equities Associates et al. Regarding Net Equity and Avoidance, dated November 12, 2009 in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (BRL) and the Brief for Appellants Sterling Equities Associates et al., dated August 6, 2010 in *In re Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 10-2378 will be referred to as "Defs.' Net Equity Br." and "Defs.' App. Net Equity Br.," respectively.  (*See* Exs. E and G, respectively.)

substantiated his claims that the Sterling Defendants were on inquiry notice of the fraud and debunked any notion that the Complaint contained any "false allegations." (*See* Ex. J.)

One week later, on May 26, 2011, the Sterling Defendants filed the instant Motion in this Court seeking to withdraw the reference to the Trustee's avoidance claims against the Sterling Defendants. As set forth below, the Motion should be denied because it is an improper collateral attack upon the prior decisions of the Bankruptcy Court and fails to even come close to the stringent legal requirements for mandatory withdrawal under § 157(d) of the U.S. Code.

## ARGUMENT

## I.   THE STERLING DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE IT IS AN IMPROPER COLLATERAL ATTACK ON PRIOR DECISIONS OF THE BANKRUPTCY COURT AND IS NOT TIMELY

The Sterling Defendants have affirmatively and vigorously taken advantage of the Bankruptcy Court's jurisdiction—that is, until they were dissatisfied with the results. Faced with mounting adverse rulings from the Bankruptcy Court and the Trustee's opposition to their premature and meritless request for summary judgment in the Bankruptcy Court, the Sterling Defendants filed the instant Motion, purportedly seeking to have this Court hear in the first instance the very same issues that have already been decided by Judge Lifland. Putting aside that the Sterling Defendants inappropriately seek mandatory withdraw of the reference with respect to core bankruptcy matters, the Motion should be denied at the outset because it is an improper and untimely collateral attack on the Bankruptcy Court's prior decisions.

### A.   The Motion Is An Impermissible Collateral Attack On Prior Decisions Of The Bankruptcy Court

The Motion purports to invoke this Court's jurisdiction to determine whether the Trustee may pursue fraudulent conveyance claims against the Sterling Defendants when—they argue— the transfers they received from BLMIS satisfied valid antecedent debts owed them based upon

state contract law, state Uniform Commercial Code provisions, state law fiduciary claims and federal securities law.   (Mem. of Law in Support of the Sterling Defendants' Motion to Withdraw the Reference ("Defs.' Mem."), at 9-18.)

But the Bankruptcy Court has already heard and determined this issue more than a year ago in connection with the Net Equity Decision, and the matter is now on appeal before the Second Circuit.   Specifically, in the Net Equity Decision, Judge Lifland squarely rejected the Sterling Defendants' claim that they were owed a debt by the estate in the fictitious amounts contained on their last BLMIS customer statements, because this would have required crediting the statements Madoff fabricated as part of the Ponzi scheme.   *See Net Equity Decision*, 424 B.R. at 135-37, 139-42.   Nevertheless, the Sterling Defendants now ask this Court to withdraw the reference and determine this very same issue.

The Bankruptcy Court has also already determined and rejected the second issue the Sterling Defendants seek to have this Court determine—*i.e.*, that the Trustee's avoidance actions contravene the "safe harbor" provision set forth in § 546(e) of the Bankruptcy Code—in the related adversary proceeding, *Picard v. Merkin*.   440 B.R. at 266-68.[7]

Accordingly, principles of judicial economy warrant denial of the Motion.   First, the Bankruptcy Court has already ruled on the Net Equity issue the Sterling Defendants by their Motion seek to have this Court hear and determine.   The appropriate vehicle for challenging the Bankruptcy Court's Net Equity Decision was to appeal the ruling to this Court or directly to the Second Circuit, as the Sterling Defendants already did.   Because that decision is already under appellate review, it is improper for the Sterling Defendants to file the instant Motion.   Indeed,

---

[7] In the Net Equity Decision, the Bankruptcy Court also characterized as "dubious" the Defendants' claim that § 546(e) would operate to limit the Trustee's avoidance powers.   *Net Equity Decision*, 424 B.R. at 137 n.30.

were the Court to grant the Motion and withdraw the reference as to the same issues now pending before the Second Circuit in connection with the Net Equity Decision, it would lead to unnecessary costs and relitigation of issues already decided, and could potentially lead to the absurd result of having this Court rule on issues pending before the Second Circuit.

