Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for the Sterling Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRVING H. PICARD, Plaintiff, | |
| - against – | 11-CV-03605 (JSR) (HBP) |
| SAUL B. KATZ, et al., Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE STERLING DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................2

WITHDRAWAL OF THE REFERENCE IS MANDATORY ....................2

1. The Trustee and SIPC Fail to Meaningfully Address Why Withdrawal Is Not Mandatory ....................3
2. The "Net Equity" Litigation Does Not Govern This Case ....................6
3. The Motion to Withdraw the Reference Is Not a Collateral Attack ....................7
4. The Conflict between SIPA and Section 546(e) ....................8
5. No Court Has Considered a Brokerage Customer's Diligence Obligation....................9
6. This Motion Is Timely ....................9

CONCLUSION ....................10

## TABLE OF AUTHORITIES

PAGE

### Cases

*Bear, Stearns Sec. Corp. v. Gredd*, No. 01 Civ. 4379, 2001 WL 840187 (S.D.N.Y. July 25, 2001) ....................4

*Devilla v. Schriver*, 245 F.3d 192 (2d Cir. 2001) ....................8

*In re Adelphia Commc'ns Corp.*, No. 03 MDL 1529, 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ....................5

*In re Boston Generating, LLC*, 10 Civ. 6528, 2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010) ....................4

*In re Chateaugay Corp.*, 86 B.R. 33 (S.D.N.Y. 1987) ....................4, 10

*In re Chateaugay Corp.*, 108 B.R. 27 (S.D.N.Y. 1989) ....................4

*In re Dana Corp.*, 379 B.R. 449 (S.D.N.Y. 2007)) ....................4, 5

*In re Enron Corp.*, 04 Civ. 8177, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ....................5

*In re Kenval Mktg. Corp.*, 69 B.R. 922 (Bankr. E.D. Pa. 1987) ....................8

*In re Fairfield Communities, Inc.*, No. LR-M-91-160, 1992 WL 158642 (E.D. Ark. Apr. 14, 1992) ....................5

*In re Porges*, 44 F.3d 159 (2d Cir. 1995) ....................7

*In re Schultz*, 250 B.R. 22 (Bankr. E.D.N.Y. 2000) ....................8

*In re Staff Mortgage & Inv. Corp.*, 625 F.2d 281 (9th Cir. 1980) ....................8

*Mishkin v. Ageloff*, 220 B.R. 784 (S.D.N.Y. 1998) ....................5

*Picard v. HSBC Bank PLC*, 11 Civ. 763, 2011 WL 1544494 (S.D.N.Y. Apr. 25, 2011) ....................4, 6

*Picard v. JPMorgan Chase & Co.*, 11 Civ. 0913, 2011 WL 2119720 (S.D.N.Y. May 23, 2011) ....................5

*Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................2, 7, 8

*Picard v. Merkin*, No. 09-1182, doc. no. 63 (Bankr. S.D.N.Y. Feb. 24, 2010) ....................9

*Stern v. Marshall*, __ U.S. __, No. 10-179, 2011 WL 2472792 (June 23, 2011) ............3, 4

**Statutes and Rules**

11 U.S.C. § 546(e) ......................................................................................................1, 8, 9

15 U.S.C. § 78*lll*(11)..........................................................................................................6

28 U.S.C. § 157 ...........................................................................................................2, 3

28 U.S.C. § 157(b) ..........................................................................................................3

28 U.S.C. § 157(d) ......................................................................................................1, 3, 4, 10

NYUCC Art. 8 ..............................................................................................................6, 9

SEC Rule 10b-5 ............................................................................................................6, 9

Sec. Exch. Act § 10(b) ..................................................................................................6, 9

**Other Authorities**

10 *Collier on Bankruptcy* § 7001.01 (16th ed. 2011) ........................................................7

Sterling Defendants respectfully submit this reply memorandum of law in further support of their motion, pursuant to 28 U.S.C. § 157(d), to withdraw from the Bankruptcy Court the reference of this adversary proceeding brought by the Trustee.[1]

## PRELIMINARY STATEMENT

This case requires substantial and material consideration of the critical interplay between and among SIPA, other securities laws and regulations, and the Bankruptcy Code. Among the key matters of first impression mandating withdrawal are the following:

- Does SIPA override otherwise applicable securities laws and render brokerage customer statements—not just the last statement, but also the many that come before it—no longer proof of a registered broker's legal obligations?

