**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- :

SECURITIES INVESTOR PROTECTION      :
CORPORATION,      :
      :
           Plaintiff-Applicant,      :
      :      Adv. Pro. No. 08-01789 (BRL)
           v.      :      SIPA LIQUIDATION
      :      (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT      :
SECURITIES LLC,      :
      :
           Defendant.      :

---------------------------------------------------------- :

In re:      :
           BERNARD L. MADOFF,      :
      :
           Debtor.      :

---------------------------------------------------------- :

IRVING H. PICARD, Trustee for the Liquidation      :      Adv. Pro. No. 10-05287 (BRL)
of Bernard L. Madoff Investment Securities LLC,      :
      :
           Plaintiff,      :
      :
           v.      :
      :
SAUL B. KATZ, *et al.*,      :
      :
           Defendants.      :

---------------------------------------------------------- :

**MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO STERLING DEFENDANTS' MOTION**
**TO DISMISS THE AMENDED COMPLAINT OR, IN**
**THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, D.C. 20005
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
LAUREN T. ATTARD
Staff Attorney

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT OF THE ISSUES ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

      1.    The Case ................................................................................................................. 2

      2.    The Defenses ......................................................................................................... 4

SUMMARY OF THE ARGUMENT ................................................................................. 5

STANDARD OF REVIEW ................................................................................................ 7

ARGUMENT ........................................................................................................................ 8

OVERVIEW OF SIPA ....................................................................................................... 8

I.        A SIPA TRUSTEE CAN BRING FRAUDULENT
          CONVEYANCE ACTIONS ...................................................................................... 9

      1.    Defendant's Interpretation of SIPA Limiting a Trustee's Capacity
           to Sue In Avoidance Is Inconsistent With the Provisions and Purposes
           of SIPA ................................................................................................................... 9

      2.    "Customers" Are Not Immune From Fraudulent Transfer Actions ..................... 11

      3.    The Trustee Is Not Limited to Preference Actions ............................................. 14

II.      BECAUSE IT DOES NOT APPLY UNDER THE FACTS OF THIS CASE,
          SECTION 546(e) DOES NOT BAR THE TRUSTEE'S ACTION ..................... 16

      1.    Defendants' Construction of Section 546(e) of the Bankruptcy Code
           Undermines, Rather Than Effectuates, the Purposes of that Provision ............... 17

      2.    Relevant Factors in Determining Whether Section 546(d) Applies ..................... 18

III.     DEFENDANTS ARE INCORRECT THAT "ANTECEDENT DEBT"
          IS TO BE MEASURED ACCORDING TO THE FICTITIOUS ACCOUNT
          STATEMENTS ...................................................................................................... 20

      1.    The Uniform Commercial Code ......................................................................... 21

**TABLE OF CONTENTS**
(cont.)

**PAGE**

2.   Federal Securities Law Decisions .......................................................................22

IV.   THE PONZI SCHEME PRESUMPTION APPLIES TO THIS CASE ................25

CONCLUSION ..............................................................................................................27

# TABLE OF AUTHORITIES

<u>CASES:</u>                                                                                              <u>PAGE</u>

*In re Adler, Coleman Clearing Corp.*, 263 B.R. 406 (S.D.N.Y. 2001) ...................................17, 20

*American Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269 (1946).......................................................22

*American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   351 F.Supp.2d 79 (S.D.N.Y. 2004)........................................................................................19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).................................................................7

*Ashcroft v. Iqbal*, ___ U. S. ___, 129 S.Ct. 1937 (2009) ............................................................7

*In re Bayou Group, LLC*, 362 B.R. 624 (S.D.N.Y. 2007) ..........................................................27

*In re Bayou Group, LLC*, 439 B.R. 284 (S.D.N.Y. 2010) ..........................................................25

*Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd).*,
   397 B.R. 1 (S.D.N.Y. 2007)............................................................................................25, 26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………..…………………………..7

*In re Bell & Beckwith*, 937 F.2d 1104 (6th Cir. 1991).................................................................8

*In re Bell & Beckwith*, 104 B.R. 842 (Bankr. N. D. Ohio 1989),
   *aff'd*, 937 F.2d 1104 (6th Cir. 1991) ....................................................................................21

*In re Bernard L. Madoff Investment Securities LLC*, 424 B.R. 122
   (Bankr. S.D.N.Y. 2010), *appeal docketed*, No. 10-2378-BK(L) (2d Cir.) ................................20

*In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353 (D.N.J.),
   *appeal dismissed*, 802 F.2d 445 (3rd Cir. 1986)…………………………..………………………21

*Bevill, Bresler & Schulman v. Spencer Sav. & Loan Ass'n*,
   878 F.2d 742 (3d Cir. 1989)........................................................................................17, 18

*Bondy v. Chemical Bank*, [1975-76 Transfer Binder] Fed. Sec. L. Rep.
   (CCH) ¶95,360 (S.D.N.Y. 1975) ..........................................................................................10,11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………..……......7

*In re Chase & Sanborn Corp.*, 813 F.2d 1177 (11th Cir. 1987).................................................11

*In re the Drexel Burnham Lambert Group*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991).....................16

# TABLE OF AUTHORITIES
**(cont.)**

**CASES:**                                                                                    **PAGE**

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
   323 B.R. 857 (Bankr. S.D.N.Y. 2005) ...................................................................18

*In re Enron Creditors Recovery Corp.*, 422 B.R. 423 (S.D.N.Y. 2009) .......................19

*Exchange National Bank of Chicago v. Wyatt*, 517 F.2d 453 (2d Cir. 1975 ...................8

*Executive Securities Corp. v. Doe, 702 F.2d 406 (2d Cir.)*,
   *cert. den., 464 U. S. 818 (1983)* .................................................................................9

*Focht v. Athens* (*In re Old Naples Securities, Inc.*), 311 B. R. 607 (M. D. Fla. 2002)..................24

*Focht v. McDermott (In re Old Naples Securities, Inc.), 343 B.R. 310*
   (Bankr. M.D. Fla. 2006).............................................................................................13

*Freeman v. Seligson*, 405 F.2d 1326 (D.C. Cir. 1968) .................................................16

*Gindes v. United States*, 740 F.2d 947 (Fed. Cir. 1984).................................................21

*Gold v. Hyman*, [1974-75 Transfer Binder] Fed. Sec. L. Rep. (CCH)
   ¶95,043 (S.D.N.Y. 1975) .......................................................................................9, 10

*Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
   359 B.R. 510 (Bankr. S.D.N.Y. 2007)*, aff'd, in part, and rev'd,*
   *in part, on other grounds, 397 B. R. 1 (S.D.N.Y. 2007)* .........................................25

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406
   (S.D.N.Y. 2001)..........................................................................................................13

*Kelly v. Robinson*, 479 U.S. 36 (1986) .........................................................................17

*In re Klein, Maus & Shire, Inc.*, 301 B. R. 408 (Bankr. S.D.N.Y. 2003)........................6

*Klein v. Tabatchnick*, 418 F.Supp. 1368 (S.D.N.Y. 1976), *affirmed in part*
   *and reversed in part*, 610 F.2d 1043 (2d Cir. 1979).................................................11

*In the Matter of Lewellyn*, 26 B.R. 246 (Bankr. S.D. Iowa 1982)............................9, 10

*In re Lloyd Securities, Inc.*, 75 F.3d 853 (3d Cir. 1996)................................................8

**TABLE OF AUTHORITIES**
**(cont.)**

**CASES:**                                                                  **PAGE**

*Massachusetts v. Morash*, 490 U.S. 107 (1989) ...........................................................17

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................7

*McMahan & Co. v. Wherehouse Entertainment Inc.*, 65 F.3d 1044
   (2d Cir. 1995), *cert. den.*, 517 U. S. 1190 (1996) ..................................................23

