**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
IRVING H. PICARD,                                                   :
                                                                    :
                        Plaintiff,                                  :
                                                                    :
            - against -                                             :   11-CV-03605 (JSR)
                                                                    :
SAUL B. KATZ, et al.,                                               :
                                                                    :
                        Defendants.                                 :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW REGARDING DETERMINATION**
**OF "FOR VALUE" AND NET EQUITY DECISION**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ...................................................................................................2

ONLY TRANSFERS WITHIN THE TWO-YEAR PERIOD THAT ARE NOT
"FOR VALUE" MAY BE AVOIDED ...............................................................2

I.    SECTION 548(a)(1)(A)'S TWO-YEAR LIMITATIONS PERIOD MUST
      BE RESPECTED ....................................................................................2

      A.    Section 548(a)(1)(A) and "For Value" ..........................................2

      B.    Section 548(a)(1)(A) and the Trustee's Net Investment Method ....................3

      C.    Section 548(a)(1)(A) Requires Modification of the Trustee's Approach.........4

II.   THE *NET EQUITY DECISION* SUPPORTS DEFENDANTS................................6

III.  THE *NET EQUITY DECISION* REQUIRES THAT ALL TRANSFERS
      WERE FOR VALUE ..............................................................................9

CONCLUSION...............................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Barnhill v. Johnson*, 503 U.S. 393 (1992) .........................................................................2

*Brevot v. N.Y. City Dep't of Educ.*, 299 F. App'x 19 (2d Cir. 2008) ..................................5

*Butner v. United States*, 440 U.S. 48 (1979) .......................................................................2

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
    269 F.R.D. 291 (S.D.N.Y. 2010) .................................................................................6

*City of West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540 (2d Cir. 1990) .............6

*Foley v. Transocean Ltd.*, 272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................6

*In re Adler, Coleman Clearing Corp.*, 263 B.R. 406 (Bankr. S.D.N.Y. 2001) ..................8

*In re Bernard L. Madoff Inv. Sec. LLC*,
    10-2378-bk, 2011 U.S. App. LEXIS 16884 (2d Cir. Aug. 16, 2011) ................. *passim*

*In re Enron Creditors Recovery Corp.*, 651 F.3d 329 (2d Cir. 2011) ................................5

*In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1 (S.D.N.Y. 2007)..........................................10

*In re Resorts Int'l, Inc.*, 181 F.3d 505 (3d Cir. 1999) .........................................................5

*In re Sharp Int'l Corp.*, 302 B.R. 760 (E.D.N.Y. 2003) ...................................................10

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) ........................................................10

*Picard v. Katz*,
    No. 11 Civ. 3605 (JSR), 2011 U.S. Dist. LEXIS 109595
    (S.D.N.Y. Sept. 27, 2011) .................................................................................. *passim*

*Picard v. Merkin*,
    11 MC 0012 (KMW), 2011 U.S. Dist. LEXIS 97647
    (S.D.N.Y. Aug. 31, 2011) ...............................................................................10, 11

*Stolow v. Greg Manning Auctions Inc.*, 80 F. App'x 722 (2d Cir. 2003).......................5, 6

PAGE

STATUTES

11 U.S.C. § 101(5)(A) ............................................................................9

11 U.S.C. § 101(12) ..............................................................................9

11 U.S.C. § 546(e) .................................................................................5

11 U.S.C. § 548(a)(1)(A) ............................................................ *passim*

11 U.S.C. § 548(c) ............................................................................1, 2

11 U.S.C. § 548(d)(2)(A) ..................................................................2, 9

15 U.S.C. § 78fff-2(b) ...........................................................................7

N.Y. Debt. & Cred. Law § 276 ............................................................10

NYUCC § 8-503 .....................................................................................3

iii

Defendants respectfully submit this memorandum of law in response to the Court's question as to "whether the Trustee can avoid as profits only what defendants received in excess of their investment during the two year look back period specified by section 548 or instead the excess they received over the course of their investment with Madoff." *Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 U.S. Dist. LEXIS 109595, at *18 n.6 (S.D.N.Y. Sept. 27, 2011) ("Order"); *see also* Order, Sept. 28, 2011, doc. no. 41 (questioning whether, in calculating principal and profit, reference should be made to two-year period only).

