UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　　　　　Debtor, | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>SAUL B. KATZ, et al.,<br><br>　　　　　　　　　　Defendants. | Adv. Pro. No. 10-05287 (BRL)<br><br>**ECF CASE**<br><br>11 Civ. 03605 (JSR) (HBP)<br><br>(Oral Argument Requested) |

**TRUSTEE'S REPLY TO DEFENDANTS' MEMORANDUM OF LAW REGARDING DETERMINATION OF "FOR VALUE" AND NET EQUITY RULING**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

# TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................................................. 1

Legal Discussion ..................................................................................................................... 2

    I.    Under The Second Circuit's Net Equity Ruling, Customers Have No Legal Right To Their Account Balances. ........................................................................... 2

    II.    To Give Credence To The Fictitious Profits On Their Statements Works An Inequity On All Customers. .............................................................................. 3

    III.    The Temporal Limitation On Avoidance Actions Under Section 548(a)(1)(A) Of The Bankruptcy Code Does Not Alter The Trustee's Calculation Of Defendants' Principal And Fictitious Profits. .............................. 6

Conclusion ............................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amer. Sur. Co. of N.Y. v. Sampsell*,
   327 U.S. 269 (1946) ................................................................................................................3

*Armstrong v. Collins*,
   2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ..........................................................................4

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*,
   362 B.R. 624 (Bankr. S.D.N.Y. 2007) .....................................................................................4

*Brevot v. N.Y. City Dep't of Educ.*,
   299 F. App'x 19 (2d Cir. 2008) ...............................................................................................6

*City of Monroe Emp. Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
   269 F.R.D. 291 (S.D.N.Y. 2010) .............................................................................................6

*City of West Haven v. Commercial Union Ins. Co.*,
   894 F.2d 540 (2d Cir. 1990) .....................................................................................................6

*Donell v. Kowell*,
   533 F.3d 762 (9th Cir.), *cert. denied*, 129 S. Ct. 640 (2008) ...................................................5

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................6

*In re Bernard L. Madoff Investment Securities LLC*,
   654 F.3d 239 (2d Cir. 2011) ........................................................................................1, 2, 3, 4

*In re Bevill, Bresler & Schulman, Inc.*,
   59 B.R. 353 (D.N.J.), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986) ....................................3

*In re Centennial Textiles, Inc.*,
   220 B.R. 177 (Bankr. S.D.N.Y. 1998) .....................................................................................4

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) .......................................................................................................5

*Picard v. Katz*,
   2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) .........................................................................5

*Scholes v. Lehmann*,
   56 F.3d 750 (7th Cir. 1995) ..................................................................................................4, 5

*Stolow v. Greg Manning Auctions Inc.*,
   80 F. App'x 722 (2d Cir. 2003) ...............................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

11 U.S.C. § 546(e) ...............................................................................................................1, 3, 6

11 U.S.C. § 548(a)(1)(A) ..............................................................................................................6

11 U.S.C. § 548(c) .....................................................................................................................2, 3

U.C.C. § 8 ......................................................................................................................................2

U.C.C. § 8-503 ...............................................................................................................................3

The Trustee respectfully submits this reply to Defendants' memorandum of law pursuant to this Court's September 28, 2011 Order [ECF No. 41], supporting the Trustee's calculation of principal and fictitious profit from the inception of the BLMIS customer accounts.

## Preliminary Statement

Thousands of investors were harmed by the collapse of Madoff's Ponzi scheme upon the revelation that the supposed gains in their accounts were phantom profits. But not all investors were injured equally. Some investors, like Defendants here, received all of their principal back. Others lost every cent. Because BLMIS was a massive Ponzi scheme, the almost $300 million of net profits received by Defendants came directly from the latter pool of investors that did not receive their principal back. In this proceeding and other avoidance actions, the Trustee seeks to recover those funds so that all customers may share *pro rata* in BLMIS's estate, in conformity with SIPA and the Bankruptcy Code.[1]

The Trustee has calculated customers' principal and fictitious gains through the Net Investment Method, which fairly credits customers for all of their principal deposits to determine whether they are "net losers" or "net winners." Despite the Second Circuit's unqualified endorsement of the Trustee's methodology in *In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 239 (2d Cir. 2011) (the "Net Equity Ruling"), Defendants resurrect here the same arguments rejected by the Second Circuit. For example, Defendants substitute "account balances" for "statement amount" to argue that they should be permitted to keep those amounts. Yet reliance

