**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

IRVING H. PICARD,                      :
                             :

              Plaintiff,        :
                             :

       - against -          :   11-CV-03605 (JSR)
                             :

SAUL B. KATZ, et al.,               :
                             :

            Defendants.     :
                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE TO AMICUS BRIEF ON "RESET TO ZERO" METHODOLOGY**

# TABLE OF CONTENTS

P<small>AGE</small>

ARGUMENT..................................................................................................1

CONCLUSION.............................................................................................4

# TABLE OF AUTHORITIES

PAGE

## CASES

*In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL)
(Bankr. S.D.N.Y. Nov. 15, 2011) ...........................................................................3

*In re Bernard L. Madoff Inv. Sec. LLC*, 10-2378-bk, 2011 U.S. App. LEXIS 16884
(2d Cir. Aug. 16, 2011) ...........................................................................................3

## STATUTES

11 U.S.C. § 548(a)(1)(A).............................................................................. 1, 3, 4

11 U.S.C. § 548(d)(2)(A).....................................................................................1

NYUCC § 8-102(a)(14).......................................................................................2

NYUCC § 8-105 .................................................................................................2

NYUCC § 8-501 .................................................................................................2

NYUCC § 8-503 .................................................................................................2

Defendants respectfully submit this response to the brief, filed on November 30, 2011, by certain *amici* who propose a "reset to zero" methodology to address the question posed by this Court as to how to evaluate transactions within the two-year period of Section 548(a)(1)(A) of the Bankruptcy Code.

## ARGUMENT

*Amici* propose, in the event this Court does not accept Defendants' position, an alternative they call "reset to zero." As Defendants understand this approach, if a customer had withdrawn more than he deposited within the two-year period, any transfer in excess of the amount deposited could be avoided unless "value" existed for some or all of that excess. Value is determined by the customer's balance prior to the two-year period. If the customer had withdrawn less than he deposited before the two-year period, the balance in the customer's account at the start of the two-year period would constitute "value." If the customer had withdrawn more than he deposited before the start of the two-year period, no such "value" would exist, but the customer's opening position would be "reset to zero" so that a customer's liability for transfers within the two-year period would not be increased by withdrawals occurring before the two-year period, which cannot be avoided.

Defendants agree with *amici* that the Trustee's approach, under which transfers *before* the two-year period may increase the liability of the customer for transfers *within* the period, violates the temporal limit of Section 548(a)(1)(A). Defendants further agree that antecedent debt that exists at the beginning of the period constitutes "value" under Section 548(d)(2)(A). Defendants contend, however, that such "value" may not be limited to what the Trustee terms "principal."

1

BLMIS was a registered broker and, thus, a "securities intermediary" under Article 8 of the New York Uniform Commercial Code ("NYUCC"). NYUCC § 8-102(a)(14). That fact causes this case to be very different from other Ponzi scheme cases, in which the wrongdoer either issued direct interests in a fraudulent scheme or sold assets that were not financial assets, activities to which no particular statutory system applied. Here, specific rules under Article 8 and the federal securities laws governed transactions with BLMIS before the onset of its SIPA case.[1] The application of those rules is especially important where fraud is perpetrated by a securities intermediary in the indirect holding system, because a customer holding a securities entitlement has no protection other than Article 8. There are no certificates, and there is no vault. There is only the law.

Under Article 8, BLMIS' statements established its legal obligation to customers. NYUCC § 8-501. That obligation constituted antecedent debt—even if SIPC would not have been responsible for the full amount and even if the full amount would not constitute a priority "net equity" claim to the fund of customer property. For avoidance purposes, the determinative question is whether a transfer discharged *any* valid obligation of a debtor, and there is no dispute that BLMIS was liable for the full amount

---

[1] The Trustee's only argument against the application of Article 8 is that it is overridden or preempted by SIPA. Nothing in SIPA purports to override the substantive provisions of Article 8, which establish the legal entitlements of brokerage customers. Article 8's *distribution* provision *is* preempted *after* a SIPA case is filed. NYUCC § 8-503 cmt. 1 ("For example, the distributional rules for stockbroker liquidation proceedings under the Bankruptcy Code and the Securities Investor Protection Act ('SIPA') provide that all customer property is distributed pro rata among all customers in proportion to the dollar value of their total positions, rather than dividing the property on an issue by issue basis."). But the distributional rules are not at issue here. At issue here is the broker's obligation to the customer *before* any SIPA case is commenced. That is governed by NYUCC Section 8-105, which is not retroactively overridden or preempted by any provision of SIPA.

acknowledged on a BLMIS statement.  The Trustee has not even sought to avoid these obligations.[2]  On the contrary, he has repeatedly stated that, after the SIPA filing, "[a]ll BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are general creditors of the BLMIS estate."  (Trustee's Sixth Interim Report for the Period Ending Sept. 30, 2011, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (BRL), doc. no. 4529, at ¶ 115 (Bankr. S.D.N.Y. Nov. 15, 2011).)  The Second Circuit has concurred that customers have claims for the securities BLMIS owed them.[3]  Customers had exactly the same claims in the years before the SIPA filing and, whether based on Article 8, common law, or both, these obligations to customers created antecedent debt.

Therefore, there is no dispute that "value" existed immediately prior to the start of the two-year period based on what BLMIS owed its customers.  The only dispute concerns how to calculate that "value."  Defendants contend that Section 548(a)(1)(A) of the Bankruptcy Code requires that transactions before the start of the two-year period be accorded recognition under Article 8, and under Article 8 what was owed is the amount reflected on a customer statement.  Consequently,

---

[2]  Nor could the Trustee do so.  The only person Madoff could have intended to defraud when a *deposit* to BLMIS was made was the *depositing customer*.  The Trustee could avoid such an obligation only if he could prove that a particular customer was willfully blind to Madoff's fraud when the deposit was made.

[3]  The Trustee has argued repeatedly that the Second Circuit has squarely rejected the contention that the statements created valid debt.  That contention misrepresents the holding in the *Net Equity Decision*, which is that customers have claims for securities based on their statements, but that in this case SIPA permits the Trustee to determine that "net equity" claims may be limited to the amount of a customer's net investment.  *In re Bernard L. Madoff Inv. Sec. LLC*, 10-2378-bk, 2011 U.S. App. LEXIS 16884, at *19-20, 27 (2d Cir. Aug. 16, 2011).  The "net equity" definition is not relevant to the avoidance analysis.

Defendants respectfully disagree with the alternative proposed by *amici* as to quantification, although not with *amici*'s conclusion that transfers before the start of the two-year period may not be avoided and may not increase the liability of a customer for transfers within the two-year period as set by Section 548(a)(1)(A).

## CONCLUSION

Defendants respectfully submit that the temporal limitation of Section 548(a)(1)(A) does not permit the Trustee to disregard the parties' legal rights, or to avoid transfers, before its two-year period commences and that the customer's account statement balance at the start of the two-year period, plus any deposits during the period, constitute "value."

Dated:  New York, New York
          December 6, 2011

DAVIS POLK & WARDWELL LLP

By:   /s/ Karen E. Wagner

          Karen E. Wagner
          Dana M. Seshens

          450 Lexington Avenue
          New York, New York 10017

Of Counsel:                     Telephone:     (212) 450-4000
Robert B. Fiske, Jr.            Facsimile:     (212) 701-5800
Robert F. Wise, Jr.

          *Attorneys for Defendants*

4