```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
IRVING H. PICARD,                 :
                                  :
               Plaintiff,         :
                                  :          11 Civ. 3605 (JSR)
          -v-                     :
                                  :
SAUL B. KATZ, et al.,             :          OPINION AND ORDER
                                  :
               Defendants.        :
--------------------------------x
```

JED S. RAKOFF, U.S.D.J.

No principle of federal jurisprudence has proved more efficacious than the "final judgment rule," by which a district court's interim rulings may not normally be appealed until the case is over and final judgment rendered.  Naturally, any party that loses an important interim ruling wants to appeal immediately, believing that a parade of horribles will follow if the district court's supposed error is not immediately corrected.  But, as many state jurisdictions have learned to their detriment, the result of permitting interim appeals is vexatious and duplicative litigation, prolonged uncertainty, and endless delay.  Since, moreover, interim appeals are typically taken before a full record is developed, the appellate courts that permit them must rule without the broader perspective that comes from knowing the whole story.  Whether on the ballfield or in court, "it ain't over till it's over"[1] is both shrewd observation and sound advice.

---

[1] Universally attributed to the great Yogi Berra.

Here, plaintiff Irving H. Picard (the "Trustee") seeks to immediately appeal this Court's Opinion and Order of September 27, 2011 (the "Decision"), which dismissed as a matter of law certain of the Trustee's claims against the defendants and narrowed certain others.[2]  Specifically, he moves to have the Court certify the three key rulings of the Decision for interlocutory appeal under 28 U.S.C. § 1292(b), or at least to have the Court, pursuant to Federal Rule of Civil Procedure 54(b), enter a final judgment as to those claims that have been dismissed so that they may be immediately appealed. For the reasons that follow, the motion is denied.

The three rulings from the Decision that the Trustee seeks to immediately appeal are the following:  First, the Court ruled that the plain terms of § 546(e) of the Bankruptcy Code barred the Trustee from recovering under §§ 544(b), 547(b), and 548(a)(1)(B) of the Code — i.e., sections authorizing the avoidance of transfers made without intent to defraud or avoidable under various state laws — certain "settlement payments" and transfers "in connection with a securities contract" made to the defendants by Bernard L. Madoff Investment Securities LLC ("Madoff Securities").[3]  Second, the Court ruled that, with respect to certain of the remaining claims, the Trustee could

---

[2] Full familiarity with the Decision is here presumed.

[3] Madoff Securities was identified in the Trustee's Amended Complaint ("Am.Cmpl.") as a registered securities broker.  Am.Cmpl. ¶ 29.  The Decision further held that the Trustee could still recover transfers if they involved actual intent to defraud, § 548(a)(1)(A), provided they were not barred by the two-year federal statute of limitations.

not recover on a theory of negligence, and that the defendants could therefore establish that they had received the transfers from Madoff Securities in "good faith" under § 548(c) of the Code by showing that they did not know of, or wilfully blind themselves to, Madoff Securities' fraud.  Third, the Court ruled that the Trustee could not disallow the defendants' own claims to the Madoff Securities estate because 15 U.S.C. § 78fff-2(c)(3) treats customers who received fraudulent transfers as creditors of such an estate.

Although the trial that will finally decide this adversary proceeding is firmly set for March 19, 2012, the Trustee seeks, in effect, to "stop the music" and take these rulings up on interlocutory appeal.  "Federal practice is strongly biased against interlocutory appeals.  Appeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions."  In re September 11 Litig., No. 21 MC 97(AKH), 2003 WL 22251325, at *1 (S.D.N.Y. Oct. 1, 2003).  The Second Circuit has therefore held that "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 25 (2d Cir. 1990) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)).

The Trustee nevertheless seeks to obtain an interlocutory appeal of some or all of the three aforementioned rulings through either or both of two routes.  As to the claims dismissed as a result of the first of the three rulings, the Trustee seeks to have the Court enter "final" (and therefore appealable) judgment on those claims pursuant to Rule 54(b), Fed. R. Civ. P., which states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties <u>only if the court expressly determines that there is no just reason for delay</u>. (emphasis added)

As the plain language of this provision makes evident, entry of final judgment under Rule 54(b) should be made sparingly and <u>only</u> when there is <u>no</u> just reason for delay.  <u>See generally Harriscom Svenska AB v. Harris Corp.</u>, 947 F.2d 627, 629 (2d Cir. 1991).

