**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IRVING H. PICARD, Plaintiff, - against - SAUL B. KATZ, et al., Defendants. | : | 11-CV-03605 (JSR) (HBP) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE EXPERT REPORTS AND TESTIMONY OF STEVE POMERANTZ AND HARRISON J. GOLDIN**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants*


# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 5

THE TRUSTEE'S EXPERTS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 702 ........ 5

A. Dr. Pomerantz's Opinions Are Irrelevant and Unfounded ........ 7

B. Mr. Goldin's Opinions Are Irrelevant and Unfounded ........ 10

C. The Pomerantz and Goldin Expert Reports and Testimony Must Be Stricken ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

## CASES

PAGE

*A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576 (11th Cir. 2001)....................11

*Atwater v. Nat'l Football League Players Ass'n*,
No. 1:06-CV-1510-JEC, 2009 U.S. Dist. LEXIS 98236
(N.D. Ga. Mar. 26, 2009), *aff'd*, 626 F.3d 1170 (11th Cir. 2010)............................9-10

*Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472 (1st Cir. 1996)........................10

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996)........................................10

*Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376 (1st Cir. 2000)....................................11

*Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y. 2003)........10

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ..............................................6

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995)................................6

*Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420 (E.D.N.Y. 2011).....................11

*Frederick v. Swift Transp. Co.*, 591 F. Supp. 2d 1156 (D. Kan. 2008) .............................11

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ....................................................................7

*George v. Kraft Foods Global, Inc.*,
No. 08 C 3799, 2011 U.S. Dist. LEXIS 82337 (N.D. Ill. July 25, 2011) .......................7

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008)...........7

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992)........................................................................8

*Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) .........................................8

*In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d 482 (S.D.N.Y. 2009) .............................7

*Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299 (S.D.N.Y. 2010)............................9

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005)...................................................6

*Picard v. Katz*,
No. 11 Civ. 3605, 2011 U.S. Dist. LEXIS 109595 (S.D.N.Y. Sept. 27, 2011) ............8

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997)..............................................................6

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................ 6, 11-12

*SEC v. Cohmad Sec. Corp.*,
No. 09 Civ. 5680, 2010 U.S. Dist. LEXIS 8597 (S.D.N.Y. Feb. 1, 2010) ....................9

*Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010).................................... 8-9

*Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599 (S.D.N.Y. 2010).............................9

*United States v. Scop*,
846 F.2d 135 (2d Cir.), *rev'd in part on reh'g on other grounds*,
856 F.2d 5 (2d Cir. 1988) ..........................................................................................8

*Wald v. Costco Wholesale Corp.*,
No. 03 Civ. 6308, 2005 U.S. Dist. LEXIS 2723 (S.D.N.Y. Feb. 20, 2005) ................11

STATUTES & RULES

Fed. R. Evid. 702 ......................................................................................... *passim*

OTHER AUTHORITIES

4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence
§ 702.03[1] (2d ed. 1997) .......................................................................... 6-7

Defendants respectfully submit this memorandum of law in support of their motion under Federal Rule of Evidence 702 to strike the reports and testimony of Steve Pomerantz and Harrison J. Goldin, both put forward as experts by the Trustee. Neither expert's opinion is relevant to any issue in this action.

**PRELIMINARY STATEMENT**

The principal fact question at issue in this case is whether any Defendant was "willfully blind" to the fraud perpetrated by Bernard L. Madoff ("Madoff") at Bernard L. Madoff Investment Securities LLC ("BLMIS"), when withdrawing funds from his brokerage account. Proof of "willful blindness" requires evidence as to a Defendant's state of mind—did the Defendant believe there was a high probability Madoff was engaged in fraud, and did he deliberately turn away from confirmatory evidence.

Neither "expert" provides relevant expertise with regard to this issue. First, both offer opinions addressed to inapposite legal standards, one based on negligence and the other on fiduciary duty. Dr. Pomerantz contends that the "customs and practices" of the investment management industry supply the relevant standard to assess Defendants' conduct, essentially a negligent departure from due care standard. Mr. Goldin asserts that Defendants' conduct should be assessed using the "industry norms" for management of retirement plan investments, which is essentially a fiduciary standard applicable under the Employee Retirement Income Security Act of 1974 ("ERISA"). This Court has ruled that the Trustee may not recover on a theory of negligence, and none of the Defendants in this action is an ERISA plan.

