**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Adv. Pro. No. 08-01789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Debtor, | (Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05287 (BRL) |
| Plaintiff, v. | 11 Civ. 03605 (JSR) (HBP) |
| SAUL B. KATZ, et al., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ................................................................................. 4

I.   DEFENDANTS HAVE FAILED TO OFFER ADMISSIBLE EVIDENCE TO DISPUTE ANY OF THE FACTS OFFERED BY THE TRUSTEE AND HAVE DEMONSTRATED NO GENUINE ISSUE FOR TRIAL ................................. 4

II.  DEFENDANTS EXPRESSLY CONCEDE EVERY MATERIAL FACT NECESSARY TO  THE TRUSTEE'S CLAIM FOR AVOIDANCE AND RECOVERY OF FICTITIOUS PROFITS TRANSFERS ................................. 7

    A.   Defendants concede that every transfer made to them by BLMIS was made with actual intent to hinder, delay or defraud its creditors. ......................... 7

    B.   Defendants concede receipt of every relevant transfer made by BLMIS identified by the Trustee. ............................................................... 8

    C.   Defendants concede that the transfers alleged by the Trustee were in excess of principal and thus, as this Court has held, are in excess of the extent to which they gave value. ....................................................... 8

III. EVEN IF REPACKAGED, DEFENDANTS' LEGAL ARGUMENTS ARE STILL WRONG. ........................................................................ 9

    A.   As the Court already held, Sharp is in no way controlling. ................................. 9

    B.   Article 8 of the NYUCC is not relevant. ............................................. 10

    C.   Whether a transferee is a creditor, customer, investor, or equity holder is not relevant to whether the transferee gave value for a transfer. ......................... 12

IV.  DEFENDANTS HAVE NO BASIS TO ARGUE THAT THEY ARE EXEMPT FROM BLACK LETTER LAW REGARDING FICTITIOUS PROFITS FROM A PONZI SCHEME. ...................................................................... 15

    A.   Defendants have no legal right to their account statement balances under SIPA. .................................................................................. 15

    B.   At a minimum, SIPA provides no special shield for fictitious profits received from this SIPA Ponzi scheme. ............................................. 18

CONCLUSION ............................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABF Capital Mgmt. v. Askin Capital Mgmt.*,
    No. 96 Civ. 2978, 1997 U.S. Dist. LEXIS 8195 (S.D.N.Y. June 11, 1997) ...........................14

*Adelphia Commc'ns Corp. v. Bank of Am., N.A.* (*In re Adelphia Commc'ns Corp.*),
    365 B.R. 24 (S.D.N.Y. 2007) ................................................................................................12

*In re Adler, Coleman Clearing Corp.*,
    263 B.R. 406 (Bankr. S.D.N.Y. 2001) .................................................................................17

*Amer. Sur. Co. of N.Y. v. Sampsell*,
    327 U.S. 269 (1946) .............................................................................................................11

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ...............................................................................................................4

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.* (*In re Bayou Group, LLC*),
    396 B.R. 810 (Bankr. S.D.N.Y. 2008) ...............................................................................5, 8

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.* (*In re Bayou Group, LLC*),
    362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) ......................................................................9, 13

*Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*),
    397 B.R. 1 (S.D.N.Y. 2007) ...............................................................................................7, 9

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011) ........................................................................................ *passim*

*Boston Trading Group v. Burnazos*,
    835 F.2d 1504 (1st Cir. 1987) .............................................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...............................................................................................................4

*CFTC v. Weintraub*,
    471 U.S. 343 (1985) .............................................................................................................13

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Group LLC*),
    439 B.R. 284 (S.D.N.Y. 2010) .....................................................................................5, 7, 14

*In re DBSD N. America, Inc.*,
    634 F.3d 79 (2d Cir. 2011) ..................................................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ............................................13

*First Fed. Sav. & Loan Ass'n of Lincoln v. Bevill, Bresler & Schulman, Inc. (In re Bevill, Bresler & Schulman, Inc.)*,
59 B.R. 353 (D.N.J. 1986), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986) ...........10

*Fisher v. Sellis (In re Lake States Commodities, Inc.)*,
253 B.R. 866 (Bankr. N.D. Ill. 2000) ............................................13, 17

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) ............................................18

*Gowan v. The Patriot Grp. (In re Dreier LLP)*,
452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................12, 13

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
288 B.R. 52 (S.D.N.Y. 2002) ............................................7

*Hasset v. Far West Fed. Sav. and Loan (In re OPM Leasing Servs., Inc.)*,
40 B.R. 390 (Bankr. S.D.N.Y.), *aff'd*, 44 B.R. 1023 (S.D.N.Y. 1984) ............................................17

*Kramer v. Sooklall (In re Singh)*,
434 B.R. 298 (Bankr. E.D.N.Y. 2010) ............................................18

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ............................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................5

*McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC)*,
439 B.R. 47 (Bankr. S.D.N.Y. 2010) ............................................8

*Merrill v. Abbott (In re Indep. Clearing House Co.)*,
77 B.R. 843 (D. Utah 1987) ............................................9

*In re Moore*,
39 B.R. 571 (Bankr. M.D. Fla. 1984) ............................................17

*Morris v. Lindau*,
196 F.3d 102 (2d Cir. 1999) ............................................5

*Murray v. McGraw (In re Bell & Beckwith)*,
821 F.2d 333 (6th Cir. 1987) ............................................11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re New Times Sec. Servs., Inc.,*
 371 F.3d 68 (2d Cir. 2004)........................................................................................16

