UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
IRVING H. PICARD, :
:
                Plaintiff, :
:  11-CV-03605 (JSR) (HBP)
      - against - :
:
SAUL B. KATZ, et al., :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE EXPERT REPORTS AND TESTIMONY OF STEVE POMERANTZ AND HARRISON J. GOLDIN**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 1

THE TRUSTEE'S EXPERTS SHOULD BE EXCLUDED
UNDER FEDERAL RULE OF EVIDENCE 702 ................................................................ 1

A.   Dr. Pomerantz's Testimony Should Be Excluded ....................................... 2

B.   Mr. Goldin's Testimony Should Be Excluded ............................................. 7

CONCLUSION ....................................................................................................................... 9

## TABLE OF AUTHORITIES

CASES

PAGE

*Coquina Invs. v. Rothstein*, No. 10-60786,
   2011 U.S. Dist. LEXIS 120267 (S.D. Fla. Oct. 18, 2011) ............................................ 5

*Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y. 2003) .......... 1-2

*FDIC v. Refco Grp., Ltd.*, 184 F.R.D. 623 (D. Colo. 1999) ................................................ 5

*Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) .................................................................. 6

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011) ................................ 4, 5

*Highland Capital Mgmt. L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008) ............ 5

*In re Blech Sec. Litig.*, No. 94 Civ. 7696,
   2003 U.S. Dist. LEXIS 4650 (S.D.N.Y. Mar. 26, 2003) ............................................... 5

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................... 1

*Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-595,
   2009 U.S. Dist. LEXIS 108918 (M.D. Fla. Nov. 5, 2009) ............................................ 5

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) .................................................. 4

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010) ........................................................................... 6

*Picard v. Katz*, No. 11 Civ. 3605,
   2011 U.S. Dist. LEXIS 109595 (S.D.N.Y. Sept. 27, 2011) .......................................... 7

*SEC v. Badian*, No. 06 Civ. 2621,
   2010 U.S. Dist. LEXIS 123990 (S.D.N.Y. Nov. 19, 2010) .......................................... 5

*SEC v. Cooper*, 402 F. Supp. 516 (S.D.N.Y. 1975) ............................................................ 6

*SEC v. Lorin*, 877 F. Supp. 192 (S.D.N.Y. 1995),
   *aff'd in part and vacated in part*, 76 F.3d 458 (2d Cir. 1996) ..................................... 6

*SEC v. U.S. Envtl., Inc.*, No. 94 Civ. 6608,
   2002 U.S. Dist. LEXIS 19701 (S.D.N.Y. Oct. 16, 2002) ............................................. 5

*Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir. 1986) ..................................... 5

*Smith v. First Union Nat'l Bank*, No. 00-4485-CIV,
   2002 U.S. Dist. LEXIS 17758 (S.D. Fla. Aug. 23, 2002) .............................................. 5

*United States v. Fauls*, 65 F.3d 592 (7th Cir. 1995) ............................................................. 6

*Vernazza v. SEC*, 327 F.3d 851 (9th Cir. 2003) ................................................................... 5

## STATUTES & RULES

Fed. R. Evid. 403 ................................................................................................................. 4

Fed. R. Evid. 702 ................................................................................................................. 1

Defendants respectfully submit this reply memorandum of law in further support of their motion under Federal Rule of Evidence 702 to strike the reports and testimony of Steve Pomerantz and Harrison J. Goldin.

## PRELIMINARY STATEMENT

The Trustee has failed to respond to the arguments in Defendants' motion, choosing instead to address points Defendants did not raise. Defendants did *not* argue that Dr. Pomerantz's calculations were methodologically flawed, or that Mr. Goldin lacks sufficient practical experience to serve as an expert in an ERISA case alleging imprudent management of retirement plan assets. Nor did Defendants assert that experts may not testify in support of claims requiring proof of scienter, or that a litigant's state of mind may not be established by circumstantial evidence. Defendants move to exclude, instead, because none of Dr. Pomerantz's or Mr. Goldin's testimony is relevant to this case. It will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

## ARGUMENT

### THE TRUSTEE'S EXPERTS SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 702

The Rule 702(a) helpfulness requirement goes beyond the relevance requirement of Rule 401 and mandates that expert testimony, to be admissible, must "have a valid connection to the pertinent inquiry" for the trier of fact. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (internal quotation marks omitted). Expert opinions based on "assumptions that represent a complete break with the evidence in the

record . . . should be excluded." *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 330 (S.D.N.Y. 2003) (internal quotation marks omitted).