Second, while the Sterling Defendants were not technically parties to the *Merkin* adversary proceeding, they are very much aware that the Bankruptcy Court had already rejected their Bankruptcy Code § 546(e) defense in that case and they reserved their rights by asserting the same argument to the Bankruptcy Court in their Motion to Dismiss or for Summary Judgment. (Ex. I, Defs.' Mot. to Dismiss at 82 n.36.) In fact, the *Merkin* defendants have moved for leave to appeal Judge Lifland's *Merkin* decision, including his ruling on Bankruptcy Code § 546(e), which is currently pending before Judge Wood in this Court. (*See* Ex. L and Ex. M, respectively.) Thus, allowing the Sterling Defendants to collaterally attack the Bankruptcy Court's § 546(e) ruling in *Merkin* could lead to inefficient and inconsistent results in this Court.

Under these circumstances, the policies underlying the doctrine of law of the case, which "operates to create efficiency, finality and obedience within the judicial system," *Montagne v. Montagne (In re Montagne)*, No. 08-10916, 2010 WL 396252, at *6 (Bankr. D. Vt. Jan. 25, 2010) (citation omitted), should prevent the Sterling Defendants from relitigating the Net Equity Decision under the guise of a motion to withdraw the reference.[8] The same concerns with judicial economy also warrant denying withdrawal of the reference based on the Sterling

---

[8] The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Kirschner v. Bennett* (*In re Refco Sec. Litig.*), 759 F. Supp. 2d 301, 308 (S.D.N.Y. 2010) (*citing Liona Corp. v. PCH Assoc. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991). The doctrine promotes judicial efficiency by allowing "a court to avoid time-consuming relitigation of issues already decided." *Liani v. Baker*, No. 09-CV-2651, 2010 WL 2653392, at *11 (E.D.N.Y. June 28, 2010)).

Defendants' § 546(e) argument when that issue is already the subject of a motion for leave to appeal pending before this Court.

### B.     The Sterling Defendants' Motion Is Not Timely Under Section 157(d) Of The United States Code

In any event, because the Bankruptcy Court has already ruled on the issues the Sterling Defendants attempt to remove to this Court, the Motion is not "timely" as is required under 28 U.S.C. § 157(d).[9]  "While there is no bright line test for timeliness, the motion should be made at the earliest opportunity after it is apparent that there is a basis for such a motion."  *Rickel & Assoc. v. Smith* (*In re Rickel & Assocs.*), No. 98-B-47203, 2003 WL 23021972, at *2 (S.D.N.Y. Dec. 24, 2003) (citations omitted).

> [T]he fair intendment of the statute in question is to insure that the request for withdrawal be filed as soon as practicable after it has become clear that "other laws" of the genre described in 28 U.S.C. § 157(d) are implicated, so as to protect the court and the parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics.  Once it becomes apparent that such an issue is in the case, a party has a plain duty to act diligently—or else, to forever hold his peace.

*In re Chateaugay Corp.* (*Chateaugay II*), 104 B.R. 622, 623-24 (S.D.N.Y. 1989) (citations omitted).  Indeed, timeliness of the motion to withdraw is a "threshold" requirement, as courts refuse to even consider mandatory withdrawal if a motion is not timely made.  *See, e.g., Connolly v. Bidermann Indus. U.S.A., Inc.*, No. 95-Civ-1791, 1996 WL 325575, at *3 (S.D.N.Y. June 13, 1996); *see also Rickel & Assocs.*, 2003 WL 23021972, at *2-3 (rejecting motion to withdraw reference on timeliness grounds where movant delayed in filing until after bankruptcy court expended substantial resources on a motion for summary judgment).

---

[9]  Section 157(d) of the U.S. Code provides, in pertinent part: "The district court shall, on *timely* motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d) (emphasis added).

Here, the Sterling Defendants' conduct of waiting months until after the Bankruptcy Court has already ruled on the very issues they seek to withdraw to this Court is not "timely" under any reading of the statute. Although the Sterling Defendants disingenuously assert that it was not until they received the Trustee's opposition to their Motion to Dismiss or for Summary Judgment that they realized the alleged grounds for withdrawal (Defs.' Mem. at 4), the facts prove otherwise—they have been arguing many of these issues for almost two years.