- Does SIPA eliminate the otherwise applicable limits upon the Bankruptcy Code avoidance provisions, permitting avoidance of transfers made by a registered broker well outside the preference period to discharge the broker's obligations to its customers under the federal and state securities laws?

- Is the safe harbor of Section 546(e) of the Bankruptcy Code inconsistent with SIPA in a SIPA liquidation triggered by a Ponzi scheme? Is a registered broker that engaged in a Ponzi scheme and that is liquidated under SIPA not a broker for purposes of Section 546(e)?

- Does SIPA impose upon customers of a registered broker a retroactive legal duty—and, if so, to whom—to investigate their broker to ensure that payments on account of their statements are not the product of a Ponzi scheme?

In opposing withdrawal, the Trustee and SIPC effectively ignore the relevant question of whether withdrawal is mandated because of substantive statutory

[1] Defined terms used herein have the same meaning as they did in the Sterling Defendants' moving memorandum.

considerations raised by their positions. Instead, relying principally on cases analyzing permissive rather than mandatory withdrawal, they contend that, because this proceeding is within the "core" bankruptcy jurisdiction and the Sterling Defendants have submitted to that jurisdiction, this case should be adjudicated by the Bankruptcy Court. The Trustee further argues that the "net equity" decision in the Second Circuit will determine the outcome here and complains that the Sterling Defendants are engaged in a "collateral attack" of the Bankruptcy Court's decision in *Picard v. Merkin*.

These arguments are disingenuous at best. Where withdrawal is mandatory, a case must be withdrawn regardless of whether it falls within the "core proceedings" definition of 28 U.S.C. § 157 or whether defendants have filed proofs of claim. The "net equity" litigation is directed toward an entirely distinct legal issue, resolution of which will not decide any issue in this case, let alone all of them. The Sterling Defendants were not parties, "technical" or otherwise, to the *Merkin* litigation. The Sterling Defendants have moved with expedition, both in moving for dismissal of this case and in seeking withdrawal.

**ARGUMENT**

**WITHDRAWAL OF THE REFERENCE IS MANDATORY**

The Trustee's and SIPC's arguments require substantial and material consideration of SIPA, which alone mandates withdrawal, and of other securities laws. Withdrawal is also mandatory because the Trustee's and SIPC's interpretations cause SIPA to conflict with the other securities laws and with the Bankruptcy Code.

**1. The Trustee and SIPC Fail to Meaningfully Address Why Withdrawal Is Not Mandatory**

In their respective oppositions to the Sterling Defendants' motion, neither SIPC nor the Trustee confronts the issue presented—namely, that withdrawal of the reference of this adversary proceeding is mandatory under 28 U.S.C. § 157(d) because it raises significant issues of non-bankruptcy federal law, including SIPA and other securities laws. SIPC addresses various aspects of SIPA's history and the merits of the Sterling Motion, while the Trustee addresses arguments not made by the Sterling Defendants. To the extent they address withdrawal at all, they rely almost exclusively on cases addressing permissive withdrawal, including Judge Preska's Madoff-related *Fairfield Sentry* decision and Judge Chin's *Enron* decision. (Trustee Withdrawal Opp. at 13, 16.)[2] They argue that the Trustee's claims are matters within the "core" competence of the Bankruptcy Court, pursuant to 28 U.S.C. § 157, and that, because the Sterling Defendants have submitted to bankruptcy jurisdiction, withdrawal is not appropriate. (*See, e.g.*, SIPC Withdrawal Opp. at 14-15; Trustee Withdrawal Opp. at 14-15.)

Indeed, under Section 157 the Trustee's claims are "core," and the Sterling Defendants have submitted to bankruptcy jurisdiction, but neither point is relevant.[3]

---

[2] Citations to "Trustee Withdrawal Opp." and "SIPC Withdrawal Opp." refer to the Trustee's and SIPC's respective memoranda of law in opposition to the Sterling Defendants' motion to withdraw the reference.