*Mishkin v. Ensminger (In re Adler Coleman Clearing Corp.)*,
   218 B.R. 689 (Bankr. S.D.N.Y. 1998) .....................................................................11

*In re New Times Securities Services, Inc.*, 371 F.3d 68 (2d Cir. 2004) ..................22

*In re New Times Secs. Servs., Inc.*, 463 F.3d 125 (2d Cir. 2006) ............................8

*Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986)...................................17

*Osofsky v. Zipf*, 645 F.2d 107 (2d Cir. 1981)..........................................................22

*Panos v. Island Gem Enterprises, Ltd., N. V.*, 880 F.Supp. 169 (S.D.N.Y. 1995) .......23

*Picard v. Chais (In re Bernard L. Madoff Investment Securities LLC)*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) .....................................................................13

*Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC)*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ................................................................13, 20

*Picard v. Taylor (In re Park South Securities, LLC)*, 326 B.R. 505
   (Bankr. S.D.N.Y. 2005...............................................................................................12

*Samantar v. Yousef*, ___ U. S. ___, 130 S. Ct. 2278 (2010).................................14

*S.E.C. v. Albert & Maguire Sec. Co.*, 378 F.Supp. 906 (E.D. Pa. 1974) ...............21

*SEC v. Albert & Maguire Sec. Co.*, 560 F.2d 569 (3d Cir. 1977).............................10

*SEC v. North American Planning Corp.*, [1975-76 Transfer Binder]
   Fed. Sec. L. Rep. (CCH) ¶95,326 (S.D.N.Y. 1975).............................................11, 15

*In re Sharp International Corp.*, 403 F.3d 43 (2d Cir. 2005)...................................25

# TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                                                                                            **PAGE**

*SIPC v. Ambassador Church Finance/Development Group, Inc.*,
  788 F.2d 1208 (6th Cir.), *cert. den. sub nom.*, *Pine Street Baptist
Church v. SIPC*, 479 U.S. 850 (1986)................................................................8

*SIPC v. Charisma Securities Corp.*, 506 F.2d 1191 (2d Cir. 1974)...........................15

*SIPC v. Christian-Paine & Co.*, 755 F.2d 359 (3d Cir. 1985)........................................9

*SIPC v. Securities Northwest, Inc.*, 573 F.2d 622 (9th Cir. 1978)...............................15

*SIPC v. S.J. Salmon*, No. 72 Civ. 560, 1973 U. S. Dist. LEXIS
  15606 (S.D.N.Y. Aug. 8, 1973) ...............................................................12

*Springer v. Philippine Islands*, 277 U.S. 189 (1928)....................................................16

*Young v. Hibee Co.*, 324 U.S. 204 (1945)...................................................................13

## STATUTES AND RULES:

Securities Investor Protection Act, as amended, 15 U.S.C. §

78eee(d)....................................................................................................................1
78fff(a)......................................................................................................................8
78fff(a)(4).............................................................................................................9, 16
78fff(b)...................................................................................................................8, 9
78fff-1....................................................................................................................16
78fff-1(a)........................................................................................................4, 9, 14, 16
78fff-2(a)(3)............................................................................................................8, 9
78fff-2(b)..................................................................................................................8
78fff-2(c)(1)............................................................................................................8, 9
78fff-2(c)(3).............................................................................................................15
78fff-(3)(a)................................................................................................................8
78*lll*(11)..................................................................................................................20

Securities Exchange Act of 1934, 15 U.S.C. §

78j(b)......................................................................................................................23

## TABLE OF AUTHORITIES
**(cont.)**

**STATUTES AND RULES:**                                    **PAGE**

United States Bankruptcy Code, 11 U.S.C. §

102(3) ....................................................................................................................14
105(a) ......................................................................................................................4
510(c)(1) ..................................................................................................................4
544....................................................................................................................3
546(e) .............................................................................. 2, 5, 7, 17-20, 25
547....................................................................................................................4, 5
547(b) ......................................................................................................................4
547(b)(2) ..................................................................................................................4
548....................................................................................................................9, 16
548(a)(1)(A) ....................................................................................3, 5, 25
548(a)(1)(B) ..........................................................................................3, 5
548(c) ......................................................................................................................4
548(d)(2)(A) ............................................................................................4
550(a) ..............................................................................................................3, 4
551....................................................................................................................3, 4
704(1) ....................................................................................................................16

Federal Rules of Civil Procedure §

9(b)  ........................................................................................................................7
56(a) ........................................................................................................................7

Federal Rules of Bankruptcy Procedure §

7009(b)....................................................................................................................7
7012(b)(6) ..............................................................................................................1
7012(d)....................................................................................................................1
7056........................................................................................................................1

Securities Exchange Commission Rule, 17 C.F.R. §240.

15c3-3(b)..............................................................................................................24
15c3-3(e)..............................................................................................................24

Securities Investor Protection Corporation Series 500 Rules, 17 C.F.R. §300.

503(a) ....................................................................................................................13

## TABLE OF AUTHORITIES
**(cont.)**

**OTHER AUTHORITY:**                                                              **PAGE**

U.S. Constitution,

Art. VI, cl. 2 .................................................................................................21

## LEGISLATIVE MATERIALS:

H.R. Rep. No. 97-420, *reprinted in*
    1982 U.S.C.C.A.N. 583 .........................................................................17

H.R. Rep. No. 109-648, *reprinted in*
    2006 U.S.C.C.A.N. 1585 .......................................................................18

Pub. L. No. 109-390, 109 Stat. 2693 (2006)................................................17

## TREATISES:

3 *Collier on Bankruptcy* ¶60.85 (14th ed. 1977)……………………………………...10

6 *Collier on Bankruptcy* ¶741.07 (16th ed. 2010) .......................................19

2A *Sutherland Statutory Construction* §47.07 (7th ed. 2010) ......................14

Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the defendants in this case ("Defendants") have moved to dismiss the amended complaint ("Complaint") filed against them by Irving H. Picard ("Trustee"), trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff, under the Securities Investor Protection Act, 15 U.S.C. §78aaa *et seq*. ("SIPA"), and of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor").[1]  Alternatively, and pursuant to Bankruptcy Rules 7012(d) and 7056, Defendants have moved for summary judgment.  The Securities Investor Protection Corporation ("SIPC") submits this memorandum of law in opposition to Defendants' motion ("Motion").[2]  While SIPC supports the position of the Trustee in opposing the Motion, SIPC limits its response herein to issues raised by the Defendants that involve an interpretation of SIPA.

## STATEMENT OF THE ISSUES

The issues presented by the Motion and addressed herein by SIPC are:

(1) Whether the only avoidance actions that a SIPA trustee can bring against customers are preference actions where SIPA a) vests in the trustee all of the powers of a bankruptcy trustee "including the same rights to avoid preferences;" b) bankruptcy trustees can bring, among others, fraudulent conveyance actions as well as preference actions; c) the word "including" is a word of enlargement and not limitation; and d) limiting the trustee to preference actions would deprive the trustee of a significant means of collecting property in contravention of his duty to maximize the estate for the benefit of customers and creditors of the debtor;

---

[1]  *See* Notice of Motion to Dismiss the Amended Complaint or, In the Alternative, for Summary Judgment, filed herein (Doc. No. 35).

For convenience, references herein to provisions of SIPA shall omit "15 U.S.C."

[2]  Under SIPA section 78eee(d), SIPC is a party in interest as to all matters arising in a SIPA proceeding, with the right to be heard on all such matters.