## PRELIMINARY STATEMENT

In its Order, the Court dismissed all avoidance claims against Defendants except for those asserted under 11 U.S.C. § 548(a)(1)(A).  Under Section 548(a)(1)(A), only intentionally fraudulent transfers that occurred within two years of an insolvency filing are subject to avoidance, and a transferee has a defense to the extent the transferee takes "for value" and "in good faith."  11 U.S.C. § 548(c).

The Trustee has no legal power to disregard a customer's account balance immediately before the start of the two-year period, or to avoid any transfer before that period.  Therefore, a transfer was "for value" during the two-year period, even under the Trustee's Net Investment Method, if the value of the customer's account balance, as reflected on his account statement immediately before the commencement of the two-year period, when added to deposits within the period, was greater than the amount of withdrawals during the period.

This conclusion is supported by the *Net Equity Decision*, *In re Bernard L. Madoff Inv. Sec. LLC*, 10-2378-bk, 2011 U.S. App. LEXIS 16884 (2d Cir. Aug. 16, 2011).

## ARGUMENT

## ONLY TRANSFERS WITHIN THE TWO-YEAR PERIOD THAT ARE NOT "FOR VALUE" MAY BE AVOIDED

The question posed by this Court addresses the application of two bodies of law, one governing brokerage transactions before the onset of bankruptcy and the other defining avoidance powers after the onset of bankruptcy, to determine whether transfers within Section 548(a)(1)(A)'s two-year period are "for value."  To give effect to that temporal limit, transfers before that two-year period may not be avoided, and the non-bankruptcy law that governs the existence of "value" must be respected.  The Trustee's calculation of value fails to give the temporal limitation any effect.

I.      SECTION 548(a)(1)(A)'S TWO-YEAR LIMITATIONS PERIOD MUST BE RESPECTED

A.      Section 548(a)(1)(A) and "For Value"

Section 548(a)(1)(A) permits avoidance of transfers as fraudulent conveyances only if they occurred within two years of a filing.  Within the two-year period, a customer that is acting in "good faith" has a defense to avoidance where the customer receives a transfer that is "for value."  11 U.S.C. § 548(c).  Therefore, a transfer to such a customer within the two-year period cannot be avoided if it was "for value."

As relevant here, "value" is defined under the Bankruptcy Code as "property."  11 U.S.C. § 548(d)(2)(A).  Non-bankruptcy law determines whether a transferee has "property."  *See, e.g.*, *Butner v. United States*, 440 U.S. 48, 54-55 (1979); *Barnhill v. Johnson*, 503 U.S. 393, 398-400 (1992).  Neither Section 548(a)(1)(A) nor any other law permits the Trustee to ignore, or retroactively alter, applicable non-bankruptcy law.

2

In this brokerage case, Article 8 of the New York Uniform Commercial Code ("NYUCC"), in conjunction with the federal securities laws, governs transactions before the SIPA filing and, therefore, governs the existence of "value."  NYUCC § 8-503. Under Article 8, on the day before the start of the two-year period, a customer was entitled to the "value" of his account balance.  If on that day the customer had withdrawn the balance owed to him, the Trustee would have no legal basis for avoiding any transfer from his account.  If the customer did not withdraw the balance on that day, it still constitutes "value" with respect to any withdrawal within the following two years.

Any calculation that disregards these legal rights as they applied prior to the start of the two-year period, or that depends, as the Trustee's method does, upon the effective avoidance of withdrawals before that period, eviscerates the temporal limitation of Section 548(a)(1)(A).  Thus, even if transfers may be avoided using the Trustee's Net Investment Method, Section 548(a)(1)(A) requires the Trustee to recognize the sum of a customer's account balance at the beginning of that period, plus any deposits within the period, as "value" against which withdrawals must be evaluated.  For example, if a customer's account balance on the day before the two-year period was worth $10 and an additional $10 were deposited within the relevant period, the customer would have "value" of $20.  If $10 were then withdrawn within the two-year period, the withdrawal would be a transfer "for value."  If $30 were withdrawn, only $20 would be "for value."

### B.      Section 548(a)(1)(A) and the Trustee's Net Investment Method

The Trustee's posited calculations are not consistent with these rules for determining "value."  Prior to the issuance of the Order, the Trustee did not consider that he was constrained by Section 548(a)(1)(A)'s temporal limit.  As a result, his calculations

determined "value" by ignoring the customer's account balance, ignoring the law protecting the customer's right to that balance, and assuming that any withdrawal in excess of deposits over the entire life of a particular account could be avoided.