---

[1] At the Court's direction, the Trustee only argues here for how two-year fictitious profits and principal should be calculated for purposes of section 546(e) of the Bankruptcy Code. In his complaint, the Trustee seeks to avoid and recover both fictitious profits and principal from Defendants.

upon the fabricated account balances was flatly rejected by the Second Circuit.  In a nutshell, Defendants ask this Court to bless their phantom gains and permit them to keep money stolen from other customers by obscuring the distinction between net profits and principal and fundamentally misconstruing the relevance of Article 8 of the Uniform Commercial Code to this action.  Thus, Defendants do not address this Court's question on the proper method for calculating two-year "net profits," but instead preview their affirmative defense under section 548(c) of the Bankruptcy Code.  Defendants' self-serving arguments should be rejected in favor of the Trustee's Net Investment Method, which determines the proper measure of principal and ficitious profit in this Ponzi scheme.

## Legal Discussion

I.  **Under The Second Circuit's Net Equity Ruling, Customers Have No Legal Right To Their Account Balances.**

Defendants posit that the Trustee has "no legal power to disregard a customer's account balance immediately before the start of the two-year period . . . ." (Def. Br. 1).  Although "account balance," is never defined, Defendants' brief demonstrates that they equate that term with "statement balance" or "last statement."  Yet the Second Circuit held that because BLMIS's statements were wholly fabricated, it would have been "legal error" for the Trustee to "discharge claims upon the false premise that customers' securities positions are what the account statements purport them to be."  Net Equity Ruling at 241.

Before the Circuit and here, Defendants continue to assert a right to their statement balances under their erroneous interpretation of Article 8 of the Uniform Commerical Code.  (See Def. Br. at 3; Net Equity Tr. at 22, 33).  The Circuit was apparently unswayed and as already briefed by the

Trustee in his opposition to Defendants' motion to dismiss, federal preemption and the official commentary to the U.C.C. belie these assertions.[2]

## II. To Give Credence To The Fictitious Profits On Their Statements Works An Inequity On All Customers.

Defendants argue that the fictitious profits reflected on their account statements represent valid claims against BLMIS, the satisfaction of which constitutes value for purposes of section 548(c) of the Bankruptcy Code. (Def. Br. 4-5, 9-10). But no court has ever extended that notion to innoculate transfers of fictitious profits from recovery by a trustee. Under Defendants' "value" theory, their account balances, at the start of the two-year period, should be treated as consisting entirely of "principal." Put another way, Defendants advocate that section 546(e) of the Bankruptcy Code, which merely limits a trustee's avoidance powers, be used to transform a decades-long Ponzi scheme into a two-year one. And by the further alchemy of transforming profits into "principal" to establish a baseline "account balance," Defendants hope to inequitably and improperly erase hundreds of millions of dollars of liability to the direct detriment of the "net losers." Not only does this formulation run afoul of the Net Equity Ruling, it ratifies Madoff's fraud and runs counter to SIPA, the Bankruptcy Code, and venerable equitable principles animating the law of fraudulent transfers.

---

[2] *See* Mot. to Dis. Opp. at 63-64, 11 Civ. 3605, ECF No. 29 (July 8, 2011); *see also In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353, 378 (D.N.J.), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986) (holding under the Supremacy Clause that state law that is inconsistent with SIPA is preempted); U.C.C. § 8-503 cmt. 1 ("If the intermediary fails and its affairs are being administered in an insolvency proceeding, *the applicable insolvency law governs how the various parties having claims against the firm are treated*.") (emphasis added); *Amer. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269, 272 (1946) ("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors.").

In its Net Equity Ruling, the Second Circuit reasoned that reliance on a particular customer's account statement only serves to ratify the fraud. *See, e.g.,* Net Equity Ruling at 242 ("the Trustee is not obligated to . . . treat customer statements as reflections of reality."). This reasoning echoes that of numerous courts that hold that an investor can never provide "value" to a Ponzi scheme to insulate from avoidance a withdrawal of fictitious profits other than by additional deposits of principal—a proposition embedded in the Trustee's Net Investment Method.[3] As answered rhetorically by the Seventh Circuit in response to an investor's attempt to keep fictitious profits in another Ponzi scheme, "But what was the source of the profit? A theft . . . from other investors. What then is [defendant's] moral claim to keeping his profit? None . . . . [defendant] was not only lucky; he was an unwitting accomplice of [the fraudster]." *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995); *see also Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 634-37 (Bankr. S.D.N.Y. 2007) (no value provided for receipt of fictitious profits); *Armstrong v. Collins*, 2010 WL 1141158, at *22 (S.D.N.Y. Mar. 24, 2010) ("'The paying out of profits to [the investor] not offset by further investments by him conferred no benefit on the [debtors] but merely depleted their resources faster.'") (quoting *Scholes*).