Alternatively, the Trustee seeks to certify all three rulings for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion <u>and that an immediate appeal from the order may materially advance the ultimate termination of the litigation</u>, he shall so state in

4

> writing in such order. (emphasis added)

The caselaw further makes clear that, similarly to Rule 54(b), certification under § 1292(b) is justified only in "exceptional circumstances." Klinghoffer, 921 F.2d 21 at 25. Moreover, a district judge has "'unfettered discretion to deny certification' of an order for interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met." Gulino v. Bd. of Educ., 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002) (quoting Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 162 (E.D.N.Y. 1999)).

After careful consideration, the Court concludes that the Trustee has entirely failed to demonstrate the kind of extraordinary circumstances that would warrant this Court in granting his motion under either Rule 54(b) or § 1292(b). Indeed, with the trial of this case firmly set to begin just two months from now, the main effect of granting the Trustee's motion would be to materially delay, rather than materially advance, the ultimate termination of the litigation. Although the Trustee makes much of the supposed impact of the Decision on other adversary proceedings he has brought, none of those proceedings is remotely as far advanced as this one. When the trial of this proceeding is completed and final judgment entered, just a few months from now, an appellate court will be able to review, on a full record, not just the three rulings of which the Trustee now complains,

but all relevant rulings in this complicated and important proceeding, thus materially advancing the entire set of Madoff adversary proceedings to a far greater extent than would the piecemeal interlocutory appeal sought by the instant motion.[4]

Although the foregoing points are sufficient to deny the Trustee's motion, it should also be noted that the factual record developed at the forthcoming trial of this case will likely have relevance to many of the issues that the Trustee seeks by his motion to put before the Court of Appeals. For example, the Trustee argues that the Court should not have found that the "Account Agreements" between Madoff Securities and the defendants, referenced in the Amended Complaint at ¶¶ 1103-1104, qualified as "securities contracts" under § 741(7) as a matter of law, but should rather have waited until the specific agreements and the context in which they were made were before the Court. Yet, these very agreements and the context in which they were made will likely be presented as evidence at trial as part of the defendants' affirmative defense under § 548(c), providing the Court of Appeals with a better basis for evaluating the Trustee's argument.

Similarly, the Trustee seeks to argue on appeal that, even though Madoff Securities was a registered securities broker-dealer, it did not qualify as a stockbroker for purposes of § 546(e) because the

---

[4] The Court might also enter final judgment as a result of either party's motion for summary judgment, when it will likely resolve such remaining legal issues as how to calculate the amount of "profits" that

6

Bankruptcy Code defines a stockbroker as one "engaged in the business of effecting transactions in securities," 11 U.S.C. § 101(53A)(B), whereas the Amended Complaint alleges that the part of Madoff Securities' business that involved the defendants here, namely, its investment advisory business, never purchased securities for the defendants' accounts. Am.Cmpl. ¶ 31. While in the Court's view, this attempt to subdivide and parse Madoff Securities' business presents its own difficulties — would a customer be deprived of the benefit of § 546(e) if the broker faked the trades in that customer's account but made trades in other such accounts, or if the broker faked 90% of the purported trades in that customer's account but executed the other 10%? — the evidence at trial will likely make clear not only what part of Madoff Securities' business was fake and what part real, but also, and more importantly in the Court's view, whether Madoff Securities was fairly viewed by the defendants and other customers as engaged in the business of effecting transactions in securities. Put another way, if the proof at trial shows that Madoff Securities held itself out as a stockbroker as defined by § 101(53A)(B) and the defendants, as they allege, had no reason to suppose otherwise, the Trustee, acting on behalf of the estate, may well be barred from contending otherwise with respect to the application of § 546(e).

More generally, the Trustee has himself argued in related proceedings before this Court that the states of mind of defendants

---

defendants received.   See Decision at 11 n.6.

may be relevant to how § 546(e) should be interpreted and applied.  See pages 13-14 of the Trustee's Memorandum of Law in Opposition to Herald Fund SPC's Motion to Withdraw the Reference, in 11 Civ. 6541 (JSR). Because the states of minds of the defendants in the instant case will be one of the key issues in the forthcoming trial, the factual record thus developed will be useful for assessing even those issues now raised by the Trustee.