Second, both experts' opinions are based on facts that are either inconsistent with or absent from the record or have no bearing on the case before the Court. The Trustee

seeks to avoid transfers by Defendants of their own money—not funds invested for others. Consequently, Dr. Pomerantz's and Mr. Goldin's respective opinions and testimony must be stricken under Rule 702 because they are neither relevant nor helpful.

**BACKGROUND**

In accordance with the Court's case management order, the Trustee disclosed five proposed experts on November 22, 2011:

- Bruce G. Dubinsky, a forensic accounting and fraud investigation expert who opines that Madoff was running a Ponzi scheme rather than a legitimate business. Defendants do not challenge the factual conclusions reached by Mr. Dubinsky.

- Matthew B. Greenblatt and Lisa M. Collura, who present information about cash transfers between BLMIS and each Defendant. The amounts and dates of the transfers are not disputed, and Defendants have offered to stipulate to them, which would obviate the need for testimony by these experts.

- Steve Pomerantz, a quantitative analysis expert—in colloquial terms, a "quant"—who contends that Defendants failed to adhere to industry customs and practices by failing to conduct due diligence on BLMIS.

- Harrison J. Goldin, a financial adviser who claims that certain Defendants, who were fiduciaries of the Sterling Equities 401(k) plan (which is not a party to this action), breached "industry" standards by failing to conduct due diligence on BLMIS.

**Dr. Pomerantz's Opinions**

Dr. Pomerantz was engaged because he had "experience in the *investment management business* doing due diligence and doing quantitative analysis." (Deposition Transcript of Bruce G. Dubinsky, Jan. 11, 2012, 18:25-19:2 (emphasis added)

(Declaration of David C. Newman in Support of Motion to Strike ("Newman Decl."), dated Jan. 26, 2012, Ex. A).) He was asked to:

> "(i) describe *the investment management industry*, including . . . the forms and elements associated with both quantitative and qualitative due diligence . . . ; (ii) determine whether, in my opinion, certain facts I reviewed constituted red flags or warning signs *under the customs and practices of the investment management industry*; (iii) determine whether, in my opinion, any such red flags were indicia of fraud such that a *reasonable investor* similarly situated to Sterling Equities ('Sterling') would have performed additional due diligence; and (iv) opine on what *industry practice due diligence* conducted in real time *would have* revealed." (Initial Expert Report of Dr. Steve Pomerantz ("Pomerantz Report"), dated Nov. 22, 2011, ¶ 18 (emphases added) (Newman Decl., Ex. B).)

Dr. Pomerantz's essential conclusion is that if a wealthy customer deposits his own funds with a registered broker to whom he gives discretion, the customer is, or could be equated with, an institutional investor. (*Id.* ¶¶ 25-26; *see also* Rebuttal Expert Report of Dr. Steve Pomerantz, dated Dec. 13, 2011, ¶¶ 3(c), (g), 25, 39, 52 (Newman Decl., Ex. C).) As such, he opines that the customer has a due diligence obligation to investigate red flags. (Deposition Transcript of Dr. Steve Pomerantz ("Pomerantz Tr."), Jan. 8, 2012, 177:1-178:5 (Newman Decl., Ex. D).)

Dr. Pomerantz recognizes that none of the Defendants is, or was acting as, an institutional investor, so he contends that high net worth individuals "behave like institutional investors, for example, by performing quantitative and qualitative due diligence and by having a more robust and sophisticated understanding of the nature of financial markets, as well as understanding warning signs, i.e. red flags." (Pomerantz Report ¶ 26 (Newman Decl., Ex. B).) By "quantitative and qualitative due diligence" Dr. Pomerantz means regression analyses, reverse engineering, review of Sharpe and Sortino

ratios, Volume Weighted Average Price ("VWAP") reviews, and Black-Scholes analyses, among others. (*Id.* ¶¶ 48, 54, 78 n.74, 156, 160, 162, 168-69, 201-06; Pomerantz Tr. 169:19-170:12; 171:8-12; 185:12-22; 208:5-11; 321:1-9; 321:21-322:6; 328:20-329:11 (Newman Decl., Ex. D).)