*In re Park South Sec. LLC,*
 326 B.R. 505 (Bankr. S.D.N.Y. 2005) ......................................................................15

*Perkins v. Haines,*
 661 F.3d 623 (11th Cir. 2011) .............................................................................12, 13

*Picard v. Katz,*
 No. 11 Civ. 3605, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) ................................. *passim*

*Rasulo v. Hartnett,*
 No. 08 Civ. 9056 (FPS), 2011 WL 5604065 (S.D.N.Y. Nov. 16, 2011) ..................4

*Scholes v. Lehmann,*
 56 F.3d 750 (7th Cir. 1995) ...............................................................................9, 13, 15

*SEC v. Albert & McGuire Securities Co., Inc.,*
 378 F.Supp. 906 (E.D. Pa. 1974) .............................................................................11

*SEC v. Haligiannis,*
 608 F. Supp. 2d 444 (S.D.N.Y. 2009)......................................................................12

*SEC v. S. J. Salmon & Co.,*
 1973 U.S. Dist. LEXIS 15606 (S.D.N.Y. Aug. 8, 1973) .........................................15

*Sender v. Buchanan (In re Hedged-Inv. Assoc., Inc.),*
 84 F.3d 1286 (10th Cir. 1996) .............................................................................9, 13

*In re Sharp Int'l Corp.,*
 403 F.3d 43 (2d Cir. 2005)..................................................................................9, 10

*Soule v. Alliot (In re Tiger Petroleum Co.),*
 319 B.R. 225 (Bankr. N.D. Okla. 2004) ..................................................................13

*Sterling Equities Assoc., et al. v. Picard,*
 No. 11-968 (filed Feb. 3, 2012) .........................................................................3, 16

*Terry v. June,*
 432 F. Supp. 2d 635 (W.D. Va. 2006) .................................................................9, 13

*Visconsi v. Lehman Bros.,*
 244 F. App'x 708 (6th Cir. 2007) .............................................................................11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*,
   944 F.2d 589 (9th Cir. 1991) ...........................................................9, 13

**STATUTES**

11 U.S.C. § 101(5)(A)...........................................................................12

11 U.S.C. § 101(10)(A).........................................................................12

11 U.S.C. § 547(b)(1) ...........................................................................13

11 U.S.C. § 548(a)(1)........................................................................13, 14

11 U.S.C. § 548(a)(1)(A)....................................................................1, 17

11 U.S.C. § 548(c) .....................................................................1, 2, 4, 9

15 U.S.C. §§ 78aaa *et seq.* .......................................................................1

15 U.S.C. § 78fff-2(c)(1)...................................................................10, 18

15 U.S.C. § 78fff-2(c)(3)...................................................................11, 15

NY UCC 8-503 .......................................................................................10

**RULES**

Fed. R. Civ. P. 56.................................................................................1, 4

Fed. R. Civ. P. 56.1(c) .............................................................................6

Fed. R. Civ. P. 56(c)(1)(B) ......................................................................6

Fed. R. Evid. 702 .....................................................................................6

Fed. R. Evid. 703 .....................................................................................6

Fed. R. Evid. 1006 ...............................................................................5, 6

**OTHER AUTHORITIES**

Charles Alan Wright, et al., Federal Practice and Procedure § 2738 (3d ed. 2011) .......................5

U.S. Const., art. VI, cl. 2.........................................................................10

Irving H. Picard ("Trustee"), trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of the Trustee's motion for partial summary judgment ("Motion") under Rule 56 of the Federal Rules of Civil Procedure, to avoid and recover as fraudulent transfers the amounts transferred to the Two-Year Net Winner Defendants[1] (hereinafter "Defendants") by BLMIS for which such Defendants failed to provide value (*i.e.*, fictitious profits) sought in Count One of the Trustee's Amended Complaint.

## PRELIMINARY STATEMENT

This Court held that "[a]s for transfers made by Madoff Securities to its customers in excess of the customers' principal—that is, the customers' profits—these were in excess of the 'extent' to which the customers gave value, and hence, if adequately proven, may be recovered regardless of the customers' good faith." *Picard v. Katz*, No. 11 Civ. 3605, 2011 WL 4448638, at *3 (S.D.N.Y. Sept. 27, 2011). The Trustee has proven every element of his claim for fictitious profits under section 548(a)(1)(A) of the Bankruptcy Code, and has further proven that the Defendants cannot successfully maintain their affirmative defense under section 548(c) of the Bankruptcy Code because Defendants did not give value for the fictitious profits they received. Indeed, Defendants offer no admissible evidence to dispute any of the facts asserted by the Trustee.

The Trustee has proven, and the Defendants concede, that Defendants received more than $83 million in transfers within two years of the Filing Date (the "Two-Year Period") from

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

1

BLMIS, and that BLMIS made such transfers with actual intent to hinder, delay or defraud its creditors.  The Trustee also has proven, and the Defendants concede, that these transfers were in excess of any principal that the Defendants deposited into their relevant BLMIS accounts. Accordingly, the Trustee has established as a matter of law that the Defendants provided no value in exchange for the Two-Year Period transfers and respectfully requests that this Court grant the Trustee's motion for partial summary judgment; hold that such transfers are avoided; and direct the Defendants to return the transfers, or the value thereof, to the Trustee for distribution to customers holding allowed claims in accordance with SIPA's priority scheme.