### A.  Dr. Pomerantz's Testimony Should Be Excluded

Dr. Pomerantz's testimony is inadmissible under Rule 702(a) because its purported relevance depends on a "complete break" with both the record evidence and the law.  Notwithstanding the Trustee's continuing effort to frame this case as based on negligence or failure to do due diligence, the Court has clearly and definitively ruled that the issue for trial is instead willful blindness.  Dr. Pomerantz does not purport to offer any opinion regarding that standard either in his report or in his deposition testimony.  Instead, Dr. Pomerantz in his report offers two opinions: (1) that there were "red flags" and that "customs and practices" in what he terms the "investment management industry" would be to conduct "further due diligence," and (2) that such diligence might have shown that Madoff was "running a fraudulent investment advisory business."  (Initial Expert Report of Dr. Steve Pomerantz ("Pomerantz Report") at 15-16 (Newman Decl., Ex. B).[1])  This is so even though Dr. Pomerantz "never concludes that the Defendants *would* have discovered Madoff's fraud.  Rather, Pomerantz opines that a quantitative analysis would have further confirmed the Defendants' investment accounts with BLMIS contained indicia of fraud."  (Tr. Pomerantz Mem. at 7 n.10 (emphasis added).[2])  Those

---

[1] References to "Newman Decl." and its attached exhibits are to the Declaration of David C. Newman, dated January 26, 2012 and filed in support of Defendants' Motion to Strike the Expert Reports and Testimony of Steve Pomerantz and Harrison J. Goldin (doc. no. 105).

[2] References to "Tr. Pomerantz Mem." are to the Trustee's Memorandum of Law in Opposition to the Defendants' Motion to Strike the Expert Reports and Testimony of Dr. Steve Pomerantz, dated February 9, 2012 (doc. no. 113).

are the only opinions Dr. Pomerantz offers, and the rest of his report purports only to be support for them. The issue on this motion is whether either opinion is relevant or helpful.

Defendants were individuals, real estate partnerships, a baseball team, and a collection of relatives and friends. None was employed in the "investment management industry." The Trustee in his opposition fails to put forth any argument supporting their inclusion in the "industry," instead simply assuming the point. He repeatedly refers to Defendants as "similarly-situated." (Tr. Pomerantz Mem. at 5-6.) "Similarly-situated" to whom, exactly? Dr. Pomerantz testified that he made no independent investigation into the knowledge or experience of the Defendants and could not say what level of sophistication, if any, they actually possessed. (Deposition Transcript of Dr. Steve Pomerantz ("Pomerantz Tr."), Jan. 8, 2012, 119:6-136:9 (Supplemental Declaration of David C. Newman in Support of Motion to Strike ("Newman Supp. Decl."), dated February 16, 2012, Ex. G).) He was unable to testify as to even the most basic information about Defendants.

Finally, although Dr. Pomerantz broadly asserts in his report that all wealthy people are sophisticated investors and jumps from that rather questionable conclusion to the startling assumption that they therefore "behave like institutional investors" (Pomerantz Report ¶ 26 (Newman Decl., Ex. B)), he subsequently disavowed that leap during his deposition. (Pomerantz Tr. 136:18-141:9 (Newman Supp. Decl., Ex. G).) It is on that tenuous basis that the Trustee asserts that Dr. Pomerantz's opinion about investment management industry customs and practices is relevant here. To the contrary,

Defendants submit that there is no basis for admission of such testimony, and that it would not only not be helpful, but it would be potentially confusing and prejudicial.

In addition, Dr. Pomerantz's testimony is irrelevant because it addresses only a negligence standard, which does not apply given this Court's rulings. Failure to follow industry practice is often cited in negligence and recklessness actions, based as they are on departures from an *objective* standard. The issue in such cases is not what a defendant actually thought or believed, but what a reasonable person in such circumstances should or should not have done. The willful blindness test described by the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), is *subjective*—whether Defendants actually believed there was a high probability of fraud and then took some *deliberate* action to avoid learning the truth. Whether they followed purported "customs and practices," even if such "customs and practices" were applicable to them, is not the issue. Such evidence would therefore only serve to confuse the jurors and prejudice Defendants by making it appear that the issue is not what Defendants actually knew and believed, but what Dr. Pomerantz says they *should* have done if they followed "industry" practice. The testimony should be excluded. *See* Fed. R. Evid. 403; *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (noting "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations").