The purpose of the timeliness requirement of § 157(d) is to prevent exactly what the Sterling Defendants are trying to do here—multiply costs, create unnecessary delay and stall, if not outright stymie, the progress of the underlying adversary proceeding. The Sterling Defendants' Motion—filed while faced with adverse rulings from the Bankruptcy Court, evidence substantiating the Trustee's inquiry notice claims against them, and impending discovery—is untimely, smacks of forum shopping, and should be denied. *See Amerada Hess Corp. v. Enron Corp.* (*In re Enron Corp.*) (*Enron I*), No. 03 Civ. 5288, 2004 WL 2149100, at *1, 3 (S.D.N.Y. Sept. 24, 2004) (finding that withdrawal of reference in one adversary proceeding where more than 50 similar proceedings were pending before bankruptcy judge would "promote forum-shopping" and that "granting the withdrawal could create a flurry of motions from other Enron creditors seeking to avoid the current bankruptcy proceedings").[10]

---

[10] In *Enron I*, then-District Judge Chin aptly noted that "upset with a bankruptcy court's decision in a similar case, a party could simply seek to withdraw the reference, hoping for better results in a case heard by the district court directly, rather than on appeal." 2004 WL 2149100, at *3; *see also In re Fairfield Sentry Ltd.*, No. 10 Civ. 7340, 2010 WL 4910119, at *2 (S.D.N.Y. Nov. 22, 2010) (noting that the court was "suspicious of [the defendants'] forum-shopping motivations," which "favor[ed] denial" of the motion to withdraw the reference); *Lone Star Indus. v. Rankin Cnty. Econ. Dev. Dist.*, 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying motion to withdraw reference on timeliness grounds to prevent rewarding movant for forum shopping).

## II.  THE TRUSTEE'S AVOIDANCE CLAIMS AGAINST THE STERLING DEFENDANTS ARE CORE BANKRUPTCY MATTERS THAT DO NOT FALL WITHIN THE LIMITED EXCEPTIONS FOR MANDATORY WITHDRAWAL

### A.  The Trustee's Claims Against The Sterling Defendants Are Core Bankruptcy Matters That The Bankruptcy Court Is Best Positioned To Adjudicate

The Trustee's Complaint alleges eleven causes of action:  Counts One through Seven seek to avoid fraudulent transfers under the Bankruptcy Code §§ 544, 548, 550, and 551 and incorporate the NYDCL §§ 273-276, 276-A, 278 and/or 279, Count Eight seeks to avoid preference payments pursuant to Bankruptcy Code § 547, Count Nine seeks to recover subsequent transfers pursuant to §§ 544 and 550 of the Bankruptcy Code, and Counts Ten and Eleven seek to disallow and subordinate the Sterling Defendants' SIPA customer claims.  (Ex. H, Compl. ¶¶ 1330-1402.)   All of these claims are statutorily designated core proceedings that Congress expressly decreed the Bankruptcy Courts should hear and determine.  *See* 28 U.S.C. § 157(b)(2)(B), (C), (F) and (H).

In addition, certain Sterling Defendants have filed customer claims in the bankruptcy case, and by doing so, submitted to the Bankruptcy Court's equitable jurisdiction regarding adjudication of matters related to those claims.[11]  *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." (citation omitted)); *Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Products Corp.*), 896 F.2d 1384, 1389 (2d Cir. 1990) (by filing claim, the creditor "submitted itself to the equitable power of the bankruptcy court to disallow its claim").

---

[11]  The filing of a customer claim in a SIPA action is the equivalent of filing a proof of claim in a typical bankruptcy proceeding for purposes of submission to jurisdiction.  *Picard v. Stahl* (*In re Bernard L. Madoff Inv. Sec. LLC)*, 443 B.R. 295, 310 (Bankr. S.D.N.Y. 2011) (*citing Keller v. Blinder (In re Blinder Robinson & Co., Inc.)*, 135 B.R. 892, 896-97 (D. Colo. 1991)).

The clear intent of Congress was to keep the adjudication of such "core" matters with the bankruptcy courts as opposed to Article III courts—not only to ensure that the court with the greater familiarity and expertise addresses the issues but also "to avoid overwhelming the district courts with bankruptcy matters."[12] *LTV Steel Co. v. Union Carbide Corp.* (*In re Chateaugay Corp.*) (*Chateaugay III*), 193 B.R. 669, 675 (S.D.N.Y. 1996); *see also Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993) ("[H]earing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues.").