[3] Section 157(b) is not a grant of subject matter jurisdiction for "core" matters. *See Stern v. Marshall*, ___ U.S. ___, No. 10-179, 2011 WL 2472792, at *11-12 (June 23, 2011). The Supreme Court has ruled that Section 157(b) is unconstitutional to the extent that it grants authority to a non-Article III judge to "enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id*. at *27. In *Stern*, a creditor filed a proof of claim for defamation, thereby submitting to bankruptcy jurisdiction. He then filed a complaint against the debtor, alleging defamation and seeking to prevent the debtor's discharge. The debtor filed a

Where withdrawal of the reference is mandatory, a court does not have discretion to deny a petition for withdrawal. *See* 28 U.S.C. § 157(d) (providing that the district court "shall" withdraw a proceeding if the mandatory withdrawal standards are met); *see also In re Chateaugay Corp.*, 108 B.R. 27, 28 (S.D.N.Y. 1989) ("Congress intended that [mandatory] withdrawal be required when [the] standard is met, and that it not be a matter within the district court's discretion."); *In re Chateaugay*, 86 B.R. 33, 36-37 (S.D.N.Y. 1987) (when requirements for mandatory withdrawal are met, "a district court does not have discretion to deny a petition for withdrawal"); *accord Picard v. HSBC Bank PLC*, 11 Civ. 763, 2011 WL 1544494, at *2 (S.D.N.Y. Apr. 25, 2011) (withdrawal "*mandate*[*d*]" when necessary requirements satisfied).

Consequently, courts frequently have withdrawn the reference of proceedings that involve core matters because "[w]hether or not [the matter being withdrawn] is a core proceeding is irrelevant" to mandatory withdrawal. *In re Boston Generating, LLC*, 10 Civ. 6528, 2010 WL 4288171, at *5 (S.D.N.Y. Nov. 1, 2010) (rejecting argument that mandatory withdrawal was not proper for "core" claims); *see also In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007) (granting motion for mandatory withdrawal of "core" matter concerning resolution of bankruptcy claim objections); *Bear, Stearns Sec. Corp. v. Gredd*, 01 Civ. 4379, 2001 WL 840187, at *3-4 (S.D.N.Y. July 25, 2001) (withdrawing

---

counterclaim for tortious interference with contract. The bankruptcy court issued judgment on the debtor's counterclaim. On appeal, the Supreme Court ruled that only an Article III judge could issue a final judgment on the debtor's state law counterclaim—even though the litigation was part of a "core" proceeding and even though the plaintiff had submitted to jurisdiction. *See id.* at *9-10, 27. Here, the Sterling Defendants have asserted critical rights under non-bankruptcy federal and state law in opposition to the Trustee's avoidance claims. These defenses will not be resolved in the process of ruling on the Sterling Defendants' proofs of claim. It is respectfully submitted that the analysis in *Stern* provides another basis for withdrawal of the reference to an Article III court.

core avoidance claims because resolution involved substantial and material consideration of SEC rule that potentially barred avoidance).

That a party has submitted to bankruptcy jurisdiction is also irrelevant where the conditions for mandatory withdrawal exist because submission to bankruptcy jurisdiction does not waive the constitutional rights preserved by mandatory withdrawal. Accordingly, courts regularly withdraw the reference where parties have filed proofs of claim. *See, e.g.*, *In re Dana Corp.*, 379 B.R. at 450, 459 (finding withdrawal of reference mandatory even though movant submitted to bankruptcy court's jurisdiction by filing proof of claim); *In re Adelphia Commc'ns Corp.*, No. 03 MDL 1529, 2006 WL 337667, at *1, 3, 5 (S.D.N.Y. Feb. 10, 2006) (withdrawing reference on mandatory and permissive grounds even though defendants submitted proofs of claim); *In re Enron Corp.*, 04 Civ. 8177, 2004 WL 2711101, at *1, 4 (S.D.N.Y. Nov. 23, 2004) (granting mandatory withdrawal even though defendants filed proofs of claim); *see also, e.g.*, *In re Fairfield Communities, Inc.*, No. LR-M-91-160, 1992 WL 158642, at *2 (E.D. Ark. Apr. 14, 1992) (withdrawing the reference *specifically to resolve* proof of claim and rejecting argument that submission to bankruptcy jurisdiction precluded mandatory withdrawal).