(2) Where the purpose of section 546(e) of Title 11 of the United States Code (the "Bankruptcy Code") is to ensure the stability of the financial system by exempting from avoidance certain transfers associated with ordinary market transactions, whether section 546(e) exempts from avoidance transfers associated with phantom trades that never occurred whose avoidance therefore could not have the adverse effects on the markets that section 546(e) was designed to prevent;

(3) Whether in a SIPA proceeding the indebtedness of a broker to a customer, that is, the customer's "net equity," is to be determined under SIPA which is a federal law, or according to state law that is inconsistent with SIPA or inapplicable federal securities case law; and

(4) Whether the Ponzi scheme presumption that transfers in a Ponzi scheme are made with the intent to hinder, delay and defraud creditors applies in SIPA cases where the presumption is well-established in non-SIPA bankruptcy cases, is applied in SIPA cases, and a failure to apply the presumption would unfairly disadvantage customers and creditors in a SIPA case versus those in non-SIPA bankruptcy cases.

SIPC respectfully submits that the SIPA Trustee is not limited to preference actions, section 546(e) does not apply to this case, the customer's net equity is to be determined according to SIPA, and the Ponzi scheme presumption applies.

## **STATEMENT OF FACTS**

### 1. **The Case**

This is a suit by the Trustee to recapture for the benefit of BLMIS customers stolen BLMIS customer funds transferred to Defendants, including but not limited to amounts by which Defendants profited from the fraud, and for other relief.

The Defendants include Sterling Equities partners,[3] their family members, their related trusts, and various entities they own, operate, and control. The Trustee alleges that over their 25-plus year relationship with BLMIS, Defendants received hundreds of millions of dollars in fictitious profits from BLMIS. In total, Defendants received $300,000,000 in fictitious profits and over $700,000,000 in principal (together, the "Transfers") from BLMIS. The Trustee contends that Defendants were among the largest beneficiaries of the BLMIS Ponzi scheme. All of the funds that they received were customer funds converted by Bernard Madoff. Complaint at ¶ 1105.

The Sterling Partners opened and administered 483 accounts at BLMIS, approximately 300 of which were accounts for themselves, their families, their trusts and entities. *Id*. at ¶ 4. The Trustee alleges that the Sterling Partners relied on Madoff's consistent and steady returns as a source of liquidity to develop and sustain their businesses, and that because the BLMIS money was so deeply entrenched within Defendants' businesses, the Defendants willfully turned a blind eye to the fraud at BLMIS. The Complaint details the various indicia of fraud that should have triggered the Defendants to investigate BLMIS but which they failed to do because it would not have financially benefitted them. *Id*. at Section IX.

The Trustee seeks to avoid the Transfers as (i) actual fraudulent transfers under Bankruptcy Code sections 544, 548(a)(1)(A), 550(a), and 551 and New York Debtor and Creditor Law; (ii) constructive fraudulent transfers under Bankruptcy Code sections 544, 548(a)(1)(B), 550(a), and 551 and New York Debtor and Creditor Law; and (iii) preferential

---

[3]     The general partners of Sterling include: Saul B. Katz, Fred Wilpon, Michael Katz, Richard Wilpon, David Katz, Thomas Osterman, Jeffrey Wilpon, Arthur Friedman, Gregory Katz, Marvin B. Tepper, and the late Leonard Schreier, whose BLMIS account interests after his death through the Filing Date were held by his estate (collectively, the "Sterling Partners"). Amended Complaint (Doc. No. 34) ("Complaint") at Section V.B.

transfers under Bankruptcy Code sections 547(b), 550(a), and 551.  In addition, the Trustee seeks to disallow the Defendants' customer claims, or, to the extent any Defendant's claim is allowed, equitably to subordinate the allowed customer claim pursuant to Bankruptcy Code sections 510(c)(1) and 105(a).

## 2. **The Defenses**

The Defendants assert that they were "customers" of BLMIS and that the amounts that they received essentially were paid in the ordinary course of the Debtor's business as a brokerage.  Defendants make several arguments in support of their position that the Trustee's suit therefore is improper and subject to dismissal.  Among other things, they contend that:

1.  SIPA limits avoidance suits by a trustee under SIPA section 78fff-1(a) to preferences;

2.  fraudulent conveyance suits cannot be brought against customers because such suits allegedly run counter to the goal of customer protection under SIPA;

3.  the fictitious account statements issued by BLMIS allegedly reflected what the Defendants were owed and therefore, payments received by them purportedly were on account of antecedent debts owed to them by the Debtor.  Recovery by the Trustee would at best be limited to the recovery of preferences under section 547 of the Bankruptcy Code which allows avoidance of transfers made on account of an antecedent debt owed by the Debtor before the transfer.  11 U.S.C. §547(b)(2).  No fraudulent conveyance action, however, could be brought because such actions would be barred under section 548(c).  Transfers in satisfaction of antecedent debts of the Debtor would have been for "value" as defined in section 548(d)(2)(A) of Title 11.  A fraudulent conveyance action is subject to the defense that under 11 U.S.C. section 548(c), a transferee can retain a transfer that is taken for value and in good faith;

4.  each payment that Defendants received from BLMIS was allegedly received in connection with a securities contract.  Section 546(e) would bar any action by the Trustee to avoid preferences under section 547 of the Bankruptcy Code and fraudulent conveyances under 548(a)(1)(B) of the Bankruptcy Code.  Section 546(e) does not apply to fraudulent conveyance suits under section 548(a)(1)(A) of Title 11, but Defendants assert that even if such an action could be brought, it would be limited to transfers that occurred within two years prior to the date BLMIS was placed in liquidation. *See* Bankruptcy Code §548(a)(1)(A); and

5.  the Ponzi scheme presumption, namely, that transfers out of a Ponzi scheme are made with the actual intent to hinder, delay and defraud creditors, applied in connection with the Trustee's action under section 548(a)(1)(A), has no role in a SIPA case.

Def. Mem. at 57-58.[4]

On these grounds, among others, the Defendants assert that they are entitled to keep the funds that they received from BLMIS even though the monies belong to other customers.

## SUMMARY OF THE ARGUMENT

In an effort to circumvent the law on fraudulent and preferential transfers, Defendants repeatedly mischaracterize SIPA and misstate the law.  Among other things, Defendants are incorrect that a SIPA trustee can only bring preference actions.  They are incorrect that a SIPA trustee cannot sue customers for fraudulent transfers.  And they are incorrect that the Ponzi scheme presumption is unavailable in a SIPA case.

---

[4]    Memorandum of Law In Support of Sterling Defendants' Motion to Dismiss the Amended Complaint Or, In the Alternative, for Summary Judgment (Doc. No. 37) ("Def. Mem.")

The Trustee is vested with the power to avoid fraudulent transfers, just as he is vested with the power to avoid preferential transfers. At its core, a SIPA proceeding is a bankruptcy proceeding that incorporates provisions of the Bankruptcy Code specifically made applicable to it under SIPA. Those provisions include the power of a bankruptcy trustee to avoid preferences, as well as fraudulent transfers. Just as fraudulent transfers ensure equitable treatment of creditors under the Bankruptcy Code, fraudulent transfers are pivotal to ensure equal treatment of creditors, including customers, in a SIPA case. Allowing one customer to keep fraudulent transfers – particularly in the amounts at issue here – provides a windfall to that customer at the expense of all others.