The Trustee, therefore, treated these brokerage accounts like bank accounts.  He determined whether, over the entire life of an account, total cash withdrawals were greater or less than total cash deposits.  If cash withdrawals were greater in a particular account, the Trustee deemed that withdrawals in excess of deposits lacked "value."  To obtain his headline total in this case, the Trustee added together the transfers deemed to lack "value" from each Defendant's account, without deducting losses in other Defendants' accounts and without ascribing any interest to long-term deposits.

The Trustee's improper aggregation gave rise to the $295 million figure alleged in his Complaint, which is the total withdrawals deemed not "for value" over the entire existence of each Defendant's account.  The $83 million figure reflects the same calculation, but only as to withdrawals during the two-year period.  Both numbers are based on the assumption that the Trustee may avoid withdrawals over the entire life of each account.  The Trustee has offered no calculation consistent with Section 548(a)(1)(A).

### C.    Section 548(a)(1)(A) Requires Modification of the Trustee's Approach

The Trustee's use of the Net Investment Method over the life of all accounts is impermissible given Section 548(a)(1)(A)'s temporal limitation.  There is no legal basis for the Trustee's determination that a customer is not entitled to the "value" reflected by his account balance at the start of the two-year period, or that withdrawals prior to that time may effectively be avoided.  The only source of the Trustee's avoidance power is

4

Section 548(a)(1)(A) of the Bankruptcy Code, which limits avoidance to transfers within the two-year period.

The Trustee may argue that, because BLMIS was engaged in a massive fraud, he should not be required to recognize customer rights at any time.  But recognizing customer rights prior to the two-year period is exactly what Section 546(e) of the Bankruptcy Code requires him to do.  Section 546(e) expressly permits avoidance of some fraudulent transfers, demonstrating that Congress recognized that a broker might engage in fraud.  But Congress also recognized that retroactively invalidating transfers related to securities transactions would create uncertainty in the financial markets.  As this Court has recognized, the two-year temporal limitation is a compromise between two worthy policies—providing remedies for fraud and maintaining certainty in modern financial markets.

> "Because Madoff Securities was a registered stockbrokerage firm, the liabilities of customers like the defendants here are subject to the 'safe harbor' set forth in section 546(e) of the Bankruptcy Code. 'By restricting a bankruptcy trustee's power to recover payments that are otherwise avoidable under the Bankruptcy Code, the safe harbor stands "at the intersection of two important national legislative policies on a collision course—the policies of bankruptcy and securities law."'  *In re Enron Creditors Recovery Corp.*, [651 F.3d 329, 334 (2d Cir. 2011)] (quoting *In Re Resorts Int'l, Inc.*, 181 F.3d 505, 515 (3d Cir. 1999))."  *Order*, 2011 U.S. Dist. LEXIS 109595, at *9.

The legislative temporal limit of Section 548(a)(1)(A) thus precludes recovery even for otherwise actionable conduct if it pre-dates the start of the period.  *Cf., e.g.*, *Brevot v. N.Y. City Dep't of Educ.*, 299 F. App'x 19, 20-21 (2d Cir. 2008) (dismissing claims under 42 U.S.C. § 1983 even where harmful conduct was alleged because conduct preceded limitations period); *Stolow v. Greg Manning Auctions Inc.*, 80 F. App'x 722,

5

725-26 (2d Cir. 2003) (barring claims even though injury may have been sustained because alleged actionable conduct beyond limitations period); *City of West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 546-47 (2d Cir. 1990) (limiting damages recovery to statutory period even where continuing misconduct allegedly began before limitations period); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011) (explaining "FIFO" method of approximating Rule 10b-5 damages and finding that "sales matched with pre-class period purchases are not included in the calculation of class period losses, [and, thus,] any gains or losses from those most recent sales would not be included in the total loss"); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) (same).

## II.    THE *NET EQUITY DECISION* SUPPORTS DEFENDANTS

The *Net Equity Decision* supports Defendants' position.[1]

No party disputes that BLMIS owed its customers the securities reflected on confirmations and statements issued to the customers, and the Second Circuit held that "claimants who deposited cash with a broker 'for the purpose of purchasing securities,' are treated as customers with claims for securities." *Net Equity Decision*, 2011 U.S. App. LEXIS 16884, at *19-20 (internal citation omitted).  As the *Net Equity Decision* notes:

> "SIPA's implementing regulations bolster the shared view of the Trustee, SIPC, and the SEC that a claimant who has 'written confirmation' that securities have been purchased or sold on his or her behalf should be treated as a customer with a claim for securities." *Id.* at *20-21.