Under SIPA, the Trustee's first mandate is to make customers whole. This can only be accomplished through recovery of the principal lost by "net losers" from Defendants and other "net winners." Indeed, "net losers" have commented on the gross inequity of "net winners" sheltering

---

[3] The Trustee's Net Investment Method credits subsequent deposits of principal against "profits" to account for "value." Defendants argue that the account balance be set off entirely against the Trustee's claims, which is contrary to established law. *See e.g., In re Centennial Textiles, Inc.*, 220 B.R. 177, 182 (Bankr. S.D.N.Y. 1998) ("[I]t is well settled that a party will be unable to assert a set-off where that party is being sued for fraudulent transfers.").

their bogus gains from avoidance and recovery. Simon Jacobs, a *pro se* "net loser," correctly observed of Defendants' theory here that "[t]he idea that because Madoff was a broker dealer, the assets recovered by the trustee should be returned to investors in proportion to their last monthly statement would effectively make the trustee perpetrate his own Ponzi scheme, because the net winners would again receive money put into the scheme by the net losers." (Jacobs Ltr. at 2, Adv. Pro. No. 08-01789, ECF No. 1041 (December 7, 2009)). Another investor cogently noted that "the account balance approach is an understandable attempt by some investors to increase their recoveries and thereby mitigate their losses. However, the mitigation would come only by shifting recoveries to net winners and shifting losses to net losers, increasing the losses of those who have already lost the most." (Optimal Br., Adv. Pro. No. 08-01789, ECF No. 1051 (December 11, 2009)).

Constrained by the Second Circuit's holding, Defendants try to argue that it can be read to preclude the Trustee's ability to recover all transfers in this case because such transfers satisfied antecedent debts. While this may hold true for a *good faith* defendant's principal investment, it never does for fictitious profits.[4] Defendants invoke *In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005), where the Second Circuit ruled that a trustee could not avoid repayment of a *valid* loan obligation made before the lender's awareness of fraudulent activity because it constituted the satisfaction of an antecedent debt. *See In re Sharp*, 403 F.3d at 55-57. But this Court has already determined that *Sharp* has no application on the facts of this case where the Trustee seeks to avoid

---

[4] *See Donell v. Kowell*, 533 F.3d 762, 771 (9th Cir.), *cert. denied*, 129 S. Ct. 640 (2008); *Scholes*, 56 F.3d at 759.

transfers as actually fraudulent. *See Picard v. Katz*, 2011 WL 4448638, at *4 (S.D.N.Y. Sept. 27, 2011).

### III. The Temporal Limitation On Avoidance Actions Under Section 548(a)(1)(A) Of The Bankruptcy Code Does Not Alter The Trustee's Calculation Of Defendants' Principal And Fictitious Profits.

Defendants also erroneously argue that the two-year look back period set forth in section 548(a)(1)(A) limits consideration of transfers received to calculate net profits. But the look back period simply limits *recovery* of fraudulent transfers to ones made in the two-year period and has no bearing on the *calculation* of fictitious profits and principal. *See generally* Trustee's Opening Br. Thus, the cases cited by Defendants to support their view of the significance of the section 548 look back period are not on point.[5]

### Conclusion

For the reasons set forth above, Defendants' theory of how to calculate principal and fictitious profits for purposes of section 546(e) of the Bankruptcy Code must be rejected in favor of the Trustee's Net Investment Method.

---

[5] *See Brevot v. N.Y. City Dep't of Educ.*, 299 F. App'x 19, 20-21 (2d Cir. 2008) (dismissing employment discrimination claims under 42 U.S.C. § 1983 where alleged misconduct took place before the three-year statute of limitations); *Stolow v. Greg Manning Auctions Inc.*, 80 F. App'x 722, 725-26 (2d Cir. 2003) (dismissing antitrust and RICO claims where alleged misconduct took place before the statute of limitations period); *City of West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 546-47 (2d Cir. 1990) (limiting workers' compensation insurer's damages for continuing misconduct based upon the applicable statute of limitations); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011) (applying last in, first out method to calculate financial interest for purposes of determining presumptive lead class action plaintiff); *City of Monroe Emp. Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) (same).

Date: November 4, 2011  By: */s/ David J. Sheehan*
New York, New York  **BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Marc Skapof
Email: mskapof@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Ferve E. Ozturk
Email: fozturk@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*