Without multiplying examples, the point is that the factual record developed at the upcoming trial will both inform the very issues the Trustee seeks to raise on interlocutory appeal and will help to materially advance the determination of other issues common to many of the related adversary proceedings. This provides still another ground for denying the entry of premature and partial final judgment under Rule 54(b) and for denying certification under § 1292(b).

One other point bears mention.  In his papers in opposition to the defendants' motion to dismiss that was the subject of the Decision, the Trustee's primary argument concerning the language of § 546(e) was that a securities contract did not exist unless the parties had "a specific agreement to buy, sell or loan a particular security." Trustee's Memorandum in Opposition to the Sterling Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment dated July 8, 2011 at 90.  This argument was easily refuted by examination of the relevant statutory provisions of the Bankruptcy Code.  In particular, § 741(7)(A)(x) defines "securities contract" to include "a master

8

agreement that provides for [a contract for the purchase, sale, or loan of a security]," and § 741(7)(A)(xi) further includes within the definition "any security agreement or arrangement . . . related to any agreement or transaction referred to in this subparagraph, including any guarantee or reimbursement obligation by or to a stockbroker." Both definitions thus include agreements that do not specify particular securities.

Now, however, under the guise of trying to justify the requirement of § 1292(b) that there be a "substantial ground for difference of opinion," the Trustee attempts to insert new arguments into the record that were never advanced in the papers preceding the Decision. This is a dubious practice at best; but ultimately it is of no moment, as the new arguments are no more persuasive than the old ones.

Specifically, the Trustee argues that a brokerage customer is not entitled to the "safe harbor" protections of § 546(e), even if she believes she is dealing with a stockbroker, if the purported stockbroker, though licensed as such and holding himself out as such, is really conducting a "Ponzi scheme." The Court has already mentioned above some of the difficulties with this interpretation, such as the difficulties in drawing the line between a licensed stockbroker whose Ponzi scheme is all-encompassing and one who fakes only part of his business, or only part of his trades within a given line of business, or only part of his trades for a given customer, etc. But a more fundamental problem arises from the fact that, as already

set forth in the Decision, § 546(e) on its face provides a safe harbor not just for stockbrokers but also for investors. Thus, an interpretation that would prohibit its availability to fraudulent stockbrokers would make no sense if also applied to frustrate the reasonable expectations of those brokers' customers. See generally, Todd D. Rakoff, Statutory Interpretation as a Multifarious Enterprise, 104 Nw. L. Rev. 1559 (2010).

None of the cases on which the Trustee relies is relevant to the issue of whether a licensed stockbroker engaged in a Ponzi scheme should or should not be considered a stockbroker in determining whether or not to apply § 546(e) on behalf of customers. See, e.g., In re Slatkin, 525 F.3d 805, 817 (9th Cir. 2008) ("It is undisputed that Slatkin was not a licensed stockbroker."); Wider v. Wootton, 907 F.2d 570, 571 (5th Cir. 1990) ("[Cohen] was not a licensed stockbroker—his license was suspended in the mid-1970s after making discretionary trades without prior approval.").

The Trustee's purported reliance on Judge Marrero's interesting decision in In re Adler, Coleman Clearing Corp., 263 B.R. 406 (S.D.N.Y. 2001) further demonstrates the point. In Adler Coleman, the court considered a situation in which applying § 546(e) threatened to potentially allow the entity that had committed the fraud to reap benefits from the fraud by making transfers to insiders and other related persons based on fictitious trades. Id. at 420-21, 440, 485. The court, invoking the doctrine of "absurd results," id. at 478,

10

concluded that, notwithstanding the literal language of § 546(e), such a result could not be permitted. Id. at 485. Here, by contrast, the only effect of § 546(e), as construed by the Decision in this case, is to preserve the safe harbor for returns on securities investments that the Trustee cannot avoid under § 548(a)(1)(A). In other words, whereas Adler Coleman implied a fraud exception to § 546(e) in order to prevent the defrauder from reaping benefits from its fraud, the Decision focused on § 546(e)'s explicit fraud exception—namely, its exemption of § 548(a)(1)(A) from the safe harbor—in order to determine what transfers third parties may keep. There is nothing about the Decision's result that is in any way absurd, and Adler Coleman is therefore inapplicable.[5]