Dr. Pomerantz does not contend that any Defendant actually performed such "quantitative and qualitative due diligence," so he does not contend that they knew what it would have allegedly disclosed. But, he contends, if a wealthy investor is "not a sophisticated investor, then I would view them as having an obligation to obtain counsel and have an agent operate in that capacity." (Pomerantz Tr. 173:7-13 (Newman Decl., Ex. D).) Similarly, Dr. Pomerantz suggests that receipt of brokerage statements "imparts a responsibility to an investor to understand and have some basis for what's going on." (*Id.* 177:1-16.) And he argues that the Sterling Partners' passive ownership interest in Sterling Stamos caused Defendants either to be expert professional investment managers or to have an obligation to employ Sterling Stamos as a fraud investigator, testifying that "there's certainly a lot of knowledge that is presented to general partners of an entity like that[,] [s]o, there's plenty of experience with those types of things." (*Id.* 134:2-10.)

Rather than consider each of the dozens of Defendants individually to assess their sophistication and what diligence might be expected from them, Dr. Pomerantz suggests that there is really only one Defendant—"the Sterling." (Pomerantz Report ¶ 25 (Newman Decl., Ex. B).) He asserts, contrary to all of the evidence in the record, that Defendants may be treated as a single entity because the "decision to invest in BLMIS is made by the partnership, is made by Sterling Equities partnership." (Pomerantz Tr. 160:14-16 (Newman Decl., Ex. D).)

**Mr. Goldin's Opinions**

Mr. Goldin was asked by counsel for the Trustee to address "the standards, protocols and guidelines that are generally accepted among those responsible for administering third-party retirement plans." (Expert Report of Harrison J. Goldin ("Goldin Report"), dated Nov. 22, 2011, at 3 (Newman Decl., Ex. E).) He concludes that what he terms the "Sterling Fiduciaries" departed from those standards by failing to conduct proper due diligence of BLMIS before offering it as an investment option on a 401(k) plan offered to certain Sterling employees and by failing to disclose certain allegedly pertinent information. (*Id.* 4-5.) It is undisputed that the 401(k) plan about which Mr. Goldin opined is not a party to this action and that none of the Defendants in this action is an ERISA plan. And Mr. Goldin readily concedes that his opinion is irrelevant to an individual's investment of his own funds:

> "The criteria that relate to how people may invest their own money are wholly separate and apart from the standards that apply to the management of an investment and safeguarding of other people's retirement money." (Deposition Transcript of Harrison J. Goldin ("Goldin Tr."), Jan. 12, 2012, 68:17-21 (Newman Decl., Ex. F).)

**ARGUMENT**

**THE TRUSTEE'S EXPERTS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 702**

The admissibility of expert testimony in the federal courts is governed principally by Rule 702 of the Federal Rules of Evidence:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Rule 702 requires a district court to serve as a gatekeeper to ensure that only proper expert testimony is presented. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ("*Daubert I*"). The Rule 702 test for admissibility has three parts. "[A]fter determining that a witness is 'qualified as an expert' to testify as to a particular matter, and that the opinion is based upon reliable data and methodology," the court must then determine "whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citation omitted). This third inquiry—embodied in the "helpfulness" standard of Rule 702(a)—requires that an expert's opinion be connected to a pertinent factual question. Expert testimony that "does not relate to any issue in the case at hand is not relevant and, ergo, non-helpful." *Daubert I*, 509 U.S. at 591 (internal quotation marks omitted); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 n.5 (2d Cir. 1997) (quoting *Daubert I*).

This test for admissibility under Rule 702 is stricter than the minimal relevance requirement of Rule 401. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315, 1321 n.17 (9th Cir. 1995) ("*Daubert II*"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004). "The helpfulness requirement of Rule 702 . . . goes beyond mere relevance. It is a more stringent standard of admissibility, because it also requires expert testimony to have a valid connection to the pertinent inquiry." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.03[1] (2d ed.

1997). "[N]othing . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### A. Dr. Pomerantz's Opinions Are Irrelevant and Unfounded

Dr. Pomerantz's conclusions are completely irrelevant to this case and, therefore, unhelpful under Rule 702.