Rather than attempting to show that they took their net profits for value, a feat that this court noted would be difficult, *Katz*, 2011 WL 4448638, at *4 n.6, the Defendants merely restate arguments they made before: that their monthly customer statements created "legally binding obligations of Madoff Securities, so that any payments of those profits [as reflected on those statements] to the customers were simply discharges of antecedent debts." *Id.* at *4.  This Court, like the Bankruptcy Court and the United States Court of Appeals for the Second Circuit before it in the net equity context, already considered and expressly rejected this argument. *Id.*

As this Court recognized, transfers by a fraudster to customers of his Ponzi scheme in excess of the customers' principal are not taken for value and may be avoided and recovered regardless of good faith. *Id.* at *3.  Only in very limited circumstances not applicable here have transferees been found to have provided "value" to a fraudster for purposes of section 548(c) of the Bankruptcy Code to defeat a trustee's avoidance claim.  For example, some courts have found "value" where vendors provided legitimate services of recognized commercial value, or where good faith lenders loaned funds to the fraudster pursuant to a contract with a specified, guaranteed and commercially reasonable rate of return.  But none of those situations apply to

investors like Defendants, whose only legitimate expectation was that they could receive some undetermined profit or loss on their investment.

The fact that this particular Ponzi scheme was run by a "broker-dealer" is of no help to Defendants, because customer claims under SIPA are limited to the customers' net equity. And the Second Circuit held that the "net equity" of BLMIS's customers is the amount of cash they deposited into BLMIS less any cash withdrawals. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 238 (2d Cir. 2011) (the "Net Equity Ruling"). Notably, the Defendants and the other Sterling Defendants opposed the Trustee's net equity determination by making the same arguments before the Bankruptcy Court and the Second Circuit that the Defendants reargue here:[2] namely, that the BLMIS customer statements created an enforceable obligation to customers for the full amount reflected on those statements based on Article 8 of the NY Uniform Commercial Code ("NYUCC") as well as SIPA.

But as the Sterling Defendants conceded in those briefings, Article 8 of the NYUCC is preempted by SIPA to the extent the two statutes would provide different relief for customer claims against its broker-dealer. Sterling Equities Net Equity Reply Br. at 5. Under SIPA, customer claims receive first priority, and the Trustee is charged with avoiding transfers— expressly including transfers to customers—to recover funds to satisfy those customer claims.

The Second Circuit held that the Defendants' account statements do not give them a customer claim for fictitious profits. The Defendants do not (and cannot) articulate any reason why the very same fictitious statements in the very same case should be treated any differently in

---

[2] Brief for Appellants Sterling Equities Assoc., et al., at 20, *In re Bernard L. Madoff Inv. Sec. LLC*¸ No. 10-2378-bk(L) (2d Cir.), ECF No. 185; Reply Brief for Appellants Sterling Equities Assoc., et al. ("Sterling Equities Net Equity Reply Br.") at 2-9, *In re Bernard L. Madoff Inv. Sec. LLC*¸ No. 10-2378-bk(L) (2d Cir.), ECF No. 338; *see also* Petition for a Writ of Certiorari, *Sterling Equities Assoc., et al. v. Picard*, No. 11-968 (filed Feb. 3, 2012).

the avoidance context.  There is thus no basis for Defendants' assertion that the facts here create some exception to the general rule that "value" is never given for the receipt of fictitious profits in a Ponzi scheme.  Whether viewed as their "net equity" under SIPA or as the amount of their principal investment under the Bankruptcy Code, the net cash deposited into BLMIS at best represents the outer limit of "value" provided by the Defendants, even assuming they had taken the transfers in good faith.  The transfers in excess of their principal of more than $83 million are *per se* fraudulent transfers that Defendants have no legal basis to retain, and therefore must be avoided and returned to the Trustee.[3]

## ARGUMENT

### I.   DEFENDANTS HAVE FAILED TO OFFER ADMISSIBLE EVIDENCE TO DISPUTE *ANY* OF THE FACTS OFFERED BY THE TRUSTEE AND HAVE DEMONSTRATED NO GENUINE ISSUE FOR TRIAL

When a moving party comes forward with evidence demonstrating his right to summary judgment, Federal Rule of Civil Procedure 56 requires the nonmoving party to  "produce[] specific facts showing that there is a genuine issue for trial."  *See, e.g., Rasulo v. Hartnett*, No. 08 Civ. 9056 (FPS), 2011 WL 5604065, at *3 (S.D.N.Y. Nov. 16, 2011); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  It is thus the Defendants' burden to put forth "specific, probative evidence showing there is a genuine dispute of fact for trial" regarding the Trustee's right to avoid and recover the transfers of fictitious profits made by BLMIS within the Two-Year Period.  *Celotex,* 477 U.S. at 324.  No genuine issue of fact can exist if "the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact" to rule in the nonmoving party's favor at trial.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 254

---

[3] As this Court is aware, the Trustee also alleges and will prove that Defendants cannot satisfy the good faith element of section 548(c) of the Bankruptcy Code.  However, the element is not necessary to this Motion.

(1986); *see also Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir. 1999) (internal citation and

quotations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986).

The Defendants complain that the specific factual findings contained in the expert reports

relied on by the Trustee constitute "conclusions" or are otherwise "immaterial," "improper," or

"irrelevant."  Opp. Br. at 2 n.1; Defendants' Response to Trustee's Statement of Undisputed

Material Facts Pursuant to Local Rule 56.1 ("56.1 Response") at ¶¶ 3-4, 6-9, 11, 13-14, 19-30,

32, 33-36, 38-44, 46-47, 49, 51-62.