The Trustee asserts that expert testimony about "industry standards" may be helpful to a jury in a case alleging scienter because state of mind sometimes may be

inferred from a party's "extreme departure" from industry standards.[3] (*E.g.*, Tr. Pomerantz Mem. at 6.) But that is only true if the party sought to be charged was indeed bound by these "industry standards." The cases cited by the Trustee obviously do not involve expert testimony about the standards of an irrelevant industry[4]—and many do not address the relevance of testimony about industry standards at all.[5]

---

[3] Courts typically make this observation in the context of *recklessness*, which is not sufficient to demonstrate willful blindness. *See Global-Tech*, 131 S. Ct. at 2070.

[4] *See Vernazza v. SEC*, 327 F.3d 851, 861-62 (9th Cir. 2003) (affirming the *exclusion* of expert testimony); *Coquina Invs. v. Rothstein*, No. 10-60786, 2011 U.S. Dist. LEXIS 120267, at *11-12 (S.D. Fla. Oct. 18, 2011) (expert testimony about banking regulations and practice admissible in fraud case against bank); *SEC v. Badian*, No. 06 Civ. 2621, 2010 U.S. Dist. LEXIS 123990, at *8-9 (S.D.N.Y. Nov. 19, 2010) (dismissing SEC's allegation that "red flags" demonstrated inadequate supervision in violation of NASD rule, due to lack of expert testimony); *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-595, 2009 U.S. Dist. LEXIS 108918, at *27-29 (M.D. Fla. Nov. 5, 2009) (expert testimony about ordinary and reasonable insurance claims handling practices admissible in case against insurance company for bad faith handling of insurance claim); *Highland Capital Mgmt. L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008) (expert testimony about "securities industry" "custom and practice" admissible in case alleging breach of contract to sell promissory notes); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2003 U.S. Dist. LEXIS 4650, at *67 (S.D.N.Y. Mar. 26, 2003) (expert testimony about "red flags" for brokers admissible in market manipulation case against brokers); *SEC v. U.S. Envtl., Inc.*, No. 94 Civ. 6608, 2002 U.S. Dist. LEXIS 19701, at *8-10 (S.D.N.Y. Oct. 16, 2002) (expert opinion that trading activity was irregular and would have raised flags for experienced traders admissible in securities manipulation case against professional market-makers); *Smith v. First Union Nat'l Bank*, No. 00-4485-CIV, 2002 U.S. Dist. LEXIS 17758, at *3-4 (S.D. Fla. Aug. 23, 2002) (expert testimony on atypical and suspicious banking activities admissible in aiding-and-abetting fiduciary breach case against bank); *FDIC v. Refco Grp., Ltd.*, 184 F.R.D. 623, 631 (D. Colo. 1999) (expert opinion about "conduct inconsistent with [broker-dealer] industry practices or regulatory requirements" admissible in fraud case against registered broker-dealer).

[5] According to the Trustee, *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir. 1986), held that it was "error to exclude [a] securities expert comparing defendants' actions to industry standards as evidence that the defendants intended to defraud or recklessly disregarded the securities laws." (Tr. Pomerantz Mem. at 6.) That case—which did not mention the "standards" of any "industry"—merely held that expert testimony about churning was admissible in support of plaintiffs' claims that defendant brokers were engaged in churning. *See* 799 F.2d at 530. The Trustee's remaining cases

5

The only case actually cited by the Trustee for its discussion of expert testimony about due diligence, *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*, 691 F. Supp. 2d 448 (S.D.N.Y. 2010), is instructive. (Tr. Pomerantz Mem. at 4.)  There, plaintiffs were *institutional investors* suing the former administrators of liquidated hedge funds in which they had invested.  *See* 691 F. Supp. 2d at 453.  At issue was whether they should have performed due diligence that would have "uncovered problems" with the hedge funds and enabled them to avoid suffering their losses.  *Id.* at 469.  The court held that if defendants proffered expert testimony on what reasonable due diligence *by institutional investors* would have revealed, plaintiffs could then present their own expert in rebuttal.  *See id.*

There are no institutional investor parties in this case, and the Trustee has no basis for imposing on Defendants the standards of the professional investment management industry.  The linchpin of Dr. Pomerantz's testimony—his stated view that the custom and practice of wealthy individuals is to monitor their personal investments in the same manner and with the same capability that professional money managers diligence their clients' investments (Pomerantz Report ¶ 26 (Newman Decl., Ex. B))—was renounced by Dr. Pomerantz himself during his deposition, when he conceded that wealthy individuals frequently lack experience in the securities markets and thus hire investment professionals to manage their investments.  (Pomerantz Tr. 147:24-149:16; 286:6-14

---

do not even involve challenges to the admissibility of expert testimony.  *See Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010) (expert testimony not mentioned); *United States v. Fauls*, 65 F.3d 592 (7th Cir. 1995) (affirming broker's conviction for securities fraud); *SEC v. Lorin*, 877 F. Supp. 192 (S.D.N.Y. 1995) (defendants found liable for securities manipulation after bench trial), *aff'd in part and vacated in part*, 76 F.3d 458 (2d Cir. 1996) (affirming exclusion of untimely designated expert); *SEC v. Cooper*, 402 F. Supp. 516 (S.D.N.Y. 1975) (expert testimony not mentioned).