Moreover, Judge Lifland in particular is best suited to hear the Trustee's avoidance claims against the Sterling Defendants, as he is intimately familiar with the Madoff case as a result of overseeing the vast and complex proceedings surrounding the BLMIS Ponzi scheme for the past two-and-a-half years.  Judge Lifland is handling over 1,000 other Madoff-related adversary proceedings, and is presiding over thousands of customer claims.  The Trustee's Complaint against the Sterling Defendants therefore overlaps with a significant number of complaints involving customer property and avoidable transfers that were filed by the Trustee and other parties currently before the Bankruptcy Court.  Clearly, Judge Lifland's depth of

---

[12] Thus, Courts routinely deny motions to withdraw the reference for cause in adversary proceedings concerning avoidance actions. *See Magnesium Corp. of Am. v. Renco Group*, No. 04 Civ. 1357, 2004 WL 1161172, at *1-2 (S.D.N.Y. May 24, 2004) (denying motion to withdraw reference in adversary proceeding asserting "in substantial part" core avoidance claims because "allowing the bankruptcy court the first opportunity to address core matters promotes the uniform administration of the bankruptcy code" and "the bankruptcy judge can bring to bear his considerable expertise on the fraudulent conveyance and transfer issues and the preference issues"); *In re Lake At Las Vegas Joint Venture, LLC*, No. 2:10-cv-1679-GMN-PAL, 2011 WL 1303216, at *4 (D. Nev. March 31, 2011) (denying motion to withdraw where main causes of action alleged were avoidance claims because these core bankruptcy matters are "best dealt with by the bankruptcy court").

knowledge and familiarity with the BLMIS liquidation and related caseload demonstrate that the

Bankruptcy Court is the best forum in which to effectively and efficiently resolve this action.[13]

As Chief Judge Preska recognized in *In re Fairfield Sentry Ltd.*, No. 10-cv-7340, 2010

WL 4910119, at *2 (S.D.N.Y. Nov. 22, 2010), when denying a motion to withdraw the reference

in a related case stemming from Madoff's fraud:

> [T]he bankruptcy court is familiar with these proceedings and the underlying
> factual context, and, moreover, it can employ its specialty expertise to this
> question.   Thus, judicial efficiency would be served and the uniform
> administration of the bankruptcy laws improved by allowing the bankruptcy judge
> to decide this issue in the first instance.  *Id.*

### B.    Section 157(d) Is To Be Narrowly Construed And Reference To The Bankruptcy Court Should Be Withdrawn Only In Limited Circumstances

Because the Trustee's claims against the Sterling Defendants are indisputably core

bankruptcy matters and certain of the Sterling Defendants have subjected themselves irrevocably

to the Bankruptcy Court's equitable jurisdiction by filing customer claims in the liquidation

proceedings, the Sterling Defendants do not, because they cannot, move to withdraw the

reference for cause pursuant to 28 U.S.C. § 157(d).  Desperate to open the proverbial "escape

hatch" from the Bankruptcy Court and its adverse rulings, the Sterling Defendants seek

mandatory withdrawal—but try as they might, they cannot shoehorn the Trustee's core

bankruptcy claims against them into the limited exceptions for which mandatory withdrawal of

the reference is warranted.

---

[13]  The fact that the Trustee's avoidance actions are brought within the context of a SIPA liquidation proceeding does not change the fact that the Bankruptcy Court remains best equipped to preside over the action.  *See In re Inv. Bankers, Inc.*, 4 F.3d at 1564-65 ("The legislative history of § 78eee(b)(4) clearly reveals that Congress intended to confer jurisdiction on the bankruptcy courts to preside over SIPA liquidation proceedings."); *Turner v. Davis, Gillenwater & Lynch* (*In re Inv. Bankers, Inc.*), 136 B.R. 1008, 1016 (D. Colo. 1989) (noting that bankruptcy courts are "best equipped to preside over SIPA liquidations and are authorized to do so").

Section 157(d) provides for mandatory withdrawal of the reference by the district court "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The purpose of this provision is to reserve to the federal district courts those issues that Congress "intended to have decided by a district judge rather than a bankruptcy judge." *United States v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 63 B.R. 600, 602 (S.D.N.Y. 1986).