Finally, withdrawal is not inefficient here because the Bankruptcy Court has not expended resources on the Sterling Motion and consideration of the Motion will not require any deep familiarity with the Madoff fraud. In any event, where withdrawal is mandatory, considerations such as judicial efficiency also are irrelevant. *See Picard v. JPMorgan Chase & Co.*, 11 Civ. 0913, 2011 WL 2119720, at *7 (S.D.N.Y. May 23, 2011) (requiring withdrawal notwithstanding the "bankruptcy court's familiarity with a statute outside of Title 11"); *Mishkin v. Ageloff*, 220 B.R. 784, 798-99 (S.D.N.Y. 1998)

(withdrawing the reference on mandatory grounds irrespective of uniformity arguments raised by non-movants); *cf. HSBC*, 2011 WL 1544494, at *2 n.3, 5 (identifying permissive withdrawal considerations and deeming resolution of permissive withdrawal request unnecessary where withdrawal was mandatory).

**2. The "Net Equity" Litigation Does Not Govern This Case**

The Trustee's argument that the "net equity" litigation pending before the Second Circuit precludes withdrawal of the reference of this adversary proceeding is incorrect. (Trustee Withdrawal Opp. at 9-11, 21-22; *see also* SIPC Withdrawal Opp. at 22-23.) The issues in the two matters are quite different.

The issue before the Second Circuit is the proper interpretation of "net equity," which defines a "customer" claim against a bankrupt broker's estate and the SIPC Fund under SIPA. "Net equity" is "the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase *on the filing date*, all securities positions of such customer[.]" 15 U.S.C. § 78*lll*(11) (emphasis added). The "net equity" definition is relevant only *after* a SIPA case commences. Before commencement of a SIPA liquidation, SIPA does not apply, and no customer has a "net equity" claim.

The Complaint, in contrast, asserts claims *against* customers, not claims *by* customers, and challenges transactions that occurred long *before* SIPA was applicable, during a period of time when the broker's obligations were governed by Article 8 of the UCC and an array of federal securities laws, including Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"). Under those laws, BLMIS was obligated to its customers for the securities on their brokerage statements, and the

customers were legally entitled to make withdrawals from those accounts. No provision of SIPA, or any other law, alters these obligations or legal entitlements simply because a SIPA liquidation is commenced. The Trustee's contention that SIPA permits him to reach back decades before the SIPA filing to recover, as fraudulent, transfers that were legal at the time they were made has nothing to do with "net equity" and is not before the Second Circuit.

**3. The Motion to Withdraw the Reference Is Not a Collateral Attack**

Equally spurious is the contention that this motion to withdraw the reference is a collateral attack upon the Bankruptcy Court's decision in *Picard v. Merkin*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010). (Trustee Withdrawal Opp. at 10-11, 22-23.)

First, in his brief in opposition to the Sterling Motion, the Trustee did not contend that the Sterling Defendants were bound by the *Merkin* decision—a case in which no Sterling Defendant was a party and which was decided *before* any Sterling Defendant was sued. Any such position would have been contrary to the most basic of legal principles. *See In re Porges*, 44 F.3d 159, 163 n.2 (2d Cir. 1995) ("[A]n adversary proceeding and the companion bankruptcy case constitute two distinct proceedings."); 10 *Collier on Bankruptcy* § 7001.01 (16th ed. 2011) ("Adversary proceedings are separate lawsuits within the context of a particular bankruptcy case . . . ."). Although it is likely that the same legal issue presented in two different adversary proceedings arising in a particular bankruptcy case will be decided in the same way by the same judge, that practical reality is no basis to preclude mandatory withdrawal in an entirely separate case.

Second, and even more extreme, is the claim that *Merkin* should be considered the law of the case. That doctrine applies to matters "decided during the course of *a single*

*continuing lawsuit*." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (emphasis added) (internal quotation marks omitted). "The underlying bankruptcy case and an adversary proceeding are distinct legal actions, with very different relief sought," *In re Kenval Mktg. Corp.*, 69 B.R. 922, 926-27 (Bankr. E.D. Pa. 1987), as are separate adversary proceedings arising from the same bankruptcy case, *see In re Staff Mortgage & Inv. Corp.*, 625 F.2d 281, 283 (9th Cir. 1980) (law of the case doctrine inapplicable in separate adversary proceedings arising out of same bankruptcy); *In re Schultz*, 250 B.R. 22, 35 (Bankr. E.D.N.Y. 2000) (law of the case inapplicable to subsequent adversary proceeding involving same bankrupt because it was a different litigation involving different parties). The Sterling Motion, made in a lawsuit separate from the *Merkin* case, raises different legal and factual issues and requires an independent adjudication.