Defendants are no exception to this rule. Defendants assert that they should be immune from fraudulent transfer suits because they were customers of BLMIS and SIPA's purpose is to protect customers. Defendants' simplistic argument is flawed in two major respects. First, it contravenes the purpose of customer protection under SIPA. SIPA is designed to protect *all* customers, and not just the select few. In order to protect all customers, a Trustee must be able to pursue the same avoidance actions against customers as he can against general creditors and third party transferees. Second, Defendants' makeshift rationale has no basis in SIPA, the Bankruptcy Code, or in case law. "Customer" status does not entitle Defendants to special treatment, particularly at the expense of other customers.[5]

Defendants also fail to recognize that the liquidation of BLMIS requires the application of established case law specific to Ponzi schemes. Contrary to Defendants' assertions, transfers

---

[5] It bears noting that the Defendants would be customers only as to amounts deposited by them with the broker and custodied with it. To the extent their claims were for fictitious profits, such claims are claims for damages, and the Defendants' status would be that of general unsecured creditors. *See In re Klein, Maus & Shire, Inc*., 301 B. R. 408, 421 (Bankr. S.D.N.Y. 2003).

made by the Ponzi scheme perpetrator necessarily were made with the actual intent to hinder, delay and defraud creditors.   In addition, Defendants are not immune from fraudulent transfer law by virtue of the settlement payment exception in Bankruptcy Code section 546(e).   Indeed, this Court has concluded that section 546(e) is not a valid defense in adversary proceedings related to the BLMIS liquidation and on similar facts.  Defendants' repeated misstatements of the law cannot support the relief Defendants seek.

## STANDARD OF REVIEW

On a motion to dismiss, all factual allegations in the Complaint are to be taken as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  A motion to dismiss should be denied when the complaint contains sufficient facts to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U. S. ___, 129 S.Ct. 1937, 1949 (2009).  For allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that a complaint "state with particularity the circumstances constituting fraud."  *See* Bankruptcy Rule 7009(b).

Rule 56, made applicable here by Bankruptcy Rule 7056, provides that summary judgment is proper only if a movant "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).   All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the Trustee. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Summary judgment is inappropriate if a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

# ARGUMENT

## OVERVIEW OF SIPA

A SIPA proceeding is essentially a bankruptcy liquidation remodeled to achieve the special purposes of SIPA.  *See* §78fff(a).  *See*, *e.g.*, *Exchange National Bank of Chicago v. Wyatt*, 517 F.2d 453, 457-459 (2d Cir. 1975); *In re Lloyd Securities, Inc.*, 75 F.3d 853, 857 (3d Cir. 1996); *SIPC v. Ambassador Church Finance/Development Group, Inc.*, 788 F.2d 1208, 1210 (6th Cir.), *cert. den. sub nom.*, *Pine Street Baptist Church v. SIPC*, 479 U.S. 850 (1986).  Unless SIPA mandates a different result, a SIPA proceeding is to "be conducted in accordance with and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7" of the Bankruptcy Code.  SIPA §78fff(b).

The provisions that modify traditional bankruptcy law are principally related to SIPA's "customer" provisions.  Pursuant to those provisions, claimants who qualify as "customers" receive preferred treatment.  They share ratably in the fund of "customer property" – consisting generally of the cash and securities custodied with the broker-dealer for customers – on the basis and to the extent of their respective "net equities," and to the exclusion of general creditors.  *See* SIPA §78fff-2(b) and (c)(1).  *See also In re New Times Secs. Servs., Inc.*, 463 F.3d 125, 128-29 (2d Cir. 2006); *In re Bell & Beckwith*, 937 F.2d 1104, 1106-08 (6th Cir. 1991).  To the extent of a shortfall in customer property, within certain limits, "customers" may have their claims satisfied out of funds advanced by SIPC.  SIPA §78fff-3(a).

While customer protection is a highly significant objective of SIPA, SIPA also makes the trustee responsible to the entire bankruptcy estate.  Accordingly, both customers and general creditors may file claims against the estate in a SIPA liquidation, and general creditors are subject to the same claims filing deadline as customers.  SIPA §78fff-2(a)(3).  *Cf., In the Matter*

*of Lewellyn*, 26 B.R. 246, 253-254 (Bankr. S.D. Iowa 1982); *Gold v. Hyman*, [1974-75 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,043, at 97, 657-58 (S.D.N.Y. 1975). Any general estate is distributed in the order of priority established in Section 726 of the Bankruptcy Code. SIPA §78fff(e). To the extent customers are not fully satisfied from customer property and any SIPC advance, they share *pari passu* with general creditors in any general estate. SIPA §78fff-2(c)(1).

**I.  A SIPA TRUSTEE CAN BRING FRAUDULENT CONVEYANCE ACTIONS**

**1.  Defendant's Interpretation of SIPA Limiting a Trustee's Capacity to Sue In Avoidance Is Inconsistent With the Provisions and Purposes of SIPA**

As previously mentioned, a SIPA liquidation is conducted not only in accordance with, but as though it were being conducted under, specified chapters and subchapters of the Bankruptcy Code, to the extent consistent with SIPA. §78fff(b). One of the chapters is chapter 5. Chapter 5 of the Bankruptcy Code includes section 548, the fraudulent conveyance section. Contrary to the Defendants' assertion, there is no provision in SIPA that makes section 548 unavailable in any respect to a SIPA trustee. To limit the Trustee in his ability to recover assets in avoidance would be inconsistent with his obligation to liquidate the Debtor and in the process, to resolve all claims against the Debtor by satisfying claimants to the maximum extent possible.

A liquidation under SIPA contemplates satisfaction of certain customer claims, the liquidation of the debtor's business, and the satisfaction of claims filed by general creditors. *See* §§78fff(a)(4) and 78fff-2(a)(3). To accomplish those ends, the trustee has the same powers as a Chapter 7 bankruptcy trustee, and additional powers that enable him to perform the special functions of a SIPA liquidation. *See* SIPA §78fff-1(a). *See also Executive Securities Corp. v. Doe, 702 F.2d 406, 407 (2d Cir.), cert. den., 464 U. S. 818 (1983); SIPC v. Christian-Paine & Co.*, 755 F.2d 359, 361 (3d Cir. 1985); *SEC v. Albert & Maguire Sec. Co.*, 560 F.2d 569, 574 (3d

Cir. 1977).  As the District Court for this District has remarked, practical reasons support the expansive powers given to the trustee:

> A SIPA trustee was undoubtedly intended by Congress to completely liquidate a brokerage business which had failed – including processing all creditor claims as well as customer claims. Indeed, a SIPA trustee has even more powers in some circumstances than a trustee in bankruptcy. For Congress to have provided otherwise would have been unwise and inefficient. A SIPA trustee knows the situation well by the time customer claims are processed and is obviously the proper person to complete liquidation.

*Gold v. Hyman*, [974-75 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,043 at pp. 97,657-97,658 (S.D.N.Y. 1975).

Because the Trustee's responsibilities extend not only to stockbroker customers but to the entire bankruptcy estate, *In the Matter of Lewellyn*, 26 B.R. 246, 253-254 (S.D. Iowa 1982), the Trustee may sue to recover assets to satisfy general creditors, unpaid customers and SIPC.  *See Gold v. Hyman, supra,* at p. 97,657; *Bondy v. Chemical Bank*, [1975-76 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,360 at pp. 98,784, 98,785-98- 786 (S.D.N.Y. 1975).  Toward that end, among other things, since enactment, SIPA has conferred upon the SIPA trustee the powers of a bankruptcy trustee to avoid transfers.  As succinctly stated in 3 *Collier on Bankruptcy* ¶60.85 at p. 1246 (14th ed. 1977):

> The trustee, therefore, has all the powers conferred by the Bankruptcy Act upon an ordinary bankruptcy trustee to avoid or set aside transfers of property or other transactions occurring prior to institution of the proceedings, to recover property and collect the assets of the estate or to assert any right or defenses the debtor might have against the claims of others …. In short, whenever an ordinary bankruptcy trustee could under the Bankruptcy Act invalidate a transaction or transfer, the SIPA trustee can do the same, and the fact that he was appointed under SIPA does not suggest a different rule.