---

[1] The parties have not previously briefed the significance of the *Net Equity Decision* to this case, as it was issued the day before oral argument on Defendants' motion to dismiss or, in the alternative, for summary judgment.

The only dispute was whether those claims were entitled to priority distributions from "customer property" and to SIPC advances.  To limit such distributions, SIPC and the Trustee argued that "net equity" claims must be defined—in this case—as the net cash invested over the life of an account, so that priority distributions from the limited fund of customer property, or from the SIPC fund, would not be made on the basis of account statements reflecting transactions that had not occurred.  The remainder of any customer's claim could be asserted against the estate, as a general creditor claim, but was not entitled to distribution until priority claims were paid in full—and SIPC was repaid for its advances.  As SIPC noted:

> "[T]o the extent that the Claimants in this case have been harmed by the Debtor by more than the net amounts deposited by them, their claims are for damages which are general creditor, and not customer, claims.  This is the true nature of their claims, but as to such losses, investors are not protected by SIPA."  Brief of Appellee SIPC, *In re Bernard L. Madoff Inv. Sec. LLC*, 10-2378-bk, doc. no. 282, at 52 (2d Cir. Sept. 20, 2010).

The Trustee is in accord:

> "All BLMIS creditors, including customers whose claims were allowed, customers whose claims were denied, and general creditors, may have claims as general creditors against BLMIS for misrepresentation, fraud, and breach of contract."  (Mot. for an Order Approving an Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL), doc. no. 4048, at 11 n.9 (Bankr. S.D.N.Y. May 4, 2011).)

The Second Circuit looked to two SIPA provisions to address the priority distribution question:  the "net equity" definition, and 15 U.S.C. § 78fff-2(b), which requires the Trustee to make prompt payments of obligations reflected on the broker's books and records.  Both become operative only after a SIPA filing.  Based on these provisions, the Court held that, in this case, "the Net Investment Method allows the

7

Trustee to make payments based on withdrawals and deposits, which can be confirmed by the debtor's books and records, and results in a distribution of customer property that is proper under SIPA." *Net Equity Decision*, 2011 U.S. App. LEXIS 16884, at *27.

Central to the Court's conclusion was its view that "the main purpose of determining 'net equity' is to achieve a fair allocation of the available resources among the customers." *Id.* at *31; *see also id.* ("[I]f customers receive SIPC advances based on property that is a fiction, those advances will necessarily diminish the amount of customer property available to other investors, including those who have not recouped even their initial investment."). Thus, although the Court found all customers to have valid claims for securities, it interpreted SIPA to allow for priority distributions from the limited fund of customer property to only that subset of customers who had positive "net equity" under the Trustee's formula. Footnote 11 reflects this focus on distribution.

> "[I]n the context of *this* Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud, *see* 11 U.S.C. § 548(a)(1)(A), and 'avoid[s] placing some claims unfairly ahead of others,' *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 463 (Bankr. S.D.N.Y. 2001)." *Id.* at *37 n.11.

*Adler, Coleman* involved a fraudulent broker who conspired with complicit customers to create fraudulent "net equity" claims immediately before a failing broker's insolvency filing. 263 B.R. at 421-22. Honoring these claims would have defrauded SIPC and reduced priority distributions to valid claimants by depleting the limited fund of "customer property." *Id.* at 463. Thus, in the *Net Equity Decision*, the Second Circuit viewed both Section 548(a)(1)(A) and its ruling on the "net equity" definition as helping

to ensure that some claims were not placed "unfairly ahead of others" for purposes of priority distributions of limited funds.

Nothing in the *Net Equity Decision*, or footnote 11, addresses the treatment of claims against BLMIS for purposes of determining the existence of "value" in the context of avoidance. The *Net Equity Decision* provides no basis for disregarding customer rights under non-bankruptcy law, for concluding that such law may be altered retroactively to eliminate "value," or for avoiding transfers from brokers.