The other case that the Trustee especially emphasizes, Judge Kimba Wood's recent decision in Picard v. Merkin, 2011 WL 3897070 (S.D.N.Y. 2011), if anything, supports this Court's view.[6] Merkin was, ironically, an application by the Receiver of certain Madoff Securities defendants for leave to take an interlocutory appeal from a decision of the Bankruptcy Court, on a motion to dismiss, that held

---

[5] The Court therefore need not reach the issue of whether the court in Adler Coleman correctly applied the extremely limited doctrine of "absurd results." More generally, Judge Marrero's view that "in prospecting profoundly into words in search of the sense of particular legislation," one must "not surrender purpose to literalness," id. at 478, is reminiscent of the "legal process" mode of statutory interpretation that the Supreme Court in recent years has repeatedly rejected in favor of, yes, literalness.

[6] Merkin was decided on August 31, 2011, or less than three weeks before the Decision, and neither the Court nor, apparently, the parties were aware of it until shortly after the Decision was rendered.

11

that it was premature to determine at that stage whether, for purposes of applying § 546(e), Madoff Securities qualified as a "stockbroker" that had "securities contracts" with its customers. Id. at *12. All that Judge Wood held, in her brief analysis, was that the Receiver, by failing to cite any cases that established that there was a substantial ground for difference of opinion over whether it was improper to defer these determinations until after the pleading stage, had failed to make out a case for allowing an interlocutory appeal. Id.

The real lesson of Merkin, therefore, is that interlocutory appeals of the issues here presented are not to be lightly granted. Moreover, if anything, the underlying determination by the Bankruptcy Court not to reach these issues at the pleading stage, while different from the approach taken in the Decision, is still an implicit rejection of the Trustee's argument that there is an automatic "Ponzi scheme" exception to the application of § 546(e). Furthermore, neither Judge Wood nor the Bankruptcy Court had occasion to consider most of the specific issues on which the Decision is focused, such as whether a court must take customers' viewpoints and reasonable reliance into account when interpreting § 546(e), or whether, regardless of the issue of "securities contracts," payments from Madoff Securities to its customers constituted "settlement payments" under the Code. See In re Enron Creditors Recovery Corp., 651 F.3d 329, 336-38 (2d Cir. 2011).

Without elaborating further, the point is that neither the

12

Trustee's new arguments nor the authorities he presents persuades the Court that there is a "substantial ground for difference of opinion" with respect to the Decision's interpretation of § 546(e). The same holds true, even more plainly, with respect to the other issues raised by the Decision, see supra, as to which the Trustee is unable to muster any persuasive caselaw to the contrary.

The Trustee has, however, brought to the Court's attention one oversight in the Decision the Court now undertakes to correct. Count 9 of the Trustee's Amended Complaint sought to recover subsequent transfers pursuant to 11 U.S.C. §§ 544(b) & 550(a). Section 546(e) prohibits avoidance under § 544(b), but does not address avoidance under § 550(a). Section 550(a) permits avoidance of a subsequent transfer "to the extent that a[n initial] transfer is avoided under section . . . 548." Thus, since the Court concluded that the Trustee could avoid a transfer under § 548(a)(1)(A) (involving actual intent), it should have further concluded that the Trustee could also avoid to the same extent subsequent transfers of the same funds under § 550(a). Applying this analysis, the Court would have dismissed Count 9 only in part. The correct response to this error, however, is neither entry of final judgment under Rule 54(b) nor certification on an interlocutory appeal under § 1292(b), but instead reconsideration of the Court's decision to dismiss Count 9 in full. Undertaking such reconsideration sua sponte, the Court now hereby reinstates Count 9 in part, but only insofar as it seeks to avoid subsequent transfers

13

under § 550(a) wherever the Trustee could have avoided an initial transfer under § 548(a)(1)(A).  It should also be noted that the reinstatement of the partial Count will in no respect warrant re-opening discovery nor change the trial date, which remains fixed and firm.

For the foregoing reasons, the Trustee's motion is denied in its entirety, but Count 9 of the Amended Complaint is hereby reinstated to the limited extent described above.  The Clerk of the Court is hereby directed to close item number 45 on the docket of this case.

SO ORDERED

Dated: New York, New York
      January 17, 2012                    JED S. RAKOFF, U.S.D.J.

14