First, it is well settled that an expert's purported "belief about a party's state of mind is an improper subject for expert testimony." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008); *see also In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 505 (S.D.N.Y. 2009) (holding that an expert "may opine that a defendant had access to information, but she may not opine that the defendant knew that information"). Indeed, in another case Dr. Pomerantz recently offered his expert opinion about what defendants in that case "expected" to happen to certain mutual funds, what their "true beliefs" were about a fund, and whether their actions were "purposefully" misleading. *George v. Kraft Foods Global, Inc.*, No. 08 C 3799, 2011 U.S. Dist. LEXIS 82337, at *9-10 (N.D. Ill. July 25, 2011). The court excluded this testimony, noting that "any portion of Pomerantz's report which suggests that Defendants acted with a particular state of mind is inadmissible . . . speculation." *Id.* at *10.

In addition, it is apparent that Dr. Pomerantz's testimony is an attempt by the Trustee to advocate for a legal position. Dr. Pomerantz opines, in essence, that Defendants had a duty to investigate because wealthy investors have duties different from those of other investors, and if they are made aware of "red flags" that would have caused an institutional investor to do quantitative analysis, which allegedly would have revealed

the Ponzi scheme, they must do such diligence as well.[1]  His position is plainly a legal conclusion, as to which Dr. Pomerantz has no expertise.  *See Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) ("[A]n expert . . . is not qualified to compete with the judge in the function of instructing the jury."); *see also United States v. Scop*, 846 F.2d 135, 140 (2d Cir.), *rev'd in part on reh'g on other grounds*, 856 F.2d 5 (2d Cir. 1988); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977).

His opinion is also directly contrary to this Court's Dismissal Decision, in which the Court ruled that "[a] securities investor has no inherent duty to inquire about his stockbroker, and SIPA creates no such duty."  *Picard v. Katz*, No. 11 Civ. 3605, 2011 U.S. Dist. LEXIS 109595, at *22 (S.D.N.Y. Sept. 27, 2011).  The Court went on to observe:

> "[I]f, simply confronted with suspicious circumstances, [an investor] fails to launch an investigation of his broker's internal practices—and how could he do so anyway?—his lack of due diligence cannot be equated with a lack of good faith, at least so far as section 548(c) is concerned as applied in the context of a SIPA trusteeship." *Id.* at *22-23.

In addition, many courts have held that particular items similar to those relied on by Dr. Pomerantz are not "red flags"—in cases involving alleged scienter, but otherwise analogous—as a matter of law.  *See, e.g.*, *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61,

---

[1] Significantly, although Dr. Pomerantz himself was asked by a client to look at BLMIS, he failed to conclude that Madoff was "running a fraud." (Pomerantz Tr. 251:13-20 (Newman Decl., Ex. D).)  After an elaborate effort to reverse engineer Madoff's trading strategy in 2005, Dr. Pomerantz concluded only that something suspicious was going on, and so advised his client, but reported his conclusions to no one else. (*Id.* 235:21-236:6; 249:2-250:4; 251:13-252:3; 252:13-20.)  When asked why not, he responded that he did not have a sufficient basis to make any accusations. (*Id.* 250:6-15.)  His opinion that the Sterling Partners would have "confirmed" that BLMIS was a fraud had they done some quantitative analysis (Pomerantz Report ¶¶ 27, 33, 132 (Newman Decl., Ex. B)) is therefore contradicted by his own experience.

71-72, 77 (S.D.N.Y. 2010) (rejecting publicly known red flags as "not so obvious" as to infer knowledge on behalf of BLMIS feeder fund and feeder fund's auditor); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 310 (S.D.N.Y. 2010) (red flags were not "so 'extremely obvious' that the [investment adviser] . . . should have recognized them and taken steps to investigate or disclose the risks"); *SEC v. Cohmad Sec. Corp.*, No. 09 Civ. 5680, 2010 U.S. Dist. LEXIS 8597, at *5-15 (S.D.N.Y. Feb. 1, 2010) (rejecting claim that broker-dealer discreetly marketing Madoff's investments from within Madoff's office building for a fee knew of or recklessly disregarded warning signs of fraud, notwithstanding Madoff's request for secrecy and irregular returns in one of the principal's accounts); *Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 623-24 (S.D.N.Y. 2010) (rejecting as "red flags" sufficient to give rise to scienter the consistency of Madoff's "reported excellent results" or the fact that "Madoff was both broker and custodian of the accounts" and finding additional public red flags not so obvious as to infer knowledge).