But Defendants do not dispute the findings themselves or produce any evidence to

contradict those findings.  The analyses, compilations, and opinions prepared by the Trustee's

experts relate to issues uniquely relevant to evidence and proof of a Ponzi scheme.  *See* Charles

Alan Wright, et al., Federal Practice and Procedure § 2738 (3d ed. 2011) ("[I]f the only issue is

one of the kind on which expert testimony must be presented, and nothing is presented to

challenge the affidavit of the expert, summary judgment may be proper.").

It is entirely appropriate to rely, whether in moving for summary judgment or at trial, on

compilations of data that are too voluminous to bring before the trier-of-fact, such as the millions

of pages and/or bytes of electronic data made available to the experts and the Defendants here.

Fed. R. Evid. 1006; *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In

re Bayou Group LLC),* 439 B.R. 284, 331-37 (S.D.N.Y. 2010) ("*Bayou IV*") (noting that expert

committed no mistakes or errors in analyzing the data, considered all available documents, and

fully explained his findings); *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.

(In re Bayou Group, LLC)*, 396 B.R. 810, 841 (Bankr. S.D.N.Y. 2008) ("*Bayou III*") (holding

that admissibility of expert report, which examined "all available source documents, including

the books and records of all of the [debtors] and all third-party source documents including bank account and brokerage accounts records for the [debtor,]" was unquestionably appropriate and proper under Rule 1006[.]").  This case, involving a massive fraud extending over decades with voluminous documents and data, is precisely the kind of case in which expert testimony is appropriate.

Similarly, expert testimony presented in the form of a report is admissible "whether proffered at trial or in connection with a motion for summary judgment."  *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); Fed. R. Evid. 702, 703. An expert's opinions grounded in fact, as opposed to speculation or conjecture, cannot be defeated by the non-movant on summary judgment without evidence or empirical studies.  *Major League Baseball Props., Inc.*, 542 F.3d at 311 (rejecting appellant's argument that a triable factual dispute existed when appellant's expert "conclusorily disagreed" with opposing expert without "evidentiary citation").  Here, Defendants fail to dispute the analyses, methods, findings, or facts underlying the conclusions reached by any expert offered by the Trustee in this Motion. To the contrary, Defendants themselves rely on the Initial Expert Report of Bruce G. Dubinsky ("Dubinsky Report") in their own motion for summary judgment.  Mem. of Law in Support of Defendants' Mot. for Summary Judgment ("Defs' Mot. for Summary Judgment") at 28-31, ECF No. 86.

Because Defendants have proffered no admissible evidence that would contravene either the facts contained in the expert reports or the opinions based on those facts, there is no genuine issue of material fact for trial.  *See* Fed. R. Civ. P. 56(c)(1)(B); Local Civil Rule 56.1(c).

II.   **DEFENDANTS EXPRESSLY CONCEDE EVERY MATERIAL FACT NECESSARY TO  THE TRUSTEE'S CLAIM FOR AVOIDANCE AND RECOVERY OF FICTITIOUS PROFITS TRANSFERS**

A.   **Defendants concede that every transfer made to them by BLMIS was made with actual intent to hinder, delay or defraud its creditors.**

Defendants admit that Madoff, through BLMIS's investment advisory business, engaged in a fraudulent scheme in which he purported to execute, but did not actually execute, securities transactions on behalf of BLMIS's investment advisory customers.  *See* 56.1 Response ¶ 15. They admit that the account statements they received from BLMIS purported to reflect transactions and investment returns, but that BLMIS did not execute the transactions reflected on each Defendants' BLMIS account statements.  *Id.* ¶¶ 17, 18, 48.  They concede that Madoff pleaded guilty to operating a massive Ponzi scheme through BLMIS's investment advisory business, and that five other BLMIS employees pleaded guilty to assisting in this massive fraud. *Id.* ¶¶ 9-12.  The Defendants fail to refute any of the evidence proffered by the Trustee's forensic accounting and fraud experts, or to counter any of the Trustee's factual statements with their own evidence.  They do not dispute, but rather themselves rely on, the many examples demonstrating BLMIS's fraud described in the Dubinsky Report.  *Id.* ¶¶ 23-31, 34.

While Defendants "dispute that labeling that fraud a 'Ponzi scheme' has any legal relevance," (56.1 Response ¶ 15), they do not dispute any of the facts demonstrating that Madoff's fraud was, in fact, a Ponzi scheme.  Because transfers made to investors in a Ponzi scheme are, by definition, made in furtherance of that Ponzi scheme, they are presumptively made with actual intent to defraud.  *See, e.g., Katz*, 2011 WL 4448638, at *3; *see also Bayou IV*, 439 B.R. at 294 ("In a Ponzi scheme scenario, a presumption of actual intent to 'hinder, delay, and defraud' exists."); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 13 (S.D.N.Y. 2007) ("*Gredd V*"); *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan*

*Inv. Fund Ltd.)*, 288 B.R. 52, 55 (S.D.N.Y. 2002).  Summary judgment on such fraudulent

transfers is appropriate.  *McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC)*, 439

B.R. 47, 68 (Bankr. S.D.N.Y. 2010); *Bayou III*, 396 B.R. at 842.