(Newman Supp. Decl., Ex. G).)[6]  Indeed, that is precisely what Defendants did:  they hired Bernard L. Madoff.  Dr. Pomerantz's opinion about what a hedge fund manager's quantitative analysis might have disclosed is simply irrelevant.[7]

### B. Mr. Goldin's Testimony Should Be Excluded

The Trustee asserts that Mr. Goldin's testimony is "necessary to explain to the jury certain specialized tenets of the retirement plan industry."  (Tr. Goldin Mem. at 4.)[8]  But no retirement plan is a party to this action.  The Trustee does not assert any claim on behalf of any participant in a retirement plan, or pursuant to the laws governing retirement plans.  The "retirement plan industry," like the professional investment management industry, has nothing to do with this case.

In the opening pages of his opposition, the Trustee adopts the convention of referring to the "Sterling Fiduciaries," as if that term applied to a large number of the Defendants (*id.* at 2-3), although later in his argument he drops even that term and refers simply to "Defendants" collectively (*id.* at 4-5), presumably suggesting his arguments apply to all Defendants.  There is no dispute, however, that out of the dozens of

---

[6] Dr. Pomerantz's alternative argument—that wealthy people who hire a registered broker-dealer to manage their money "have an obligation to pursue competent counsel to interpret and analyze what is happening in their accounts" (Pomerantz Tr. 174:20-175:5 (Newman Supp. Decl., Ex. G))—is simply wrong as a matter of law.  *See Picard v. Katz*, No. 11 Civ. 3605, 2011 U.S. Dist. LEXIS 109595, at *22-23 (S.D.N.Y. Sept. 27, 2011).

[7] The Trustee also argues that Dr. Pomerantz's reports "source and rely upon extensive facts and data from the record" and asserts that Dr. Pomerantz disclosed a "detailed methodology."  (Tr. Pomerantz Mem. at 8.)  Whether that is true or false, it does not make his testimony relevant.

[8] References to "Tr. Goldin Mem." are to the Trustee's Memorandum of Law in Opposition to the Defendants' Motion to Strike the Expert Reports and Testimony of Harrison J. Goldin, dated February 9, 2012 (doc. no. 115).

Defendants, only two individuals, Arthur Friedman and Michael Katz, ever served as named fiduciaries for any ERISA plan that had as one of its options a managed BLMIS account. And that plan is not a party to this action. There is no basis whatsoever for characterizing any other Defendant as a "fiduciary." Even as to the two Defendants who arguably were fiduciaries, they are not alleged to have been acting as fiduciaries with respect to any account that is in issue in this action, either their own or anyone else's. There is no ERISA claim against them in this case.

As it is, this case will pose a sufficient challenge for jurors, who must absorb evidence regarding multiple Defendants and Madoff's complex Ponzi scheme machinations over a substantial period of time, without burdening them with irrelevant testimony about what is expected of ERISA fiduciaries when there are no ERISA issues. Even were some Defendants fiduciaries for a non-party ERISA plan and, as Mr. Goldin would testify, they did not meet the standard required of ERISA fiduciaries, that does not make the fact in issue here—whether those Defendants were willfully blind with respect to their personal investments in non-ERISA accounts—any more or less probable. Willful blindness is a subjective standard, obviously far different from the objective prudence standard that governs an ERISA fiduciary.

Mr. Goldin's testimony would risk confounding the inapplicable objective standard with the applicable subjective one. The very high standards demanded of an ERISA fiduciary have nothing to do with the question whether Defendants actually had a subjective belief that there was a high probability of fraud at BLMIS. Because Mr. Goldin's testimony would not be helpful to the jurors, is premised on an irrelevant standard of conduct, and risks confusing the jury, it must be excluded.

8

## CONCLUSION

For the reasons set forth above and in their initial memorandum of law, Defendants respectfully request that the Court strike the reports and testimony of Dr. Pomerantz and Mr. Goldin.

Dated: New York, New York
February 16, 2012

Of Counsel:
Robert B. Fiske, Jr.
Robert F. Wise, Jr.

DAVIS POLK & WARDWELL LLP

By:  /s/ Karen E. Wagner

Karen E. Wagner
Dana M. Seshens

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:   (212) 701-5800

*Attorneys for Defendants*