Courts in the Second Circuit have consistently held that mandatory withdrawal under § 157(d) must be construed narrowly,[14] and is not to be used as an "escape hatch through which most bankruptcy matters [could] be removed to a district court." *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 343 B.R. 63, 66 (S.D.N.Y. 2006) (alteration in original; internal quotation omitted)). If it functioned as an escape hatch, "[t]his might in turn encourage delaying tactics (perhaps further draining the resources of the debtor), forum shopping, and generally unnecessary litigation. The legislative history of the Act reveals that this concern was recognized by Congress (the term 'escape hatch' comes from the congressional debates) . . . stressing that they intended the provision to be read narrowly." *In re Vicars Ins. Agency*, 96 F.3d 949, 952 (7th Cir. 1996). A narrow reading of the mandatory withdrawal provision is necessary so as not to "eviscerate much of the work of the bankruptcy courts . . . ." *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 185 B.R. 680, 683 (S.D.N.Y. 1995).

---

[14] *See, e.g., Shugrue v. Air Line Pilots, Int'l* (*In re Ionosphere Clubs, Inc.*) (*Ionosphere III*), 922 F.2d 984, 995 (2d Cir. 1990); *see also Enron Corp. v. J.P. Morgan Sec., Inc.* (*In re Enron Corp.*) (*Enron II*), 388 B.R. 131, 136 (S.D.N.Y. 2008); *Keene Corp. v. Williams Bailey & Weisner, L.L.P.* (*In re Keene Corp.*), 182 B.R. 379, 382 (S.D.N.Y. 1995) ("Mandatory withdrawal . . . is narrowly applied." (citation omitted)).

Consistent with the narrow construction of § 157(d), the bar for mandatory withdrawal of the reference is high.  Mandatory withdrawal "is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding."  *Ionosphere III*, 922 F. 2d at 995.  Rather, as the Second Circuit has held, mandatory withdrawal "is reserved for cases where *substantial and material consideration* of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."  *Id.* (citation omitted) (emphasis added).

Substantial and material consideration requires a bankruptcy judge to "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *City of N.Y. v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir. 1991) (internal citations omitted); *see also Enron II,* 388 B.R. at 136.  Indeed, the "substantial and material consideration" standard excludes from mandatory withdrawal those cases that involve only the routine application of non-title 11 federal statutes to a particular set of facts.  *See In re Johns-Manville Corp.*, 63 B.R. at 602.

This stringent standard can be "more easily satisfied when complicated issues of first impression are implicated under non-bankruptcy federal laws."  *In re Keene Corp.*, 182 B.R. at 382; *see also In re Houbigant, Inc.*, 185 B.R. at 684 (withdrawal appropriate "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws"); *Int'l Assoc. of Machinists and Aerospace Workers v. Eastern Air Lines, Inc.* (*In re Ionosphere Clubs, Inc.*) (*Ionosphere I*), 103 B.R. 416, 419-20 (S.D.N.Y. 1989).  Complexity alone, however, does not require withdrawal of the reference—bankruptcy courts ably decide complicated issues every day, as Judge Lifland has already done in this liquidation proceeding.

Courts within the Second Circuit have also recognized that mandatory withdrawal is satisfied "only when substantial and material potential conflicts exist between non-bankruptcy

18

federal laws and Title 11." *In re Boston Generating, LLC*, No. 10-cv-6528 (DLC), 2010 WL 4288171, at *4 (S.D.N.Y. Nov. 1, 2010) (internal citations omitted); *see also Oneida Ltd. v. Pension Benefit Guar. Corp.*, 372 B.R. 107, 110 (S.D.N.Y. 2007) (standard more easily satisfied "where a federal provision raises a *sharp* conflict with competing provisions of the [Bankruptcy] Code" (internal quotations omitted) (emphasis added)).

Further, § 157(d) compels withdrawal only where the federal non-bankruptcy law (*i.e.,* a statute) is either necessary for the resolution of the proceeding, dominates the Bankruptcy Code issues, or requires the bankruptcy court to engage "in the intricacies" of non-bankruptcy federal law. *See Enron II*, 388 B.R. at 136; *In re Manhattan Inv. Fund Ltd*, 343 B.R. at 66-67; *Eastern Airlines, Inc. v. Air Line Pilots Assoc.* (*In re Ionosphere Clubs, Inc.*) (*Ionosphere II*), No. 89-CIV-8250 (MBM), 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990) ("district courts should not allow a party to use this provision to require withdrawal where such laws are not material to the resolution of the proceeding....")). A "bare contention that non-bankruptcy law is dispositive or in conflict with the Bankruptcy Code is not sufficient." *In re Dana Corp.*, 379 B.R. 449, 453-454 (S.D.N.Y. 2007) (internal citations and marks omitted).