**4. The Conflict between SIPA and Section 546(e)**

The Trustee also argues that the *Merkin* decision precludes consideration of the issue of whether Section 546(e) applies to any BLMIS transfer. (Trustee Withdrawal Opp. at 11, 23-24.)

First, as noted, the *Merkin* decision applies as a juridical matter only to the parties to that case, not to any Sterling Defendant.

Second, the Trustee disingenuously argues that Judge Lifland's decision in *Merkin* "certainly did not find that any [conflict between SIPA and the Bankruptcy Code] exists" concerning application of Section 546(e). (Trustee Withdrawal Opp. at 24.) In fact, Judge Lifland concluded that Section 546(e) was "*incompatible with SIPA*" and, thus, did not apply, *Merkin*, 440 B.R. at 267-68 (emphasis added), agreeing with the Trustee's argument in that case, *see* Mem. of Law in Opp'n to Mot. by Defs. Ariel Fund

& Gabriel Capital to Dismiss the 2d Am. Compl., *Picard v. Merkin*, No. 09-1182, doc. no. 63, at 36 (Bankr. S.D.N.Y. Feb. 24, 2010) (arguing that Section 546(e) "would be inconsistent with SIPA and inapplicable"). The *Merkin* case itself exemplifies the basis for withdrawal as to the application of Section 546(e) in a SIPA case.

**5. No Court Has Considered a Brokerage Customer's Diligence Obligation**

A key issue of first impression presented by this case is the relevant law by which to evaluate the duty, or lack thereof, owed by brokerage customers targeted by avoidance claims—that applicable at the time of the transfers or a different rule imposed by SIPA.

In this case, the Complaint seeks to avoid transfers of what the Trustee calls "principal"—transfers equal to the sum of net cash deposited with BLMIS—on the ground that the Sterling Defendants breached a duty, retroactively imposed by SIPA, to perform due diligence on BLMIS. But at the time of the targeted transactions, the transactions between the Sterling Defendants and BLMIS were governed by the UCC and the federal securities laws, including Section 10(b) and Rule 10b-5 of the Exchange Act. Those laws impose no diligence obligation on any brokerage customer and certainly no duty to any third party. No other law imposes any such duty either. This fundamental issue is a matter of first impression requiring substantial interpretation of SIPA and, therefore, mandating withdrawal.

**6. This Motion Is Timely**

The suggestion that the instant motion is not timely is particularly disingenuous. (Trustee Withdrawal Opp. at 12-13.) First, as noted, the legal issues presented by the "net equity" omnibus briefing are different than those presented here. Second, it is not the Sterling Defendants' position that any of the applicable bodies of law is in conflict

with another—it is the arguments put forward by SIPC and the Trustee that create the conditions for mandatory withdrawal. Therefore, any motion prior to the filing by SIPC and the Trustee of their briefs in opposition to the Sterling Motion would have been premature. This motion was made within days after those papers, making plain that the non-Bankruptcy Code issues to be considered were "non-speculative and necessary to the resolution of the proceeding," *Chateaugay*, 86 B.R. at 40, were filed. Briefing on the underlying motion was also expeditious and is now complete. (*See* Reply Mem. of Law in Further Support of Sterling Motion, dated June 20, 2011, attached as Exhibit G to the Supplemental Declaration of Karen E. Wagner in Further Support of Sterling Defendants' Motion to Withdraw the Reference.)

## **CONCLUSION**

For the reasons set forth above and in the Sterling Defendants' moving memorandum, the reference of this adversary proceeding is subject to mandatory withdrawal to this Court pursuant to 28 U.S.C. § 157(d).

Dated: New York, New York
June 24, 2011

DAVIS POLK & WARDWELL LLP

By: /s/ Karen E. Wagner

Karen E. Wagner
Dana M. Seshens
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for the Sterling Defendants*