*See* 1 *Collier on Bankruptcy* ¶12.14[3] at p. 12-70 (16th ed. 2011).   *See also Mishkin v. Ensminger (In re Adler Coleman Clearing Corp.*), 218 B.R. 689, 702 (Bankr. S.D.N.Y.1998) (holding that a SIPA trustee may bring fraudulent transfer claims under the Bankruptcy Code); *Klein v. Tabatchnick*, 418 F.Supp. 1368 (S.D.N.Y. 1976), *affirmed in part and reversed in part*, 610 F.2d 1043 (2d Cir. 1979) (unresolved factual questions making summary judgment improper); *Bondy v. Chemical Bank, supra*, at p. 98,786; *SEC v. North American Planning Corp.*, [1975-76 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,326 at p. 98,640 (S.D.N.Y. 1975) ('[SIPA] Trustee alone has the power to recover property which has been fraudulently, preferentially or otherwise voidably transferred.")

### 2. "Customers" Are Not Immune From Fraudulent Transfer Actions

With regard to fraudulent transfer laws, customers in a SIPA liquidation are not afforded special treatment, and Defendants are no exception.   The purpose of fraudulent transfer provisions is to benefit all customers as a class.   Indeed, Defendants specifically concede as much.  *See* Def. Mem. at 59, *quoting In re Chase & Sanborn Corp.,* 813 F.2d 1177, 1191 (11th Cir. 1987) ("Fraudulent transfers are avoidable because they diminish the assets of the debtor to the detriment of all creditors.").   Here, Defendants received transfers of funds that belonged to all customers, not Defendants alone.   Recovery of these fraudulent transfers is necessary for the equitable treatment of *all* customers.   Thus, instead of bolstering their own position, Defendants' argument actually supports the Trustee's own position.

Defendants are also wrong on the law:  "customer" status does not prevent a trustee from bringing a fraudulent transfer action against a transferee.   Courts uniformly have held that a trustee has standing to avoid fraudulent transfers against customers.   As a Referee in Bankruptcy for the United States District Court for the Southern District of New York remarked in *SIPC v.*

*S.J. Salmon*, No. 72 Civ. 560, 1973 U. S. Dist. LEXIS 15606 (S.D.N.Y. Aug. 8, 1973)

("*Salmon*"), just a little more than two years after the enactment of SIPA:

> ...[I]t is argued that the trustee's position in seeking to reverse the February 2d transactions is contrary to the purpose of SIPA. There is no validity to this point of view.  It is true that SIPA was intended to afford greater protection to customers than they enjoyed under §60e of the Bankruptcy Act, essentially by providing a limited form of insurance for customer claims for cash and securities.  But SIPA was not intended to make the fraudulent transfer provisions of the Bankruptcy Act inoperative as to stockbroker-debtors in SIPA proceedings.  While SIPA was intended to protect customers there is nothing in its provisions to indicate that less preferred creditors are to be denied the protection of the provisions which bar a debtor from making fraudulent transfers at their expense.

*Id.* at *31.

At issue in *Salmon* were "trades" that the SIPA trustee alleged were neither *bona fide* nor the result of arm's length transactions in the open market, but recorded only on the books and records of the brokerage in order to improve the eligibility for SIPA protection of certain preferred customers in the face of the imminent liquidation of the firm.  The trustee sued the preferred customers, seeking to avoid the transactions as fraudulent and void under avoidance provisions of the former Bankruptcy Act and New York Debtor and Creditor Law.  In ruling in favor of the trustee, the Court concluded that the "trades" were transfers made with actual intent to defraud creditors, a deliberate attempt to defraud SIPC under SIPA, and done without "fair consideration." Id. at *31-32.

That a SIPA trustee may sue customers for fraudulent transfers has been recognized in other cases as well.  *See, e.g., Picard v. Taylor (In re Park South Securities, LLC)*, 326 B.R. 505, 512-13 (Bankr. S.D.N.Y. 2005) (holding that the trustee had standing to bring fraudulent transfer claims against customers); *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R.

406, 496 (S.D.N.Y. 2001) (affirming this Court's judgment that fraudulent transfers to customers were avoidable); *see also Focht v. McDermott (In re Old Naples Securities, Inc.),* 343 B.R. 310, 320-21 (Bankr. M.D. Fla. 2006) (finding that fraudulent transfers to introducing broker were avoidable).  Moreover, in adversary proceedings related to the Debtor's liquidation, this Court has held that the Trustee has standing to avoid fraudulent transfers against customers and non-customers alike.  *Picard v. Chais (In re Bernard L. Madoff Investment Securities LLC),* 445 B.R. 206, 219-228 (Bankr. S.D.N.Y. 2011) ("*Chais*") (holding that the Trustee adequately pled claims for recovery of fraudulent transfers to customers); *see also Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC),* 440 B.R. 243, 251 n.6 (Bankr. S.D.N.Y. 2010) ("*Merkin*").

Sound reasoning underscores the decisions reached in these cases.  A SIPA trustee's ability to recover fraudulent transfers is necessary for the equitable treatment of customers and other creditors alike.  As stated in *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 479 (S.D.N.Y. 2001) ("*Adler Coleman*"), *citing Young v. Higbee Co.*, 324 U.S. 204, 210 (1945):

> "[T]he spirit that infuses the whole of SIPA and the Bankruptcy Code is Congress's determination, reflected in a trustee's avoidance powers under [Bankruptcy Code] § 548 as well as SIPC Rule 300.503, that 'a few individuals should not be allowed to benefit from transfers by an insolvent entity at the expense of the many.'"[6]

Thus, there can be no dispute that a SIPA Trustee has the power to avoid fraudulent transfers, whether made to a "customer" under SIPA, a general creditor, or a third party transferee.

---

[6]     SIPC Rule 503(a), 17 C.F.R. §300.503(a), specifies that "[n]othing in these Series 500 Rules shall be construed as limiting the rights of a trustee in a liquidation proceeding under [SIPA] to avoid any securities transaction as fraudulent, preferential, or otherwise voidable under applicable law."

### 3.  **The Trustee Is Not Limited to Preference Actions**

The express language of SIPA lends no support to the Defendants' position that a SIPA trustee may only avoid preferences.   Pursuant to SIPA section 78fff-1(a), the trustee is specifically "vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under Title 11." The fact that section 78fff-1(a) vests in a SIPA trustee the powers of a title 11 trustee, *including* the right to avoid preferences, does not limit the trustee to recovery of estate assets only on that basis.

In the first instance, the Defendants' attempt to construe the words "including the same right to avoid preferences" (SIPA §78fff-1(a)), as words of limitation, is inconsistent with general principles of statutory construction. Thus,

> [a] term whose statutory definition declares what it "includes" is more susceptible to extension of meaning by construction than where the definition declares what a term "means."  It has been said "the word 'includes' is usually a term of enlargement, and not of limitation…. It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated…"

2A *Sutherland Statutory Construction* §47.07 at p. 305 (7th ed. 2010).  *See Samantar v. Yousuf*, ___ U. S. ___, 130 S. Ct. 2278, 2288 n.10 (2010).  The Bankruptcy Code's rules of construction provide that the terms "include" and "including" are not limiting.  *See* 11 U.S.C. §102(3).

Second, the Defendants' restrictive interpretation is contrary to SIPA.  One the one hand, Congress would not impose on the SIPA trustee the dual functions of resolving the claims of both customers and general creditors while, on the other hand, withdrawing or restricting the means for satisfying their claims in an adequate manner.  Furthermore, as stated above, section 548 is contained in chapter 5 of the Bankruptcy Code which is specifically incorporated into SIPA, to the extent consistent with SIPA.  A Bankruptcy Code provision is inconsistent with

SIPA and not made a part of SIPA only if it "conflicts with an explicit provision" or if its "application would substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits." *SIPC v. Charisma Securities Corp.*, 506 F.2d 1191, 1195 (2d Cir. 1974). *See SIPC v. Securities Northwest, Inc.*, 573 F.2d 622, 625 (9th Cir. 1978). *Cf., id.* at 628. That test is not met here.