## III.   THE *NET EQUITY DECISION* REQUIRES THAT ALL TRANSFERS WERE FOR VALUE

This Court suggested in the Order that cash withdrawals in excess of cash deposits may not have been taken "for value." *Order*, 2011 U.S. Dist. LEXIS 109595, at *15. The *Net Equity Decision* recognized, however, that customers have claims against their broker in excess of their "net equity" claims, and SIPC and the Trustee agree. Defendants respectfully submit that a necessary corollary of the recognition of those claims by the Second Circuit is that such claims constitute "value" for purposes of evaluating whether transfers may be avoided, both before and during the two-year period.

The Bankruptcy Code defines "value" to include not only "property," but also "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). "Debt" is defined as "liability on a claim." *Id.* § 101(12). "Claim" is broadly defined, in relevant part, as a "right to payment." *Id.* § 101(5)(A). None of these definitions is based on the priority of any claim in an insolvency case. The *Net Equity Decision* is consistent with these definitions and with prior decisions holding that "value" exists where a transfer discharges a valid pre-existing claim. In these cases, courts

9

distinguish between the bad intent that may have motivated a transferor and the "value" that may nevertheless insulate a transfer from avoidance.

Thus, in *In re Sharp International Corp.*, 403 F.3d 43 (2d Cir. 2005), the Court of Appeals was considering the validity of constructive and intentional fraudulent conveyance claims where a valid debt existed, but both the transferor and transferee knew that its repayment was effected with funds obtained by fraud. *Id.* at 54-57.  The Court assumed, in both contexts, that the transfer was "for value" because it repaid a valid debt and therefore could not, as a matter of law, "hinder, delay or defraud" creditors.[2] *Id.* Under those circumstances, even under New York's intentional fraud provision, Debtor and Creditor Law § 276, no intentional fraudulent transfer claim had been stated.

> "The fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's subsequent payment of part of the proceeds to State Street.  The $12.25 million payment was at most a preference between creditors and did not 'hinder, delay, or defraud either present or future creditors.'"  *Sharp*, 403 F.3d at 56 (quoting N.Y. Debt. & Cred. Law § 276).

*See also In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 22 (S.D.N.Y. 2007) (addressing only good faith because no dispute that value had been given where transfer at issue repaid a contractual obligation); *Picard v. Merkin*, 11 MC 0012 (KMW), 2011 U.S. Dist.

---

[2]  That the Court found the claim of intentional fraud under Section 276 of the New York Debtor and Creditor Law lacked foundation as a matter of law—because the transfer repaid valid debt—is also reflected in the District Court's decision:

> "Finally, Sharp asserts that payment to State Street was made with the actual intent to defraud creditors because it was made for the purpose of 'buying' State Street's continued silence, and thus its assistance in the fraud.  As noted *supra*, State Street owed no duty to Sharp or its creditors, and its silence did not constitute an act of participation in the Spitzes' fraud.  For these reasons, Sharp's intentional fraudulent conveyance claim fails."  *In re Sharp Int'l Corp.*, 302 B.R. 760, 784 (E.D.N.Y. 2003).

LEXIS 97647, at *34-35 (S.D.N.Y. Aug. 31, 2011) (finding, consistent with *Sharp*, that complaint adequately pleaded transferee's knowledge of the fraud *at time of investment*, not just at time of payment, thereby challenging validity of obligations; therefore, no basis for interlocutory appeal based on claimed departure from *Sharp*).

These decisions, when read together with the *Net Equity Decision*, demonstrate that "value" should be found where a valid claim against BLMIS was discharged by a withdrawal, whether or not the withdrawal was supported by an equivalent cash deposit.

## CONCLUSION

The temporal limitation of Section 548(a)(1)(A) does not permit the Trustee to disregard the parties' legal rights, or to avoid transfers, before its two-year period commences. Even using the Trustee's Net Investment Method, the customer's account balance at the start of that period, and any deposits during the period, constitute "value." This analysis is supported by the *Net Equity Decision*.

Dated:  New York, New York
        October 24, 2011

                                        DAVIS POLK & WARDWELL LLP

                                        By:   /s/ Karen E. Wagner

                                              Karen E. Wagner
                                              Dana M. Seshens

                                              450 Lexington Avenue
                                              New York, New York 10017
          Of Counsel:                         Telephone:     (212) 450-4000
          Robert B. Fiske, Jr.                Facsimile:     (212) 701-5800
          Robert F. Wise, Jr.

                                              *Attorneys for Defendants*