Similarly, the contention that Defendants' passive investment in Sterling Stamos caused them to have heightened duties or abilities is in reality another legal argument, not an expert opinion on the facts. It is also nonsense. An investor in a mutual fund, or an owner of stock in a brokerage firm, does not have a heightened duty to be, or a heightened ability as, a fraud investigator. The Sterling Partners' passive ownership interest in Sterling Stamos did not create any duty for them to do due diligence.

Because Dr. Pomerantz's assumptions are inconsistent with or unsupported by the evidentiary record, his opinions are of no help to the trier of fact. *See, e.g.*, *Atwater v.*

*Nat'l Football League Players Ass'n*, No. 1:06-CV-1510-JEC, 2009 U.S. Dist. LEXIS 98236, at *11-13 (N.D. Ga. Mar. 26, 2009) (internal citations omitted):

> "Dr. Pomerantz's opinion is focused on the due diligence that should be performed by financial investment firms that are subject to the Investment Advis[e]rs Act of 1940. The NFLPA is a football players association. It is not a financial investment firm, nor does it provide services that compare to those offered by financial investment firms. The industry standards that are the subject of Dr. Pomerantz's opinion are thus inapplicable to the NFLPA."

*See also Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 330 (S.D.N.Y. 2003) (opinion based on "assumptions 'that represent a complete break' with the evidence in the record . . . should be excluded" (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996))); *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 479 (1st Cir. 1996) (expert testimony properly excluded where expert assumed that car's gear selector lever was not in park position, contrary to undisputed testimony that it *was* in park position).

**B. Mr. Goldin's Opinions Are Irrelevant and Unfounded**

The Goldin Report is equally inapposite and unhelpful. As Mr. Goldin recognized, whether the trustee of a 401(k) plan is subject to fiduciary duties, what those duties are, and the "norms" of the "industry," have no bearing on the question whether transfers to Defendants of their own funds may be avoided under the Bankruptcy Code.

Further, it is apparent that the Trustee is using Mr. Goldin as well to advocate a different legal standard. Mr. Goldin carefully refrains from mentioning ERISA—and, in fact, disavows much knowledge of it (Goldin Tr. 22:16-23:18 (Newman Decl., Ex. F))—but his entire report addresses the standards imposed by ERISA. This Court has already ruled that the relevant standard is "willful blindness." The "prudent man" standard has

nothing to do with this case, and the Trustee has not asserted, nor would he have standing to assert, any ERISA claim in any event.

### C. The Pomerantz and Goldin Expert Reports and Testimony Must Be Stricken

Accordingly, the reports and testimony of both Dr. Pomerantz and Mr. Goldin have no probative value and should be excluded under Federal Rule of Evidence 702. *See Wald v. Costco Wholesale Corp.*, No. 03 Civ. 6308, 2005 U.S. Dist. LEXIS 2723, at *17-18 (S.D.N.Y. Feb. 20, 2005) (excluding, as unhelpful, expert testimony on effects warning labels have on consumers where issue was whether a reasonable person would consider himself adequately warned); *see also A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 585 (11th Cir. 2001) (expert testimony "addressed solely to the issue of whether [plaintiff's] operation would have succeeded" was irrelevant to whether defendant diminished the value of plaintiff's property and should have been excluded); *Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000) (expert testimony was properly excluded where it addressed hazard that did not cause injury); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 460-62 (E.D.N.Y. 2011) (excluding, as unhelpful, expert testimony as to the impact of published article on prescribing doctors where plaintiffs had ceased taking drugs before the article was written); *Frederick v. Swift Transp. Co.*, 591 F. Supp. 2d 1156, 1161 (D. Kan. 2008) (excluding, as unhelpful, expert opinion on defendant's conduct related to compliance review where there was no connection between compliance review and accident); *Rezulin*, 309 F. Supp. 2d at 544 (excluding, as unhelpful, expert testimony as to the ethical obligations of pharmaceutical companies, where the issues in dispute were

whether defendants had breached their *legal* duties and proximately caused plaintiffs' injuries).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court strike the reports and testimony of Dr. Pomerantz and Mr. Goldin.

Dated: New York, New York
January 26, 2012

DAVIS POLK & WARDWELL LLP

By: /s/ Karen E. Wagner

Karen E. Wagner
Dana M. Seshens

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Defendants*

Of Counsel:
Robert B. Fiske, Jr.
Robert F. Wise, Jr.