      **B.**      **Defendants concede receipt of every relevant transfer made by BLMIS identified by the Trustee.**

The Defendants do not dispute and specifically acknowledge that each identified

accountholder received each relevant transfer from BLMIS within the Two-Year Period, as

identified by the Trustee in his Motion.  Opp. Br. at 2, n.1; 56.1 Response ¶ 62; Greenblatt Decl.,

Ex. 2, Column 4.

      **C.**      **Defendants concede that the transfers alleged by the Trustee were in excess of principal and thus, as this Court has held, are in excess of the extent to which they gave value.**

Defendants concede the accuracy of the Trustee's calculation of life-to-date principal

investment into each relevant BLMIS account as of December 11, 2008.  Opp. Br. at 2, n.1; 56.1

Response ¶ 62; Greenblatt Decl., Ex. 2, Column 5.  They further concede the total amounts

withdrawn from each of the relevant accounts within the Two-Year Period alleged by the

Trustee, as well as the calculation of total transfers from each account that was in excess of

principal within the Two-Year Period.  Opp. Br. at 2, n.1; 56.1 Response ¶ 62; Greenblatt Decl.,

Ex. 2, Column 11.

The Defendants therefore concede that the $83,309,162 in transfers sought to be avoided

by the Trustee in this Motion was "in excess of the [defendants'] principal—that is, the

customers' profits" and therefore was "in excess of the 'extent' to which the customers gave

value."  *Katz*, 2011 WL 4448638, at *3.

**III.     EVEN IF REPACKAGED, DEFENDANTS' LEGAL ARGUMENTS ARE STILL WRONG.**

This Court's recognition that transfers of fictitious profits were not given for "value" is consistent with every other court to consider the issue.  *Katz*, 2011 WL 4448638, at *4; *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) ("*Bayou I*") ("[V]irtually every court to address the question has held unflinchingly that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.") (internal citation and quotations omitted); *see also Sender v. Buchanan (In re Hedged-Inv. Assoc., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996) (same); *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 595 n.6 (9th Cir. 1991) (same); *Scholes v. Lehmann*, 56 F.3d 750, 756 (7th Cir. 1995) (same), *Terry v. June*, 432 F. Supp. 2d 635, 642-43 (W.D. Va. 2006) (same); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 857 (D. Utah 1987) (same).

All of the arguments raised by Defendants with respect to Count One of the Amended Complaint have been rejected by this Court and, in the context of the net equity briefing, by the Bankruptcy Court and the Second Circuit.  As discussed below, there is no basis for Defendants' argument that fictitious profits from the BLMIS Ponzi scheme can be for "value."

**A.     As the Court already held, *Sharp* is in no way controlling.**

Defendants again pin their hopes on *In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005); Opp. Br. at 12-13.  But this Court has already stated "[w]hether . . . defendants can avail themselves of the affirmative defense of taking for value and in good faith under section 548(c) is in no way controlled by *Sharp*."  *Katz,* 2011 WL 4448638, at *4; *see also Gredd V*, 397 B.R. at 11 ("At most, [*Sharp*] simply means that courts must be sure that the transfers sought to be avoided are related to the [Ponzi] scheme."); *Bayou I*, 362 B.R. at 638 ("Unlike the lawful

repayment of loan indebtedness to State Street, the redemption payments in this case were themselves inherently fraudulent, and Bayou's only possible intent in making the redemption payments was to hinder, delay and defraud creditors.").

Neither the facts nor the holdings in *Sharp* or *Boston Trading Group v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987), are applicable here. As this Court noted, the holding in *Sharp* on which Defendants rely applied to constructive, not actually fraudulent transfers; the attempts to avoid actually fraudulent transfers failed for the independent reason that Sharp inadequately allege[d] fraud.'" *Katz*, 2011 WL 4448638, at *4 (quoting *Sharp*, 403 F.3d at 56). *Boston Trading Group* involved a "good faith" jury instruction in the context of a constructive fraudulent conveyance action under Massachusetts law, 835 F.2d at 1506-07, 1511-12, and is therefore is equally inapposite.

### B.      Article 8 of the NYUCC is not relevant.

Defendants have argued repeatedly that under Article 8 of the NYUCC, they are legally entitled to the value of the securities reflected on their customer statements, and therefore any transfer made pursuant to those statements was made for "value."

The NYUCC is not applicable here, however, because BLMIS is in liquidation under SIPA. As Defendants conceded before the Second Circuit, "there is no dispute" that Article 8 is preempted by SIPA to the extent it would provide different relief on customer claims. Sterling Equities Net Equity Reply Br. at 5; NY UCC 8-503 cmt.1 ("[A]pplicable insolvency law governs how the various parties having claims against the firm are treated.").

Congress has precisely and unequivocally determined that any "customer property" is to be distributed in accordance with SIPA § 78fff-2(c)(1). Any state law that would resolve the question differently is of no effect in a SIPA proceeding. *See* U.S. Const., art. VI, cl. 2; *First Fed. Sav. & Loan Ass'n of Lincoln v. Bevill, Bresler & Schulman, Inc. (In re Bevill, Bresler &*

*Schulman, Inc.)*, 59 B.R. 353, 378 (D.N.J. 1986), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986)

(holding that any state law that is inconsistent with SIPA is preempted under the Supremacy

Clause); *see also Murray v. McGraw (In re Bell & Beckwith)*, 821 F.2d 333, 337-38 (6th Cir.