As set forth below, the Sterling Defendants cannot meet the high standard for withdrawing the reference to resolve the Trustee's avoidance claims, because no material interpretation of non-bankruptcy statutes is required to resolve the issues at hand, nor is there any potential conflict between the Bankruptcy Code and other non-bankruptcy federal statutes.

### C.   The Bankruptcy Courts' Prior Resolution Of The Sterling Defendants' Arguments Against The Trustee's Fraudulent Conveyance Claims Did Not Require Substantial Consideration Of Non-Bankruptcy Federal Statutes

The Court need not even speculate as to whether a resolution of the Trustee's claims and the Sterling Defendants' legal defenses thereto would require substantial interpretation of non-bankruptcy federal statutes because the Bankruptcy Court's earlier decisions addressing these

issues—as well as Sterling Defendants' own prior briefs—conclusively demonstrate that no such

material interpretation of federal statutes was—or is—actually necessary to resolve these issues.

1.      Substantial Interpretation Of Non-Bankruptcy Law Was Not Necessary To Reject The Sterling Defendants' Argument That They Were Owed An Antecedent Debt By The Estate

The Sterling Defendants first ask this Court to withdraw the reference to determine their

legal argument that the Trustee cannot state any fraudulent conveyance claims against them

under Bankruptcy Code § 548 because the transfers they received from BLMIS satisfied

antecedent debts owed to them as reflected on their BLMIS customer account statements.

(Defs.' Mem. at 11-18.)   The Sterling Defendants claim that the Trustee and SIPC are

interpreting SIPA[15] in a "novel" and inappropriate manner by pursuing such "baseless"

avoidance claims against them, and suggest that the Trustee and SIPC are creating a conflict

between the Bankruptcy Code and SIPA by doing so.   (*Id.* at 7-18.)[16]   The Sterling Defendants

are wrong.

---

[15] To the extent the Sterling Defendants argue that any interpretation of SIPA—including one dealing with core bankruptcy avoidance claims such as those at issue here—warrants mandatory withdrawal of the reference, Defs.' Mem. at 5-6, that argument is illogical.   It strains credulity and common sense to contend that § 157(d) mandates withdrawal of bankruptcy matters from a SIPA proceeding when "a SIPA liquidation is essentially a bankruptcy liquidation tailored to achieve the special purposes of SIPA."   *In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 269-70 (Bankr. S.D.N.Y. 1996).   As the *In re Investment Bankers* court noted, "[i]t would be truly anomalistic…for Congress to adopt § 78fff(b) [described below] while simultaneously refusing to confer jurisdiction on the bankruptcy courts over SIPA proceedings."   4 F.3d at 1565.

[16] The Sterling Defendants' contention that the Trustee is interpreting SIPA inappropriately to expand the Trustee's avoidance powers under the Bankruptcy Code is unfounded.   SIPA expressly provides that this liquidation is to be conducted as if it were being conducted under chapters 1, 3 and 5 and subchapters I and II of chapter 7 of the Bankruptcy Code (*see* 15 U.S.C. § 78fff(b)), which includes sections 544, 547, 548 and 550—the very provisions upon which the Trustee's avoidance claims are based.   Thus, it is clear that the Trustee has the same powers as a bankruptcy trustee to avoid the transfers to the Sterling Defendants.   *See Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689, 702 (Bankr. S.D.N.Y. 1998); *see generally* 1 *Collier on Bankruptcy* ¶ 12.14[3] at p. 12-70 (16th ed. 2011) ("SIPA allows the trustee to 'recover any property transferred by the debtor which, except for such transfer, would

20

The Bankruptcy Court's Net Equity Decision rejecting the Sterling Defendants' argument not only obviates the need for the Court to hear this issue, it also demonstrates that there is no merit to the Motion.  Far from finding the Trustee's application of SIPA and the Bankruptcy Code to customer claims "novel," the Bankruptcy Court in the Net Equity Decision upheld the Trustee's determination that customers were owed on their claims their "net equity."  *See Net Equity Decision*, 424 B.R. at 124-25.  In so doing, the Bankruptcy Court rejected the Sterling Defendants' argument that they were owed a debt in the amounts set forth on their last customer statements from BLMIS, noting that such an approach would not only exacerbate the harm to net losers (*i.e.,* those customers who invested more than they withdrew), but would "effectively make the [T]rustee perpetrate" Madoff's Ponzi scheme.  *Id.* at 124-25, 142.