Third, Congress has expressed elsewhere in the statute its intent that the SIPA trustee have the full range of avoidance powers available in a bankruptcy liquidation. Thus, SIPA section 78fff-2(c)(3) authorizes the trustee to recover customer property transferred by the debtor if and to the extent the "transfer is voidable or void under the provisions of title 11." The recovered property becomes "customer property" and is subject to the order of distribution in SIPA. Section 78fff-2(c)(3) is an express provision with respect to customer property.[7] As to general estate property, the bankruptcy provisions control, including section 548. See *SEC v. North American Planning Corp.*, [1975-76 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,326 at 98,640 (S.D.N.Y. 1975) (the trustee's avoidance powers derive from the "overall statutory framework created by SIPA and the correlative provisions of the Bankruptcy Act [now Bankruptcy Code]."

"Where a statute contains a grant of power enumerating certain things which may be done and also a general grant of power which standing alone would include these things and more, the general grant may be given full effect if the context shows that the enumeration was

---

[7]    Undoubtedly, Congress believed it necessary to include SIPA section 78fff-2(c)(3) because in some states, "customer property" is not considered as property of the debtor and customers are not considered creditors. Therefore, in SIPA, Congress expressly stated that such property would be subject to recovery by the Debtor and that, state law to the contrary notwithstanding, customer property would be deemed to be property of the debtor and customers would be deemed to be creditors.

not intended to be exclusive." *Springer v. Philippine Islands*, 277 U.S. 189, 206 (1928).  When read in conjunction with other provisions of SIPA interpreted as a whole, the term "including" in SIPA section 78fff-1 is merely illustrative and not exhaustive.  It confers upon the SIPA trustee the same powers as a title 11 trustee including, *among others*, the right to avoid preferences, whether the transferee is a customer or otherwise.

Finally, that Congress did not intend to limit the trustee's avoidance powers to preference actions is supported by the fact that the trustee would have no means of recovering property if the elements of a preference could not be shown.  Thus, absent authority to sue under section 548 or other avoidance provisions, recovery for the benefit of customers and other creditors would be extremely limited and possibly nil if a preference could not be shown.  This would unjustifiably disadvantage customers and creditors in a SIPA case versus ordinary bankruptcy, and plainly would not comport with SIPA.  Under SIPA section 78fff(a)(4) thereof, the trustee must liquidate the estate.  Being subject to the same duties as a bankruptcy trustee, the SIPA trustee likewise must maximize the amounts realized from the liquidation and toward that end must institute all necessary litigation. *See* 11 U.S.C. §704(1).  *See also In re the Drexel Burnham Lambert Group*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) ("A trustee in bankruptcy, under the Act and the Code, is under a duty to maximize the realization of estate liquidation.  To that end a trustee must marshal the estate's assets and, if necessary to achieve that end, institute all necessary litigation."); *Freeman v. Seligson*, 405 F.2d 1326, 1333 (D.C. Cir. 1968).  The intention of Congress was not to deprive a SIPA trustee of a significant means of fulfilling his duty.  The Defendants' limited interpretation of SIPA section 78fff-1(a) simply is wrong.

## II.  BECAUSE IT DOES NOT APPLY UNDER THE FACTS OF THIS CASE, SECTION 546(e) DOES NOT BAR THE TRUSTEE'S ACTION

1.  **Defendants' Construction of Section 546(e) of the Bankruptcy Code Undermines, Rather Than Effectuates, the Purposes of That Provision**

Section 546(e) of the Bankruptcy Code, the "stockbroker defense," provides a "safe harbor" by exempting from avoidance certain types of payments commonly made in connection with transactions in the securities markets.  Defendants rely upon that portion of section 546(e) that provides that notwithstanding specified provisions under the Code,

> the trustee may not avoid a transfer that is ... a transfer made by or to ... [a] stockbroker [or] financial institution, ... in connection with a securities contract, as defined in section 741(7), ... that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

Defendants contend that the sums paid to them by BLMIS were "transfers" that the Trustee may not now seek to avoid.

In determining whether section 546(e) applies, a court must "look to the provisions of the whole law, and to its object and policy," and not just its literal language.  *Bevill, Bresler & Schulman v. Spencer Sav. & Loan Ass'n*, 878 F.2d 742, 750 (3d Cir. 1989) ("*Bevill, Bresler*") (citing *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)).  *See Kelly v. Robinson*, 479 U.S. 36, 43 (1986), *quoting Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222 (1986) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."); *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 478-479 (S.D.N.Y. 2001) ("*Adler Coleman*").  The legislative history of section 546(e) explains that the provision was intended "to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." H. R. Rep. No. 97-420, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583.[8]

---

[8]     Section 546(e) was amended under the Financial Netting Improvements Act of 2006, to include the language relied upon by the Defendants.  *See* Pub. L. No. 109-390, §5(b)(1), 120

Thus, Congress sought to prevent the "ripple effect" created by "the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected market." *Bevill, Bresler,* 878 F.2d at 747.  *See Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),* 323 B.R. 857, 864 (Bankr. S.D.N.Y. 2005) ("The purpose of section 546 is 'to protect the nation's financial markets from the instability caused by the reversal of settled securities transactions.'"), *citing Kaiser Steel Corp. v. Charles Schwab & Co., Inc. (In re Kaiser Steel Corp.),* 913 F.2d 846, 848 (10th Cir. 1990).

## 2.  <u>Relevant Factors in Determining Whether Section 546(e) Applies</u>

Five factors are significant to a consideration of whether section 546(e) applies.  These include whether:

> (1) the transactions have long settled by means of actual transfers of consideration, so that subsequent reversal of the trade may result in disruption of the securities industry, creating a potential chain reaction that could threaten collapse of the affected market;
>
> (2) consideration was paid out in exchange for the securities or property interest as part of settlement of the transaction;
>
> (3) the transfer of cash or securities effected contemplates consummation of a securities transaction;
>
> (4) the transfers were made to financial intermediaries involved in the national clearance and settlement system;
>
> (5) the transaction implicated participants in the system of intermediaries and guarantees which characterize the clearing and settlement process of public markets and therefore would create the potential for adverse impacts on the functioning of the securities market if any of those guarantees in the chain were invoked.

---

Stat. 2693, 2697-2698 (2006).  The amendment did not alter the fundamental purpose of the section, namely, to address the risk that the failure of one financial entity would disrupt or endanger the financial markets.  H. R. Rep. No. 109-648 (part 1) at 3 (2006), *reprinted in* 2006 U.S.S.C.A.N. 1585, 1587.

*In re Enron Creditors Recovery Corp.,* 422 B. R. 423, 439 (S.D.N.Y. 2009), *citing Adler Coleman*, 263 B.R. at 479-80.  *See American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F.Supp.2d 79, 107 (S.D.N.Y. 2004).[9]

A review of the factors in the context of this case makes clear that section 546(e) cannot apply.  Defendants contend that the transfers in question represent the payment of funds owed to them as shown in their fictitious account statements.  As an initial matter, section 546(e) is inapplicable because customer withdrawals are not the type of transactions within the ambit of the section.  The section was intended to enable *brokers* to protect themselves in the event of the insolvency of one of their customers or a financial counterparty.  *See, e.g.*, 6 *Collier on Bankruptcy* ¶741.07 (16th ed. 2010).  It has no application to customer account withdrawals. Moreover, section 546(e) obviously can apply only to payments made in connection with real "securities contracts."  Phantom trades that have never occurred cannot have the kind of ripple effect threatening the liquidity of the markets or the operation of the national securities clearance and settlement system targeted by Congress under section 546(e).  Indeed, the application of section 546(e) to shield the withdrawals would have the effect of sanctioning fictitious trades at fabricated prices which would undermine, and not strengthen, the financial markets.  Not only are the kinds of market participants and transactions at which section 546(e) is directed not present here, but there also was no consideration paid for the fake securities trades.  Thus, bogus trades in the BLMIS operation consistently were "paid for" out of fictitious profits and transfers were payments of false profit.  Payments made by the broker to "settle" phony transactions cannot be regarded as part of the normal settlement process, which section 546(e) seeks to

---

[9] Although section 546(e) was amended in 2006 to include transfers pursuant to securities contracts, *see supra*, the factors still apply in evaluating the applicability of the section.  *See In re Enron Creditors Recovery Corp.*, 422 B. R. at 439.

protect. *See Adler Coleman*, 263 B.R. at 481 (phantom transactions "could not be considered as contemplating a normal completion of a securities transaction as commonly understood in the securities industry"). *See also Merkin*, 440 B.R. at 266-268.  Thus, there would be no basis under section 546(e) to limit any avoidance action brought by the Trustee in this case.