1987) (holding that Ohio's version of the U.C.C. was preempted by federal bankruptcy and

securities laws); *Amer. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269, 272 (1946) ("[F]ederal

bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors.");

*SEC v. Albert & McGuire Securities Co., Inc.*, 378 F.Supp. 906, 912 (E.D. Pa. 1974) (noting in

respect to a SIPA proceeding that "[I]t is much too late to argue that the provisions of the federal

Bankruptcy Act are subordinate to state laws with which they are in conflict.").

It is SIPA that governs the amount and priority of BLMIS's customer claims, not the

NYUCC, and to the extent the NYUCC or any other state law would lead to a result contrary to

the SIPA priority scheme, it is preempted.[4]  The Second Circuit has held that a customer's SIPA

claim is limited to his net cash investment, *i.e.,* his principal deposited with BLMIS.  *In re*

*Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238-39, 241; *see also* 15 U.S.C. § 78fff-2(c)(3).

To allow Defendants to claim "value" for satisfaction of a customer claim that SIPA does not

recognize would directly contradict the SIPA priority scheme by vaulting potential general estate

claims over customer claims that SIPA was designed to protect, turning the statute on its head.

Opp. Br. at 3-4.

---

[4] Defendants cite no cases suggesting that the result would be different under the NYUCC or any
other state law.  The one case they rely on, *Visconsi v. Lehman Bros,* 244 F. App'x 708 (6th Cir.
2007, involved an arbitration award against a solvent entity, which is inapposite.  Even in that
case, moreover, the fictitious statements did not control.

**C.      Whether a transferee is a creditor, customer, investor, or equity holder is not relevant to whether the transferee gave value for a transfer.**

No good faith BLMIS investor has a customer claim under SIPA for anything more than his principal investment with BLMIS.  Defendants nonetheless argue *ipse dixit* that they provided value to BLMIS for every transfer they received, including transfers of fictitious profits because, they say, they are "creditors," and not "equity investors."  Regardless of what label is applied, whether or not a transferee can call himself a creditor does not answer the relevant question of whether the transferee gave value for a transfer that was made with fraudulent intent.

A "creditor" is simply someone who has a claim against the debtor.  11  U.S.C. § 101(10)(A).  And a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11  U.S.C.  § 101(5)(A).  The mere existence of a claim says nothing about the validity, nature or value of that claim, much less whether the purported satisfaction of that claim constituted value for a fraudulent transfer.  Thus, the mere status of "creditor" is not dispositive of whether a particular creditor can meet its burden of establishing value for its receipt of a fraudulent transfer, and it is routine practice in Ponzi and non-Ponzi bankruptcy cases alike for a trustee or a debtor-in-possession to seek to avoid and recover fraudulent transfers from creditors.[5]

---

[5] *See, e.g., Gowan v. The Patriot Grp.* (*In re Dreier LLP*), 452 B.R. 391, 423-27 (Bankr. S.D.N.Y. 2011) (bankruptcy trustee brought adversary proceedings to avoid fraudulent transfers to hedge funds, related feeder fund, and investment manager arising out of sale of phony commercial paper); *SEC v. Haligiannis*, 608 F. Supp. 2d 444, 450-51 (S.D.N.Y. 2009) (holding that the granting of a security interest to a creditor-mortgagee was transfer made with intent to hinder, delay, or defraud the debtor's creditors); *Adelphia Commc'ns Corp. v. Bank of Am., N.A.* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 34-35 (S.D.N.Y. 2007) (upholding creditors' and equity's committees adversary proceeding for avoidance and recovery of fraudulent transfers, on behalf of debtors' estate, against debtors' bank lenders and investment banks).

Conversely, it is possible for an investor in or with a Ponzi scheme to demonstrate value up to the amount of his principal investment.  *See, e.g., Perkins v. Haines*, 661 F.3d 623, 626-27 (11th Cir. 2011) (explaining that even a good faith equity holder of a Ponzi scheme may have a fraud or restitution claim for the principal invested, but no such claim for profits).[6]  And whether investors invested in (i.e., equity investors) or with (i.e., customers like the Defendants) a Ponzi scheme, they cannot give value for fictitious profits. *See, e.g., Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *In re Dreier LLP*, 452 B.R. at 440 n.44; *In re Hedged-Inv. Assoc., Inc.*, 84 F.3d at 1290; *Scholes,* 56 F.3d at 757; *In re United Energy Corp.*, 944 F.2d at 595 n.6; *Terry*, 432 F. Supp. 2d at 642; *Bayou I*, 362 B.R. at 636; *Soule v. Alliot* (*In re Tiger Petroleum Co.*), 319 B.R. 225, 239 (Bankr. N.D. Okla. 2004); *Fisher v. Sellis* (*In re Lake States Commodities, Inc.*), 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000).  Thus, the Defendants' distinction between creditors and equity holders is irrelevant.

Ultimately, in determining value, a court looks to the specific transfer at issue and the sufficiency of the value provided by the transferee to the transferor.  *Perkins*, 661 F.3d at 628. And in a Ponzi scheme, "[a]ny transfers over and above the amount of the principal—*i.e.,* for fictitious profits—are not made for 'value' . . . regardless of whether good faith investors have an equity interest in, or some other form of claim against, the legal entity constituting the instrument of the fraud."  *Id.* at 628-29.