Notably, in reaching its decision, the Bankruptcy Court observed no conflict—let alone a "sharp" one—between SIPA and the Bankruptcy Code that would warrant mandatory withdrawal to this Court to redetermine this issue.  *Oneida Ltd.*, 372 B.R. at 110.  Rather, the Bankruptcy Court found that the Trustee's determination of customers' claims based upon their "net equity" was consistent with the plain language and legislative history of SIPA (*Net Equity Decision*, 424 B.R. at 134-35), the Trustee's avoidance powers under SIPA and the Bankruptcy Code (*id.* at 135-37)*,* Second Circuit precedent (*id.* at 137-40), and equitable principles (*id.* at 141-42).  Indeed, the court noted that the Trustee's "Net Investment Method allows the definition of Net Equity and the Trustee's powers to avoid and recover property, contained in the same statutory framework, to be interpreted with *preferred consonance*."  *Id.* at 137 (emphasis added).

While the Sterling Defendants now contend in their Motion that non-bankruptcy federal law dominates the resolution of their defenses to the Trustee's fraudulent conveyance claims,

---

have been customer property,' insofar as the transfer is void or voidable under the Bankruptcy Code.").

their own prior briefing on this issue demonstrates the contrary.   In their briefs relating to customer "net equity" submitted to the Bankruptcy Court and the Second Circuit, the Sterling Defendants claimed that the transfers they received from BLMIS were antecedent debts owed to them in the amounts set forth on their last customer statements, based upon arguments grounded in state contract law, New York State Uniform Commercial Code provisions, state law governing brokers' fiduciary duties, and federal securities law.  (Ex. E, Defs.' Net Equity Br. at 16-20; Ex G, Defs.' Net Equity App. Br. at 23-27.)   In other words, over a year-and-a-half ago, non-bankruptcy federal law was only a minor point and in fact involved only two short paragraphs in the Sterling Defendants' brief to the Bankruptcy Court on this issue.  (Ex. E, Defs.' Net Equity Br. at 18.)  Yet now, in their present Motion, the Sterling Defendants attempt to trump up their reliance upon federal law—and to minimize their state law arguments—in order to fabricate the illusion that substantial consideration of non-bankruptcy law is required to resolve this matter. (*Compare* Defs.' Mem. at 11-16 *with* Ex. E, Defs.' Net Equity Br. at 18-19.)

This passing reference to the federal securities laws is insufficient to warrant mandatory withdrawal because, as the Court noted in *In re Johns-Manville Corp.*, it is only "issues requiring significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge."  63 B.R. at 602; *see also Chateaugay III*, 193 B.R. at 673 ("Withdrawal is not required when consideration of non-[Bankruptcy] Code law entails only the straightforward application of settled law to the facts of a particular case.").

      2.      Interpretation Of Section 546(e) Of The Bankruptcy Code Does Not Warrant Mandatory Withdrawal

The Sterling Defendants also assert that the Court should withdraw the reference because they claim that the Trustee and SIPC are interpreting Bankruptcy Code § 546(e) in a manner that conflicts with SIPA.  (Defs.' Mem. at 18-20.)  Once again, this is just another instance of the

Sterling Defendants attempting to escape an adverse ruling of Judge Lifland, who has already rejected this legal defense to the Trustee's avoidance claims.  More to the point, withdrawal of the reference is not necessary as to this issue because its resolution involves only straightforward application and interpretation of Bankruptcy Code provisions.

As discussed above, the Sterling Defendants have already argued to the Bankruptcy Court that the Bankruptcy Code § 546(e) "safe harbor"—which prohibits the avoidance of "transfer[s] made by a stockbroker . . . [i]n connection with a securities contract"—prevents the Trustee from avoiding any fraudulent transfers made to them prior to December 11, 2006. (Defs.' Mem. at 19; Ex. E, Defs.' Net Equity Br. at 14-16; Ex. I, Defs.' Mot. to Dismiss at 81.) The Sterling Defendants are very much aware that this argument was already rejected by Judge Lifland in *Merkin*.  *See* 440 B.R. at 266-68.  A review of the Bankruptcy Court's decision on Bankruptcy Code § 546(e), and the Sterling Defendants' own prior briefs submitted to the Bankruptcy Court, again demonstrates that no substantial or material consideration of non-bankruptcy statutes was required to resolve this issue.[17]