### III.  DEFENDANTS ARE INCORRECT THAT "ANTECEDENT DEBT" IS TO BE MEASURED ACCORDING TO THE FICTITIOUS ACCOUNT STATEMENTS

The Defendants contend that the amounts that they received can only be avoided, if at all, as preferences, and not fraudulent conveyances, because each transfer, in their view, was on account of an antecedent debt.  Def. Mem. at 60-64.  They argue that the "antecedent debt" arose from BLMIS's obligation to pay them what appeared on their account statements.  These statements were fictitious, reflecting non-existent trades and equally non-existent profits. Nevertheless, in support of their position that the measure of what they are owed is the last account statement, Defendants cite to the Uniform Commercial Code and decisions under the federal securities laws.  Although their arguments are made in the context of a SIPA proceeding, and SIPA defines how a broker's indebtedness to a customer is to be measured, they effectively ignore SIPA, no doubt because it runs counter to their position.

What customers are owed in a SIPA proceeding is their net equity, as defined in SIPA section 78*lll*(11).  As this Court has held, the net equity of the Defendants and other customers of BLMIS is the difference between the amounts deposited by them with the brokerage and the amounts withdrawn.  *In re Bernard L. Madoff Investment Securities LLC*, 424 B. R. 122 (Bankr. S.D.N.Y. 2010), *appeal docketed*, No. 10-2378-BK(L) (2d Cir.).  Defendants' Motion is an improper attempt to have this Court revisit its decision on net equity notwithstanding that unless reversed, the decision is the law of the case by which the parties to this adversary proceeding are

bound. *See Gindes v. United States*, 740 F.2d 947, 950 (Fed. Cir.1984) ("[T]he law of the case [is] the rule that 'a decision by the court on a point in a case becomes the law of the case unless or until it is reversed or modified by a higher court.'").   This Court properly construed the definition of net equity and what BLMIS investors are owed.   The Defendants' assertions notwithstanding, neither the Uniform Commercial Code nor the securities laws provisions upon which they rely, change that.

### 1.   **The Uniform Commercial Code**

Defendants argue that the New York Uniform Commercial Code ("UCC"), instead of SIPA, governs what a customer is entitled to receive.  *See* Def. Mem. at 60-64.   The argument fails on at least two grounds.

First, to the extent that state law is inconsistent with SIPA which is a federal law, the state law is preempted under the Supremacy Clause of the United States Constitution.  *See* U.S. Const., Art. VI, cl. 2; *In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353, 378 (D.N.J.), *appeal dismissed*, 802 F.2d 445 (3rd Cir. 1986) (holding that state law that is inconsistent with SIPA is preempted).   It is particularly appropriate that state law not override federal law where the federal law, as in SIPA, is supported both by the Bankruptcy Clause of the United States Constitution and the Commerce Clause.  *See S.E.C. v. Albert & Maguire Sec. Co.*, 378 F.Supp. 906, 911 (E.D. Pa. 1974).  *See also In re Bell & Beckwith*, 104 B. R. 842, 859 (Bankr. N. D. Ohio 1989), *aff'd*, 937 F.2d 1104 (6th Cir. 1991) ("[I]nconsistent state laws must give way to SIPA, a federal statute.")  Here, to the extent that any state law would provide a different form of relief for the customer than under SIPA, SIPA controls.

Second, the Official Comment to the UCC itself, expressly citing SIPA as an example, provides that SIPA overrides the UCC if the entity's affairs are being administered in an insolvency proceeding.  *See* U.C.C. [Rev.] § 8-503, Official Comment 1 (2009) ("applicable

insolvency law governs how the various parties having claims against the firm are treated.  For example, the distributional rules for stockbroker liquidation proceedings under the Bankruptcy Code and Securities Investor Protection Act ….").  *See also American Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269, 272 (1946) ("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors.").

### 2. **Federal Securities Law Decisions**

Like the provisions of the UCC, the federal securities law decisions cited by the Defendants are inapplicable and the Defendants' reliance upon them does not withstand scrutiny.  Effectively, Defendants' position that any antecedent debt is based on the fictitious account statement would create an entitlement to fake profits where there is none.  *See In re New Times Securities Services, Inc.*, 371 F.3d 68, 88 (2d Cir. 2004) (court will defer to persuasive analysis of "potential absurdities created by reliance on the entirely artificial numbers contained in fictitious account statements.")  None of the cases cited by the Defendants alter that fact.  While investors duped by BLMIS and Bernard Madoff may have claims for damages as general creditors, Defendants cite to no authority establishing that the damages are to be the fake "profits" in the amounts randomly invented by Bernard Madoff.

In support of their contention that their damages are to be measured according to a benefit-of-the-bargain approach, namely, the difference between their actual loss and what they were promised, the Defendants rely upon the decision in *Osofsky v. Zipf*, 645 F.2d 107, 114 (2d Cir. 1981) ("*Osofsky*").  *See* Def. Mem. at 63.  But there, the court held  that "the benefit-of-the-bargain rule should be applied under the Securities Exchange Act of 1934 ("1934 Act") to the *limited situation involved in this case*, where misrepresentation is made in the tender offer and proxy solicitation materials as to the consideration to be forthcoming upon an intended merger." *Id.* at 114 (emphasis supplied).  In *McMahan & Co. v. Wherehouse Entertainment Inc.*, 65 F.3d

1044 (2d Cir. 1995), *cert. den.*, 517 U. S. 1190 (1996) ("*McMahan*")*,* another case relied upon

by the Defendants, Def. Mem. at 63, the Second Circuit remarked in discussing *Osofsky* that:

> [in *Osofsky,*] Plaintiffs tendered their stock, but received a lesser amount than they originally had been offered. *** We held that benefit-of-the-bargain damages, under [Securities and Exchange Commission] Rule 10b-5, were particularly appropriate in the context of tender offers where, despite the fraud, the shareholders normally will receive an amount in excess of market value. *** We noted that the key to awarding benefit-of-the-bargain damages is the degree of certainty to which they can be established. [citations omitted]

*Id*. at 1050.  In *McMahan*, the court acknowledged the possibility of awarding benefit-of-the-

bargain damages in a Rule 10b-5 case but stressed that it had and would decline to do so where

the claims were speculative.  Ultimately, the court reversed the lower court's award of benefit-

of-the-bargain damages in the case, holding that they were unavailable under the section of the

1934 Act under review.

   In *Panos v. Island Gem Enterprises, Ltd., N. V.*, 880 F.Supp. 169 (S.D.N.Y. 1995), also

relied upon by the Defendants, Def. Mem. at 63-64, and involving a dispute over the sale of

apartment leases, the court granted a motion to bar plaintiffs' benefit-of-the-bargain damage

recovery under section 10(b) of the 1934 Act, 15 U.S.C. §78j(b).  In that case, the court

remarked that under Second Circuit precedent, there was no single measure of damages applying

to all securities fraud damage cases and that it would be for the district court, "after becoming

aware of the nature of the case, to determine the appropriate measure of damages in the first

instance."  *Panos*, 880 F.Supp. at 175 (citation omitted).  The court also observed that in section

10(b) claims, courts had endorsed a wide variety of theories of recovery, "[p]ossibly due to the

wide variety of factual predicates to §10(b) claims."  *Id.*, 880 F.Supp. at 176.  The court went on

to note that in most cases under the 1934 Act, defrauded buyers recovered only their out-of-

pocket losses, mainly because "under most circumstances benefit-of-the-bargain damages are highly speculative." *Id*.