While the Trustee's application of certain provisions of the Bankruptcy Code require creditor status—*see, e.g.,* 11 U.S.C. § 547(b)(1) (preferential transfers may be avoided only if the transfers were made "to or for the benefit of *a creditor*") (emphasis added)—Section 548(a)(1)

---

[6] The two cases relied on by the Defendants, *CFTC v. Weintraub*, 471 U.S. 343, 354-55 (1985) and *In re DBSD N. America, Inc.*, 634 F.3d 79, 95 (2d Cir. 2011), are inapplicable because they merely stand for the unremarkable proposition that shareholder interests are subordinated to creditor interests in bankruptcy.

contains no such limitation.  Rather, it authorizes a trustee to "avoid any transfer . . . or any obligation" made with actual fraudulent intent and does not limit in any way the type of person or entity who received such transfer or from whom such transfer can be avoided.  11 U.S.C. § 548(a)(1).

None of the cases upon which Defendants rely supports their proposition that whether a transferee provided value for a transfer turns on the transferee's general label as a "creditor" or an "equity" interest holder.  In *In re Bayou*, for example, the court flatly rejected a distinction between "equity holders" and "creditors" for purposes of standing.  *Bayou IV*, 439 B.R. at 298.[7] The *Bayou* court "distinguishes *creditor* claims" from investor claims (*see* Opp. Br. at 15) only to the extent it rejected the defendant's attempt to rely on a line of cases holding that good faith lenders who make set-term loans can be entitled to a commercially reasonable, contractually guaranteed rates of return from a fraudster.  *Bayou IV,* 439 B.R. at 337.[8]

Defendants cite to no case in which any court has, as Defendants ask this Court to do, shielded transfers of fictitious profits from recovery by a trustee.  Defendants here, like the defendants in many other Ponzi scheme cases, invested money with a fraudster in the hope of

---

[7] *ABF Capital Mgmt. v. Askin Capital Mgmt.*, No. 96 Civ. 2978, 1997 U.S. Dist. LEXIS 8195, at *8-9 (S.D.N.Y. June 11, 1997), also cited by defendants, does recognize such a distinction, but only in the context of determining whether an equity holder has standing to bring aiding and abetting claims.  The court determined that equity holders do not, for reasons unrelated to any issue here.  *Id.*

[8] Indeed, *In re Bayou* contradicts, rather than supports, the Defendants' argument.  In *In re Bayou*, as here, the fraudster distributed falsely inflated account statements and made payments of fictitious profits based on those false statements in order to further the fraud.  The District Court upheld the Bankruptcy Court's granting of partial summary judgment avoiding the fictitious profits, which, like the profits here, did not reflect "commercially reasonable, contractually guaranteed rates of return."  *Bayou IV*, 439 B.R. at 337 (explaining that "the fictitious profits [that defendants] received were not promised to them when they initially invested in the Bayou Funds, and cases in which parties invested on the basis of an explicit promise of a repayment greater than principal are thus not on point").

14

making a profit.  Defendants here, like the defendants in other many Ponzi scheme cases, neither bargained for nor were contractually promised a guaranteed gain or rate of return at the time they invested.  Defendants here, like the defendants in the other Ponzi scheme cases, provided no benefit to the estate in return for their receipt of fictitious profits from the fraudster.  *See, e.g., Scholes,* 56 F.3d at 757.  Defendants here, like the defendants in the other Ponzi scheme cases, therefore provided no "value" for these profits.

Finally, Defendants' claim that it is impossible to avoid fraudulent transfers to "non-complicit customers of a registered broker," Opp. Br. at 7, is directly contradicted by SIPA's express contemplation that a trustee may recover transfers that were "made to a customer or for his benefit" to the extent those transfers are void or voidable under Title 11 of the Bankruptcy Code, as well as by the Second Circuit in the Net Equity Ruling.  15 U.S.C. § 78fff-2(c)(3); *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 242 n.10 (recognizing that "the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud");  *see also In re Park South Sec. LLC*, 326 B.R. 505, 512-13 (Bankr. S.D.N.Y. 2005) (avoidance action against accountholders of brokerage firm who received more than their net equity); *SEC v. S. J. Salmon & Co.*, 1973 U.S. Dist. LEXIS 15606, at *30-34 (S.D.N.Y. Aug. 8, 1973) (avoidance of transactions made by a debtor to customers).

## IV.   DEFENDANTS HAVE NO BASIS TO ARGUE THAT THEY ARE EXEMPT FROM BLACK LETTER LAW REGARDING FICTITIOUS PROFITS FROM A PONZI SCHEME

### A.   Defendants have no legal right to their account statement balances under SIPA.

SIPA does not give the Defendants any legal right to the account balances reflected on their statements; rather, their SIPA claim is limited to the principal they invested in their

accounts.  The Second Circuit held that because BLMIS's account statements were wholly

fabricated, it would have been "legal error" for the Trustee to "discharge claims upon the false

premise that customers' securities positions are what the account statements purport them to be."

*In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 241 (internal citations omitted).  The Second

Circuit squarely rejected the Sterling Defendants' argument[9] that customers are entitled to their

statement balances because, among numerous reasons, the "profits recorded over time on the

customer statements were after-the-fact constructs that were based on stock movements that had

already taken place, were rigged to reflect a steady and upward trajectory in good times and bad,

and were arbitrarily and unequally distributed among customers."  *Id.* at 238.  As the Second

Circuit explained, "notwithstanding the BLMIS customer statements, there were no securities

purchased and there were no proceeds from the money entrusted to Madoff for the purpose of

making investments."  *Id.* at 240.  Therefore, any "[c]alculations based on made-up values of

fictional securities would be 'unworkable' and would create 'potential absurdities.'"  *Id.* at 241

(quoting *In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)).