Relying upon a well-established body of case law, Judge Lifland held in *Merkin* that the invocation of a Bankruptcy Code § 546(e) affirmative defense to the Trustee's avoidance claims was, at best, premature at the pleading stage.  *Id.* at 266.  In interpreting this provision of the Bankruptcy Code with the aid of existing case law, the Bankruptcy Court also found that Madoff was not a "stockbroker" within the meaning of § 546(e), noting, as other courts have similarly held, that Ponzi scheme operators do not affirmatively "make securities transactions happen" for legal "customers." *Id.* at 267.  In *Merkin*, Judge Lifland also rejected the notion that customers'

---

[17]  While Judge Lifland did not reach the merits of the Bankruptcy Code § 546(e) defense in his Net Equity Decision, he characterized the applicability of this defense to the Trustee's avoidance powers as "dubious."  *Net Equity Decision*, 424 B.R. at 137 n.30.

account agreements with BLMIS constitute "securities contracts" as that term is conceived by Bankruptcy Code § 546(e), as those agreements merely *authorized* Madoff to act as their "agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities" on the customers' behalf. *Id.* (internal citation omitted). Finally, relying upon established case law, Judge Lifland held in *Merkin* that the interpretation of Bankruptcy Code § 546(e) that was being advanced by the defendants in that case was contrary to the purpose behind that provision and was also incompatible with SIPA. *Id.* at 267-68 (internal citations omitted).

The *Merkin* decision conclusively demonstrates that all that is required to resolve the Sterling Defendants' argument pursuant to § 546(e) is straightforward interpretation of the Bankruptcy Code with the aid of established case law precedent. Again, while the Sterling Defendants now suggest that there is some sort of conflict between § 546(e) of the Bankruptcy Code and SIPA, they asserted no such conflict previously,[18] and Judge Lifland's decision in *Merkin* certainly did not find that any such conflict exists. Such a "bare contention" of a conflict by the Sterling Defendants is as a matter of law insufficient to warrant mandatory withdrawal. *See In re Dana Corp.*, 379 B.R. at 453-54.

   3.   The Bankruptcy Court's Interpretation Of Bankruptcy Code
        Section 548(c) Does Not Warrant Mandatory Withdrawal

Lastly, the Sterling Defendants claim that the Court must withdraw the reference because of the Trustee's allegedly "novel" interpretation of SIPA to retroactively impose a due diligence obligation on brokerage customers. (Defs.' Mem. at 21-23.) Again, the Sterling Defendants' attempt to manufacture a conflict between the Bankruptcy Code and SIPA wholly misses the

---

[18]  In their previous submissions to the Bankruptcy Court on § 546(e), the Sterling Defendants made no reference to any conflict between this provision of the Bankruptcy Code and SIPA, but rather merely advanced their own interpretation of § 546(e). (*See* Ex. E, Defs.' Net Equity Br. at 14-16; Ex. G, Defs.' App. Net Equity Br. at 29; Ex. I, Defs.' Mot. to Dismiss at 80-84.)

mark.  Any due diligence obligation that the Sterling Defendants had upon becoming aware of facts that placed them on inquiry notice of Madoff's fraud has nothing at all to do with any interpretation of SIPA or other non-bankruptcy federal law.  Rather, the Sterling Defendants' due diligence (or, in this case, lack thereof) is relevant only in the context of whether the Sterling Defendants can establish a good faith defense to the Trustee's avoidance claims under § 548(c) of the Bankruptcy Code and analogous state fraudulent conveyance laws.  Such an analysis requires nothing more than a straight-forward application of the Bankruptcy Code itself, as well as established case law interpreting the good faith defense under the Bankruptcy Code.  In fact, the Sterling Defendants acknowledged and cited to such case law when they made a similar argument in their Motion to Dismiss or for Summary Judgment.  (Ex. I, Defs.' Mot. to Dismiss at 75-78 (noting the relevance of a diligence investigation to the good faith analysis).)

## CONCLUSION

For the reasons discussed above, the Trustee respectfully requests that the Court deny the Sterling Defendants' Motion in its entirety and grant such other relief as is just and proper.

Date:  June 17, 2011
      New York, New York

By: */s/ David J. Sheehan*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Fernando A. Bohorquez, Jr.
Email:  fbohorquez@bakerlaw.com
Regina L. Griffin
Email:  rgriffin@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*