That damages measured according to fictitious account statements are surely speculative is illustrated by the case at hand where the prices at which BLMIS purported to trade on behalf of customers were pulled out of thin air, randomly selected by Bernard Madoff to yield returns pre-determined by him.   No judgment awarding the Defendants the benefit-of-the-bargain damages existed at the time BLMIS made the transfers to them.   Benefit-of-the-bargain has not been shown to be the applicable measure of damages and antecedent debt is not measured by the last account statement.   Defendants' assertion that not measuring antecedent debt by the last account statement undermines SIPA's goal of customer protection is incorrect.   Def. Mem. at 84-87.[10]   As the court stated in *Focht v. Athens* (*In re Old Naples Securities, Inc*.), 311 B. R. 607, 616-617 (M. D. Fla. 2002):

> Especially where the payments to claimants will be made out of the quasi-public SIPA fund, permitting claimants to recover not only their initial capital investment but also the phony "interest" payments they received and rolled into another transaction is illogical.  No one disputes that the interest payments were not in fact interest at all, but were merely portions of other victims' capital investments.  If the Court were to agree with the ... claimants, the fund would likely end up paying out more money than was invested in [the] ... Ponzi scheme.  This result is not consistent with the goals of SIPA, which does not purport to make all victimized investors whole but only to partially ameliorate the

---

[10]      Defendants' contention that when a customer purchases securities through a broker, the broker becomes obligated to the customer for securities reflected on the customer's statement, but can then "deploy the customer's funds in its business – including to pay other customers" is sheer error.  Def. Mem. at 85-86.  Rather, the broker-dealer must maintain physical possession or control of customers' fully paid securities and excess margin securities, and establish a special reserve bank account for the exclusive benefit of customers.  Such funds are for the exclusive benefit of customers and cannot be deployed by the brokerage in its business.  *See* SEC Rule 15c3-3(b) and (e), 17 C.F.R. 240.15c3-3(b) and (e).

losses of certain classes of investors. *See Packer, Wilbur,* [498 F.2d 978, 983 (2d Cir. 1974)].

## IV.  THE PONZI SCHEME PRESUMPTION APPLIES TO THIS CASE

Defendants recognize that section 546(e), by its terms, is no defense to the Trustee's fraudulent conveyance action under section 548(a)(1)(A) of the Bankruptcy Code. They therefore argue that the "Ponzi scheme presumption" that automatically establishes the "actual intent to hinder, delay, or defraud any entity" criterion of section 548(a)(1)(A) does not apply. The Defendants rely largely for that proposition on *In re Sharp International Corp.*, 403 F.3d 43 (2d Cir. 2005) ("*Sharp*").

Contrary to Defendants' assertions, where a debtor was engaged in a Ponzi scheme, consideration of the "badges of fraud," that is, circumstances commonly associated with fraud such that their existence gives rise to an inference of fraudulent intent, is unnecessary. *Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd).*, 397 B.R. 1, 10 n.13 (S.D.N.Y. 2007) ("*Manhattan Investment*"), *citing Securities Investor Protection Corp. v. Old Naples Sec., Inc. (In re Old Naples Sec., Inc.)*, 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006) ("*Old Naples*"). Actual intent to hinder, delay or defraud creditors is established as a matter of law in cases involving a Ponzi scheme because transfers made in the course of such an operation can only be made to hinder, delay or defraud. *Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.),* 359 B.R. 510, 517-518 (Bankr. S.D.N.Y. 2007), *aff'd., in part, and rev'd, in part, on other grounds,* 397 B.R. 1 (S.D.N.Y. 2007). Courts have long recognized that the existence of a Ponzi scheme is sufficient to prove a Debtor's actual intent to defraud. *See Manhattan Investment*, 397 B.R. at 10-11, and cases cited therein. The Ponzi scheme presumption is well established in non-SIPA cases. *See, e.g., In re Bayou Group, LLC*, 439 B.R. 284, 306 n.19 (S.D.N.Y. 2010) ("*Bayou*") ("Where a Ponzi scheme exists, there is a presumption that transfers were made with

the intent to hinder, delay and defraud creditors.").   Notwithstanding that Defendants seem to imply that customer status under SIPA somehow renders the Ponzi scheme presumption inapplicable, to the contrary, the Ponzi scheme presumption applies, with equal force, in SIPA cases.  *See, e.g.*, *Old Naples,* 343 B.R. at 320-21 ("[I]nnocence in the underlying Ponzi scheme is not a defense to liability under the fraudulent transfer provisions.")  *See also Chais,* 445 B.R. at 220; *Merkin*, 440 B.R. at 255.  As this Court stated in *Chais*, "[i]t is now well recognized that the existence of a Ponzi scheme establishes that transfers were made with the intent to hinder, delay and defraud creditors."  445 B.R. at 220, *citing Bayou*, 439 B.R. at 306 n.19; *Manhattan Investment*, 397 B.R. at 8-14.

The *Sharp* decision relied by the Defendants requires no different outcome.  As noted by the Court in *Manhattan Investment, Sharp* did not involve a Ponzi scheme and the Second Circuit did not discuss in that case the Ponzi scheme presumption.  397 B.R. at 10.  As observed by the Court:

> In *Sharp*, the transfer at issue was the repayment of a debt that was antecedent to the company's fraud. *See [Sharp*, 403 F.3d] at 55 (finding that "no ground exists therefore to 'collapse' that loan with other (non-contemporaneous) bad-faith maneuvers").  In contrast, in a Ponzi scheme, the transfers sought to be avoided occur as part of the fraud.  They are not made to repay loans or services that preceded the fraud and were unrelated to it.  For this reason, the transfer in *Sharp* is factually distinguishable from the typical transfers in a Ponzi scheme case.

*Manhattan Investment,* 397 B.R. at 11.

That the transfers were part of a massive Ponzi scheme is palpable here.  Fictitious trades were reflected on fake account statements generating fake profits used to "invest" in more fictitious securities positions.  The transfers of funds to the Defendants were in furtherance of the fraud, with the money of other investors used to pay the Defendants their fake profits.

Calculated as the amounts were based on predetermined returns and the "reinvestment" of false profits, and comprised as they were of other investors' money, the transfers shown on the fictitious account statements were themselves inherently fraudulent and intrinsically a part of the Ponzi scheme.  Necessarily, their purpose was to hinder, delay or defraud other investors. *See In re Bayou Group, LLC*, 362 B.R. 624, 636-38 (S.D.N.Y. 2007).

Defendants' contentions about the inapplicability of the Ponzi scheme presumption are without merit.

## <u>CONCLUSION</u>

For all of the aforementioned reasons, the Defendants' Motion should be denied.

Dated: May 19, 2011
Washington, D.C.

Respectfully submitted,


_/s/ Josephine Wang_____
JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
for Dispute Resolution

LAUREN T. ATTARD
Staff Attorney

SECURITIES INVESTOR
  PROTECTION CORPORATION
805 15th Street, N.W.
Suite 800
Washington, D.C. 20005
Telephone: (202) 371-8300
Email: jwang@sipc.org
Email: kbell@sipc.org
Email: lattard@sipc.org