Because the Second Circuit has held that the Defendants do not have a SIPA claim

against the customer fund based on their customer account statements, the Defendants can

identify no basis to argue that they have a legal entitlement to those amounts that somehow

constitutes "value."  In essence, under the Second Circuit's decision, the relative position of each

BLMIS customer account must be calculated based on "unmanipulated withdrawals and

---

[9] Defendants have made this argument numerous times before numerous courts.  *See* Brief for
Appellants Sterling Equities Assoc., et al., *In re Bernard L. Madoff Inv. Sec. LLC* at 10-13, No.
10-2378-bk(L) (2d Cir.); Reply Brief for Appellants Sterling Equities Assoc., et al., *In re
Bernard L. Madoff Inv. Sec. LLC* at 3,5, No. 10-2378-bk(L) (2d Cir.); Supplemental Mem. of
Law in Response to Supplemental Mem. of the Trustee and SIPC and in Further Support of
Sterling Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment at 1-2, 6,
19, ECF No. 37; Petition for a Writ of Certiorari, *Sterling Equities Assoc., et al. v. Picard*, No.
11-968 (filed Feb. 3, 2012).

deposits" over the life of the account.  *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238.

If an account has a positive cash balance, that accountholder is owed money by the estate; if an

account has a negative cash balance, the accountholder owes money to the estate.  Both the

recovery and distribution of customer property in this case are centered on the principle that the

Trustee cannot credit "impossible transactions."  *Id.* at 238.  The Trustee accordingly has applied

the Net Investment Method, both in the customer claims and litigation context, and in both

contexts he has examined the entire investment history to calculate the principal or profit that an

investor received.[10]  While this Court has determined that avoidance and recovery of transfers

that occurred beyond a certain time period is precluded, determining the quantum of fraudulent

transfers requires consideration of the entire transactional history.

While the Second Circuit noted that the Trustee's avoidance powers were not at issue on

appeal, it stated its view that "in the context of *this* Ponzi scheme—the Net Investment Method is

nonetheless more harmonious with provisions of the Bankruptcy Code that allow a trustee to

avoid transfers made with the intent to defraud, *see* 11 U.S.C. § 548(a)(1)(A), and 'avoid[s]

placing some claims unfairly ahead of others,' *In re Adler, Coleman Clearing Corp.*, 263 B.R.

406, 463 (Bankr. S.D.N.Y. 2001))."  *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 242

n.10 (emphasis in original).

---

[10] As discussed further in the Trustee's Memorandum of Law Supporting the Calculation of
Principal and Fictitious Profit under the Net Investment Method, (ECF No. 63), the Net
Investment Method is also consistent with the "netting" method used in other Ponzi scheme
cases. *See also In re Lake States Commodities, Inc.*, 253 B.R. at 871 ("To determine the amount
recoverable from an investor, payments received from the perpetrators of a scheme are 'netted'
against the amounts invested.") (citation omitted); *In re Moore*, 39 B.R. 571, 573 (Bankr. M.D.
Fla. 1984) (netting account activity beyond statutory avoidance period and holding investor
liable for transfers of fictitious profits during avoidance period).

**B.      At a minimum, SIPA provides no special shield for fictitious profits received from this SIPA Ponzi scheme.**

The Net Equity Ruling precludes a BLMIS investor from arguing that SIPA provides any customer claim for fictitious profits from this Ponzi scheme.  To the extent that Defendants nonetheless could assert some other claim against the general estate, they cannot, as a matter of law, assert a setoff of that "debt" against the Trustee's fraudulent transfer claims.  *See Hasset v. Far West Fed. Sav. and Loan (In re OPM Leasing Servs., Inc.)*, 40 B.R. 390, 402 (Bankr. S.D.N.Y.), *aff'd*, 44 B.R. 1023 (S.D.N.Y. 1984); *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866, at *56-57 (S.D.N.Y. Aug. 30, 2000).  "Where, as here, a defendant with a pre-petition claim against the debtor seeks to set that claim off against liability to the Trustee as a transferee of a fraudulent conveyance, mutuality is lacking because liability of such a defendant to the Trustee as a transferee of a fraudulent conveyance does not constitute a pre-petition debt owed to the debtor; rather it is a debt owed to the Trustee." *Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010).

There is no basis in bankruptcy law for the Defendants to claim protection for their receipt of fictitious profits; the Defendants here argue that they have *more* rights to fictitious profits than other Ponzi scheme investors because BLMIS was purporting to trade securities. But given that a BLMIS customer's claim under SIPA is limited to that customer's principal, Defendants lack any basis to do so.  To the contrary, the primary purpose of SIPA is to protect customers and their allowed customer claims.  15 U.S.C. § 78fff-2(c)(1).  Nothing in SIPA, therefore, supports the notion that Defendants here should escape the rule that has been universally applied to other Ponzi scheme investors:  no "value" can be given for transfers of fictitious profits, and such transfers are avoidable as a matter of law regardless of the good faith of the transferee.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count One of the Trustee's Amended Complaint and enter an order avoiding the transfers of $83,309,162 in fictitious profits made by BLMIS to the Two-Year Net Winner Defendants within the Two-Year Period, and directing the Two-Year Net Winner Defendants to return such transfers or the value thereof to the Trustee.

Dated: New York, New York
      February 16, 2012

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:/s/  *David J. Sheehan*
    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    David J. Sheehan
    Email: dsheehan@bakerlaw.com

    *Attorneys for Irving H. Picard, Esq. Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC And Bernard L. Madoff*